UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————x

UNITED STATES OF AMERICA,           :
                                    :   No. 1:23-cv-9379-RPK-JAM
          Plaintiff,                :
                                    :   Judge Rachel P. Kovner
     v.                             :
                                    :   Magistrate Judge Joseph A.
KAREN VEERASWAMY,                   :   Marutollo
as the Administrator of the Estate of :
Velappan Veeraswamy, Deceased,      :
                                    :
          Defendant.                :
———————————————————————x

**PLAINTIFF UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO
DEFENDANT KAREN VEERASWAMY'S, AS THE ADMINISTRATOR OF THE
ESTATE OF VELAPPAN VEERASWAMY, DECEASED, MOTION TO VACATE
DEFAULT, VACATE DEFAULT JUDGMENT, AND MOTION TO DISMISS CASE**

The Plaintiff, United States of America, hereby submits this response in opposition to

Defendant Karen Veeraswamy's, as the Administrator of the Estate of Velappan Veeraswamy,

Deceased, Motion to Vacate Default, Vacate Default Judgment, and Motion to Dismiss Case

(ECF No. 12). Karen Veeraswamy was properly served, and she has not demonstrated that the

default should be removed; rather, she is trying to game the system and evade service of process.

The United States further asserts that the Court has not yet entered default judgment, so Karen's

motion is premature in that regard.

The United States construes Karen's Motion to Dismiss the Case as a motion to set aside

the default for "good cause" under Fed. R. Civ. P. 55(c), as well as a motion seeking dismissal

pursuant to Fed. R. Civ. P. 12(b)(5) for lack of personal jurisdiction based on insufficient service

of process, 12(b)(6) for failure to state a claim upon which relief can be granted, and 12(b)(7) for

failure to join a party under Rule 19. The Court should deny Karen's motion for several reasons.

First, the Court should deny the motion to vacate the default because Karen was properly served

under New York law, the Court has jurisdiction over her, and she offers no explanation as to why she did not timely respond to the complaint. Likewise, the Court should deny Karen's request for an evidentiary hearing as to the credibility of the process server. It appears that she actually received the summons and complaint served upon her, and she fails to demonstrate that there is "good cause" to remove the default. Second, assuming the default is removed, the Court should deny the motion to dismiss because Karen is the only defendant required to be joined under Rule 19. Finally, the Court should also deny the motion to dismiss because the United States plead a plausible claim for relief, *i.e.*, seeking a money judgment against her for Velappan Veeraswamy's, deceased, unpaid 2011 willful FBAR penalty. Additionally, some of Karen's arguments for dismissal inject numerous purported factual disputes that should be explored through discovery and resolved on the merits. The United States requests that the Court deny Karen's motion to dismiss if the Court removes the default.

Pursuant to L.R. 7.2, the United States certifies that copies of all unpublished cases will be provided to Karen along with a copy of this memorandum of law.

# **TABLE OF CONTENTS**

Statement of Facts ........................................................................................................ 1

   I.   Procedural History ............................................................................... 1

   II.   United States' Claim ............................................................................ 4

Standards of Review ................................................................................................... 7

Argument ..................................................................................................................... 9

   I.   The Court should deny Karen's Motion to Vacate Default because she has not demonstrated good cause for failing to timely answer the complaint ................................ 10

   II.   The Court should deny Karen's Motion to Dismiss because she was properly served under New York law and the Court has personal jurisdiction over her. .............................. 12

   III.   The Court should deny Karen's Motion to Dismiss because Karen is the only defendant required to be joined under Rule 19. ...................................................... 15

   IV.   The Court should deny Karen's Motion to Dismiss because government alleged sufficiently plausible facts to obtain an FBAR money judgment against the Estate of Velappan Veeraswamy, deceased. ........................................................................ 17

      a.   Statutory and Regulatory Framework ................................................ 18

      b.   Velappan willfully violated his statutory duty to file an FBAR for his Bank of India account for the 2011 year ...................................................................... 20

      c.   The United States' complaint is not time barred or barred by the doctrines of res judicata or collateral estoppel ...................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. McCurry*,
449 U.S. 90 (1980).................................................................................................22

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*,
92 F.3d 57 (2d Cir. 1996) ...............................................................................10, 11

*Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*,
856 F.2d 873 (7th Cir. 1988) ................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................8

*Bankers Tr. Co. of California, N.A. v. Tsoukas*,
303 A.D.2d 343 (N.Y. 2d Dep't 2003) ...........................................................12, 13

*Bedrosian v. United States*,
912 F.3d 144 (3d Cir. 2018)....................................................................................19

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................8

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
402 U.S. 313 (1971)................................................................................................23

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005)...............................................................................8, 12

*Burgos v. Hopkins*,
14 F.3d 787 (2d Cir. 1994)......................................................................................22

*Burke v. Zorba Diner, Inc.*,
213 A.D.2d 577 (N.Y. App. Div. 1995) .............................................................12, 14

*Darden v. DaimlerChrysler N. Am. Holding Corp.*,
191 F. Supp. 2d 382 (S.D.N.Y. 2002)......................................................................8

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90 (2d Cir. 1993) .............................................................................7, 10, 11

*F.D.I.C. v. Scotto*,
No. 97–CV–1631, 1998 WL 357324 (S.D.N.Y. June 29, 1998)............................13

*FedEx TechConnect, Inc. v. OTI, Inc.*,
    No. 12 Civ. 1674, 2013 WL 5405699 (S.D.N.Y. Sept. 23, 2013) ............................................7

*Jaffe & Asher v. Van Brunt*,
    158 F.R.D. 278 (S.D.N.Y. 1994) ........................................................................................13

*Kassner v. 2d Avenue Delicatessen, Inc.*,
    496 F.3d 229 (2d Cir. 2007) ................................................................................................8

*In re Khan*,
    2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014) ........................................................16

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020) ................................................................................................8

*Marziliano v. Heckler*,
    728 F.2d 151 (2d Cir.1984) ................................................................................................10

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006) ................................................................................................9

*Meehan v. Snow*,
    652 F.2d 274 (2d Cir. 1981) ..............................................................................................11

*Nat'l Dev. Co. v. Triad Holding Corp.*,
    930 F.2d 253 (2d Cir. 1991) ..............................................................................................13

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,
    301 F.3d 54 (2d Cir. 2002) ...........................................................................................12, 13

*RSM Prod. Corp. v. Fridman, No. 06-cv-11512*,
    2007 WL 1515068 (S.D.N.Y. May 24, 2007) ....................................................................15

*Safeco Ins. Co. of America v. Burr*,
    551 U.S. 47 (2007) ............................................................................................................19

*SEC v. McNulty*,
    137 F.3d 732 (2d Cir. 1998) ..............................................................................................10

*United States v. Bushlow*,
    832 F. Supp. 574 (E.D.N.Y. 1993) (United States not bound by state law
    statutes of limitations) .......................................................................................................21

*United States v. Estate of Schoenfeld*,
    344 F. Supp. 3d 1354 (M.D. Fla. 2018) ............................................................................16

*United States v. Flume*,
    390 F. Supp. 3d 847 (S.D. Tex. 2019) ..............................................................................19

*United States v. Gentges*,
   2021 WL 1222764 (S.D.N.Y. Mar. 31, 2021) ........................................................................20

*United States v. Gill*,
   546 F. Supp. 3d 538 (S.D. Tex. 2021) ........................................................................16

*United States v. Green*,
   457 F. Supp. 3d 1262 (S.D. Fla. 2020) ........................................................................16

*United States v. Holland*,
   19-cv-02456, 2023 WL 6542603 (E.D.N.Y. Mar. 20, 2023) ................................................17

*United States v. Kelly*,
   No. 2:21-cv-12570, 2023 WL 3212718 (E.D. Mich. May 2, 2023) .......................................19

*United States v. McBride*,
   908 F. Supp. 2d 1198 (D. Utah 2012) ........................................................................19

*United States v. Ott*,
   441 F. Supp. 3d 521 (E.D. Mich. 2020) ......................................................................19

*United States v. Park*,
   389 F. Supp. 561 (N.D. Ill. 2019) ........................................................................16

*United States v. Sturman*,
   951 F.2d 1466 (6th Cir. 1991) ........................................................................19

*United States v. Vespe*,
   868 F.2d 1328 (3d Cir. 1989) ........................................................................19

*United States v. Wolin*,
   489 F. Supp. 3d 21 (E.D.N.Y 2020) ........................................................................16

*In re Veeraswamy*,
   1-18-42030-jmm, ECF No. 238 ........................................................................23

*In re Veeraswamy*,
   No. 1-18-42030-jmm, ECF No. 251 ........................................................................23

*In re Velappan Veeraswamy*,
   No. 18-42030 (JMM) ........................................................................4, 6, 16

*Viacom Int'l, Inc. v. Kearney*,
   212 F.3d 721 (2d Cir. 2000) ........................................................................9

**Statutes**

11 U.S.C. § 108(c) ........................................................................7, 22

vi

11 U.S.C. § 362 ..................................................................................................7, 22

11 U.S.C. § 362(c) ..............................................................................................7, 22

11 U.S.C. § 502(a) ..................................................................................................6

11 U.S.C. § 727 ...................................................................................................7, 22

31 U.S.C. § 3717(a)(1) ...........................................................................................11

31 U.S.C. § 3717(e)(1) ...........................................................................................11

31 U.S.C. § 3717(e)(2) ...........................................................................................11

31 U.S.C. § 5314 ....................................................................................................18

31 U.S.C. § 5314(a) ...............................................................................................18

31 U.S.C. § 5321(a)(5) ...........................................................................................18

31 U.S.C. § 5321(a)(5)(A) ......................................................................................18

31 U.S.C. § 5321(a)(5)(B) ......................................................................................18

31 U.S.C. § 5321(a)(5)(C) ........................................................................................6

31 U.S.C. § 5321(a)(5)(D) ........................................................................................6

31 U.S.C. § 5321(b)(2) ........................................................................................7, 22

Bankruptcy Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 ................................18

**Other Authorities**

31 C.F.R. § 1010.350 ..............................................................................................18

Fed. R. Civ. P. 4(e) .................................................................................................12

Fed. R. Civ. P. 4(e)(1) ............................................................................................12

Fed. R. Civ. P. 12(b)(5) ........................................................................................9, 12

Fed. R. Civ. P. 12(b)(6) ............................................................................................8

Fed. R. Civ. P. 12(h)(1) ............................................................................................9

H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394 ..................18

N.Y. C.P.L.R. 308 ...................................................................................................12

N.Y. C.P.L.R. 308(4) ..................................................................................................................2

N.Y. C.P.L.R. 308(4) ................................................................................................................12

N.Y. C.P.L.R. 308(4) ................................................................................................................14

**Statement of Facts[1]**

### I.    Procedural History

1.       On December 20, 2023, the United States filed a complaint against Karen Veeraswamy, as the Administrator of the Estate of Velappan Veeraswamy, deceased. ECF No. 1.

2.       Counsel for the United States placed an order with ABC Legal to have a process serve Karen Veeraswamy as soon as possible at 240 W State St., Salamanca, NY 14779. *See* Lieb Decl. ¶ 3.

3.       On February 10, 2024, process server Edward Knouse attempted to serve Karen Veeraswamy ("Karen") at 240 W State St., Salamanca, NY 14779. *See* **Exhibit A**, Proof of Non-Service dated February 10, 2024 (noting that the property appeared vacant, which was supported by empty lot, overgrown, and empty inside).

4.       On February 12, 2024, the undersigned contacted an IRS Chief Counsel attorney by email to ask for Karen's address on file with the Tax Court to serve her with process for this case. *See* Lieb Decl. ¶ 5. The same day, IRS Chief Counsel attorney confirmed that Karen's address was 240 W State St. per Tax Court filings and verified by doing an Accurint search. *Id*. The undersigned further confirmed that Karen's address was 240 W State St. by doing a Lexis public records search on or about February 12, 2024. *Id*.

5.       On February 16, 2024, ABC Legal performed an investigation to find other addresses to serve Karen. Lieb Decl. ¶ 6. ABC Legal determined 7313 71st Pl, Glendale, NY 11385 could be a servable address for Karen. *Id.* On February 23, 2024, process server Randy Alvarado attempted to serve Karen with the summons and complaint at the Glendale address, but

---

[1] The United States will refer to the numbered factual statements relating to the procedural history as "SOF ¶" in the Argument section, below. The United States will refer to factual paragraphs from the complaint as "Compl. ¶" in Section II of this Statement of Facts and in the Argument section, below.

the landlord and two other residents confirmed they did not know Karen to be a resident of this address. *Id.*; *see also* **Exhibit B**, Proof of Non-Service dated February 23, 2024.

6.      On or about February 29, 2024, Mr. Knouse confirmed that Karen's address on file with the New York Department of Motor Vehicles was 240 W State St., Salamanca, NY 14779. *See* ECF No. 8-2.

7.      Mr. Knouse made further attempts to serve Karen Veeraswamy at the 240 W State St. address on March 6, 12, and 14, 2024. ECF No. 7. On March 6 and 14, Mr. Knouse observed packages or mail addressed to Karen at this address. On March 12 and 14, Mr. Knouse spoke to a neighbor who confirmed that Karen resides at this address. *Id*. On March 14, 2024, Mr. Knouse confirmed a second time that the 240 W State St. address was Karen's address on file with the New York Department of Motor Vehicles. *Id*.

8.      On March 16, 2024, Mr. Knouse served Karen pursuant to N.Y. C.P.L.R. 308(4) by posting the summons and complaint to the front door of the 240 W State St. property and mailing the documents to her by First-Class mail in an envelope marked personal and confidential. ECF No. 7.  Karen does not contend that she did not actually receive the summonses and complaints served in this manner, and she does not explain why she did not timely file an answer or other response to the complaint.

9.      Karen Veeraswamy owns the property located at 240 W State St. *See* **Exhibit C**, Cattaraugus County, New York Real Property & GIS Services search results (available at https://www.cattco.org/real-property-and-gis and by searching by defendant's name); Lieb Decl. ¶ 10. **Exhibit C** shows that on or about April 16, 2020, Larry & Linda Dolph sold the 240 W State St. property to Karen Veeraswamy for $17,000, and the deed is recorded at Book 20200, Page 6089 with the Cattaraugus County Clerk's Office. *Id*. Further, this is the only property

Karen owns in her name in Cattaraugus County. Lieb Decl. ¶ 10. The United States requests that the Court take judicial notice that Karen owns the 240 W State St. property pursuant to Federal Rule of Evidence 201(b)(2) because it can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned.

10.     Karen never discloses the street address that she contends is the actual location of her dwelling or usual place of abode. She appears, however, to contend that she recently switched her address from 240 W State St. to 244 W State St., which is the address for an adjacent piece of property owned by her son, and suggests that the new house number now controls whether service of process was properly made. *See* ECF No. 12 at Page.ID.71-.72 (Karen's Exhibit E); Lieb Decl.¶¶ 10-12. Karen's son, Anand Veeraswamy, owns the property located at 244 W State St. *See* **Exhibit C**; *see also* Lieb Decl. ¶ 12 (a screenprint from Google Maps that shows the 240 W State St. and 244 W State St. properties are adjacent and almost adjoining). The United States requests that the Court take judicial notice that Anand owns the 244 W State St. property pursuant to Federal Rule of Evidence 201(b)(2) because it can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned. Lieb Decl. ¶ 10.

11.     On June 6, 2024, I placed a second order with ABC Legal to have a process server serve Karen Veeraswamy as soon as possible at 244 W State St., Salamanca, NY 14779, to ensure that service was proper. Karen used this address to mail her Motion to Vacate Default and Motion to Dismiss to the Court. ECF No. 12 at PageID.80; Lieb Decl. ¶ 11.  The process server was not able to find anyone to serve at 244 W State St.  Lieb. Decl. ¶ 11.

12.     Karen is the Administrator of the Estate of Administrator of the Estate of Velappan Veeraswamy, deceased, who has been duly appointed in April 2019 by the Queens

County Surrogate's Court.  *See* ECF No. 12 at PageID.57. In Velappan's Chapter 7 bankruptcy case and the Queen's County Surrogate's Court case, Karen used prior addresses or P.O. Box addresses in Queens County, New York. For the Chapter 7 bankruptcy case, Karen used the following P.O. Box for mailing: P.O. Box 863695, Ridgewood, NY 11386-3695. *See In re Velappan Veeraswamy*, No. 18-42030 (JMM), Claim No. 12-1 (Bankr. E.D.N.Y.), attached hereto as **Exhibit D**; Lieb Decl. ¶ 14. For the Queen's County Surrogate's Court case, Karen listed her address as 85-45 115 Street, Richmond Hill, NY 11618, and she utilized the same P.O. Box 863695 as her mailing address. *See* **Exhibit E**, Petition for Letters of Administration; Lieb Decl. ¶ 14.

## II.    United States' Claim

The United States' complaint seeks a money judgment against Karen Veeraswamy, as the Administrator of the Estate of Velappan Veeraswamy, deceased, for Velappan's willful failure to timely report his financial interest in, and/or his signatory or other authority over, a foreign bank account at Bank of India for the 2011 year. ECF No. 1 ("Compl.").

Velappan was born in Indian on May 12, 1949. Compl. ¶ 11. He immigrated to the United States in the 1980s and became a naturalized citizen of the United States. *Id.* ¶ 12. As early as 2010, Velappan maintained a financial account at Bank of India ending in -0009 and located at Village Hospital Campus, Vettamangalam and PO Karur 639017, Karur – 639017, Tamil Nadu, India ("BoI Account"). *Id.* ¶ 19. At all times since the BoI Account was opened, Velappan had a financial and beneficial interest in, and control and signatory authority over, the BoI Account. *Id.* ¶ 20.

The BoI Account exceeded $10,000 U.S. Dollars during the 2011 year.  The account balance for the BoI Account in U.S. Dollars on December 31, 2011, was $620,461. *Id.* ¶ 22. The

highest balance in the BoI account was $1,385,600 on or about March 24, 2011, and the balance on June 30, 2012, was $420,457. *Id.* ¶ 50. During his lifetime, Velappan was a licensed real estate broker. *Id.* ¶ 17. At various times, he operated multiple Subchapter S Corporations and owned residential rental properties in New York City. One such S Corporation was VAAK Properties, which owned an apartment building located at 1135 Boynton Avenue, Bronx, NY ("Boynton Ave property"). *Id.* Velappan sold the Boynton Ave property in 2011 for approximately $6 million. *Id.* ¶ 18. Following the sale of the Boynton Ave property, Velappan transferred $1.2 million of the sale proceeds to his BoI Account from his Capitol One account ending in -0161. *Id.* ¶¶ 18, 21. Velappan did not report or pay any federal income tax on the gain from the sale of the Boynton Ave property. *Id.* ¶ 18.

As part of its Title 26 (U.S.C.) examination regarding Velappan's 2010 through 2013 federal income taxes, the Internal Revenue Service conducted a parallel Title 31 examination regarding Velappan's failure to file FBARs for 2010 through 2013. *Id.* ¶ 25. Velappan filed Forms 1040, Individual Income Tax Returns, for 2010 through 2013, after Masood Rana, an unenrolled tax preparer, prepared the returns for him. *Id.* ¶¶ 26-27. Masood told the IRS that he asked all of his clients if they had foreign bank accounts, and Velappan answered "No" to this question. *Id.* ¶ 28. Velappan also admitted to the IRS that he failed to disclose his Indian bank accounts to Masood. *Id*. ¶ 29. Velappan signed his 2011 tax return under penalty of perjury. *Id*. ¶ 30. Velappan did not report on his 2011 federal income tax return any income or loss from the BoI Account. *Id.* ¶ 31. During 2011, Velappan earned interest income in the amount of at least $18,503.19 from the BoI Account. *Id*. Velappan included a Schedule B with his tax return for the 2011 tax year. *Id*. ¶ 32. In Part III, Question 7a, Velappan checked the box "No" to indicate that he did not have an interest in or signature or other authority over a financial account located in a

foreign country at any time during those years. *Id*. Velappan failed to file an FBAR for his BoI Account for the 2011 year. *Id*. ¶ 33.

On October 24, 2017, the IRS issued Letter 3709 to Velappan with proposed penalties for his failure to file an FBAR for 2011, among other years. *Id*. ¶ 34. On January 9, 2018, the IRS duly made several FBAR assessments and issued Letter 3708 to Velappan once the penalties had been assessed. For the 2011 year, the IRS assessed a willful FBAR penalty in the amount of $275,826 for the BoI account. *Id*. ¶ 35. On or about September 20, 2022, the IRS conducted an administrative remand and partially abated Velappan's FBAR penalties pursuant to 31 U.S.C. § 5321(a)(5)(C) and (D) and in accordance with the Internal Revenue Manual. *Id*. ¶ 52. The IRS adjusted the willful FBAR penalty for 2011 for the BoI Account to be $210,229. *Id*. ¶ 53.

Three months after the IRS assessed the willful FBAR penalty for the 2011 year, on April 12, 2018, Velappan filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. *See In re Velappan Veeraswamy*, No. 18-42030 (JMM) (Bankr. E.D.N.Y.). *Id*. ¶ 37. Velappan's bankruptcy case was converted to a Chapter 7 case on August 2, 2018. *Id*. ¶ 38. Velappan passed away on or about February 6, 2019, while his Chapter 7 case was ongoing. *Id*. ¶ 37. The IRS timely filed a proof of claim and two amended proofs of claim for income tax deficiencies and FBAR penalties, including the 2011 willful FBAR penalty. *Id*. ¶¶ 40-41, 45. Karen Veeraswamy filed two objections to the IRS's proofs of claims. After withdrawing her first objection, the bankruptcy court overruled Karen's objection to the IRS's proof of claim. *Id*. ¶¶ 42-44, 46-48. Accordingly, the entirety of IRS Claim No. 9-3 was allowable under 11 U.S.C. § 502(a) as filed. *Id*. ¶ 48. As a result, Karen is barred and estopped from contesting the claims set forth in the IRS proof of claim, including the claim for FBAR penalties for the year 2011 for the BoI Account. *Id*.

Normally, the United States has two years from the date of assessment to file a civil action seeking a money judgment for the FBAR penalties, or by January 9, 2020. *Id*. ¶ 54; 31 U.S.C. § 5321(b)(2). However, since Velappan filed a Chapter 13 bankruptcy petition on April 12, 2018 (which was later converted to a Chapter 7 case), the automatic stay provision in 11 U.S.C. § 362 stayed the commencement of the FBAR action and tolled the statute of limitations while the case was pending. *Id*. Additionally, the scope of this matter falls within the safe harbor provided by the Bankruptcy Code, 11 U.S.C. § 108(c), to automatically extend the statute of limitations as a matter of law. *Id*. On November 21, 2023, Velappan's Chapter 7 case was closed without the entry of a discharge under 11 U.S.C. § 727, so the United States' complaint was timely filed under 31 U.S.C. § 5321(b)(2) and 11 U.S.C. §§ 108(c) and 362(c). *Id*. ¶ 49, 56.

## **Standards of Review**

Karen's motion requests that the Court vacate the default entered against her by the Clerk of Court on May 17, 2024 (ECF No. 10). Under Federal Rule of Civil Procedure 55(c), the Court may set aside an entry of default for good cause. The Second Circuit has established three factors to consider when deciding whether to relieve a party from default: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "[N]o single factor is dispositive." *FedEx TechConnect, Inc. v. OTI, Inc.,* No. 12 Civ. 1674, 2013 WL 5405699, at *4 (S.D.N.Y. Sept. 23, 2013). However, as a general rule, district courts afford *pro se* litigants leeway to protect them "from waiving a right to be heard because of his or her lack of legal knowledge." *Id.*

Here, Karen appears to have willfully ignored the summons and complaint. Instead of offering any explanation for why the default should be removed, Karen's motion invokes at least

three different procedural grounds for dismissal under Federal Rule of Civil Procedure 12(b). Karen first argues that the Court lacks personal jurisdiction over her because service of process was insufficient, which the United States construes as a motion for dismissal under Rule 12(b)(5).

In resolving a motion to dismiss an action for insufficient service of process, "a court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir. 2005) (parentheses omitted). To this end, the United States refers to pleadings on the docket for this case and submits a Declaration of Trial Attorney Samantha S. Lieb, as cited in the Statement of Facts, above.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may request that the court dismiss a complaint for failure to state a claim upon which relief can be granted. Courts accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the pleader's favor. *Kassner v. 2d Avenue Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "A complaint will survive a motion to dismiss so long as it contains sufficient factual matter to state a claim to relief that is plausible on its face." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

Finally, Karen seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(7) for failure to join a party pursuant to Fed. R. Civ. P. 19. Federal Rule of Civil Procedure 19 governs the required joinder of parties. Rule 19(a)(1)(A) requires a person to be joined if "in that person's absence, the court cannot accord complete relief among existing parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). Rule 19(a)(1)(B) alternatively provides that a person claiming an interest relating to the subject of the action is required to be joined if disposing of the action in their absence would impair or impede the person's ability to protect the interest or would leave an existing party subject to a substantial risk of incurring inconsistent obligations because of the interest. However, if a party does not qualify as necessary under Rule 19(a), then the Court need not decide whether its absence warrants a dismissal under Rule 19(b). *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).

## Argument

As stated above, the United States construes Karen's Motion to Dismiss the Case as one seeking to vacate a default under Fed. R. Civ. P. 55(c) and seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(5) for lack of personal jurisdiction based on insufficient service of process, 12(b)(6) for failure to state a claim upon which relief can be granted, and 12(b)(7) for failure to join a party under Rule 19. The United States will first address Karen's arguments regarding vacating default. Then the United States will address Karen's litany of Rule 12 arguments, starting with insufficient service of process and joinder before addressing her various arguments that the complaint fails to state a claim upon which relief can be granted.[2]

---

[2] The United States further notes that by not including them in her Motion to Dismiss, Karen has waived the following Rule 12 defenses: 12(b)(2) (lack of personal jurisdiction); 12(b)(3) (improper venue); and 12(b)(4) (insufficient process). *See* Fed. R. Civ. P. 12(h)(1).

**I.    The Court should deny Karen's Motion to Vacate Default because she has not demonstrated good cause for failing to timely answer the complaint.**

Although the Second Circuit accords general deference to *pro se* litigants who cannot be said to be as knowledgeable about civil litigation as attorneys, *Enron*, 10 F.3d at 96, the Court should deny Karen's Motion to Vacate Default because her motion fails to articulate any grounds that would constitute good cause. Although Karen is *pro se*, she has been involved in litigation against the United States for at least six years as Velappan's bankruptcy petition was filed in 2018. Before that, Karen admits that she was involved in divorce proceedings since 2011. ECF No. 12 at PageID.60. Thus, the Court can infer that Karen at the very least understands basic concepts such as responding to pleadings.

In *Enron*, the Second Circuit articulated three factors to consider when determining whether to vacate an entry of default against a defendant. The first factor is whether the default was willful. 10 F.3d at 96. Willfulness requires egregious conduct that is not satisfactorily explained. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citing *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996)). For example, default is willful when a defendant ignores a complaint without action and fails to offer an explanation for its failure to respond to a motion or pleading. *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984). Here, Karen's default was willful because she ignored the properly-served summons and complaint and instead focused her efforts on changing her address to her son's address next door to attempt to challenge service. Lieb Decl. ¶¶ 10-12. She has failed to offer any explanation for failing to timely respond to the complaint. Thus, this first factor is met.

The next factor is whether setting aside the default would prejudice the adversary. *Enron*, 10 F.3d at 96. The United States would be prejudiced by setting aside Karen's default because then it would be required to expend additional time and resources in discovery and by litigating

this case. As explained below, the bankruptcy court entered an order allowing the 2011 FBAR liability (among other tax and FBAR liabilities) assessed against Velappan Veeraswamy, deceased. This order binds the United States and Karen such that Karen is barred from contesting the merits of the 2011 FBAR penalty. Since the United States is seeking a money judgment, the most expeditious way to obtain the money judgment would be for the Court to deny Karen's motion and allow the United States to file a motion for default judgment. Further, the 2011 FBAR liability will continue to accrue daily interest and failure to pay penalties until it is fully paid. Interest and delinquency penalties will continue to accrue at the rates specified in 31 U.S.C. §§ 3717(a)(1) and (e)(2), until the debt is paid in full. Costs related to the processing and handling of the debt will continue to be assessed pursuant to 31 U.S.C. § 3717(e)(1). The longer this case goes on without entry of a judgment in favor of the United States, the larger the liability will get without being closer to collection. Thus, this factor is also met.

The final factor is whether the movant presents a meritorious defense. *Enron*, 10 F.3d at 96. "'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Am. Alliance Ins. Co.,* 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Defenses are subject to a "low threshold of adequacy for Rule 55 purposes." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). Karen does not squarely provide a defense for failing to timely answer the complaint and she makes no substantive contentions about the FBAR debt. Instead, she chose to evade service of process by changing her address on file with the New York Department of Motor Vehicles. ECF No. 12 at PageID.52. Karen raises at least three procedural Rule 12(b) defenses to argue for dismissal of the case, which are explained in Sections II through IV. The United States does not

consider any of these three Rule 12 motions meritorious, so the Court should deny Karen's

motion to vacate default and dismiss the complaint.

## II. The Court should deny Karen's Motion to Dismiss because she was properly served under New York law and the Court has personal jurisdiction over her.

Under Fed. R. Civ. P. 12(b)(5), the United States bears the burden of proving adequate

service of process on Karen. *Burda Media,* 417 F.3d at 298. Federal Rule of Civil Procedure 4(e)

governs service of an individual. Service may be made by "following state law for serving a

summons . . . where the district court is located or where service is made." Fed. R. Civ. P.

4(e)(1). The relevant New York Civil Practice Law and Rules ("C.P.L.R.") provision provides

that a process server may serve a defendant by affixing the summons to the door of dwelling

place or usual place of abode within the state of the person to be served and by either mailing the

summons to such person at his or her last known residence or by mailing the summons by first

class mail to the person to be served at his or her actual place of business in an envelope bearing

the legend "personal and confidential." N.Y. C.P.L.R. 308(4). Further, a plaintiff is entitled to

rely on a defendant's last known address on file with the DMV. In *Burke v. Zorba Diner, Inc.*,

213 A.D.2d 577, 578-79 (N.Y. App. Div. 1995), the court noted that New York Vehicle and

Traffic Law § 505(5) requires that every motor vehicle licensee notify the Commissioner of

Motor Vehicles of any change of residence within 10 days of the occurrence of the change. *Id.* at

578. The court found that the plaintiff had the right to rely on the defendant's last known address

on file with the DMV to effectuate service of process under N.Y. C.P.L.R. 308. *Id.* A process

server's affidavit of service constitutes prima facie evidence of proper service pursuant to Rule

4(e) and section 308 of the C.P.L.R. *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,* 301

F.3d 54, 57 (2d Cir. 2002); *Bankers Tr. Co. of California, N.A. v. Tsoukas,* 303 A.D.2d 343, 344

(N.Y. 2d Dep't 2003). "A defendant's sworn denial of receipt of service . . . rebuts the presumption . . . and necessitates an evidentiary hearing." *Old Republic,* 301 F.3d at 57. However, "no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Id.*

Notably, Karen does not deny that she received service of process through the nail & mail method the process server was required to resort to after he unsuccessfully attempted to personally serve Karen multiple times at two different addresses. Karen also does not swear to specific facts to rebut the statements in the process server's affidavits. Thus, the United States has met its burden to show that service was adequate because the process server's affidavit is prima facie evidence of proper service. *Old Republic,* 301 F.3d at 57; *Bankers Trust,* 303 A.D.2d at 344. Instead, Karen simply challenges the manner of service as insufficient because process was not handed to her personally or left with some unspecified person(s) with whom she resides at her unidentified dwelling or place of abode for substitute service. Karen asserts that the 240 W State St. address is not her dwelling or place of abode, but all evidence points to the contrary at the time the process servers made attempts to serve her in February and March 2024.

Although the terms "dwelling" and "usual place of abode" "have eluded any hard and fast definition," the Second Circuit has recognized that "a person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence." *Nat'l Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 257 (2d Cir. 1991). Courts have identified such indicia as including belongings kept at the address, mail received at the address, ownership of the property, and frequent use of the property. *F.D.I.C. v. Scotto,* No. 97–CV–1631, 1998 WL 357324, at *3 (S.D.N.Y. June 29, 1998); *Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278 (S.D.N.Y. 1994).

Here, the process server, Mr. Knouse, made at least four attempts to serve Karen personally at the 240 W State St. address. SOF ¶¶ 3, 7. Karen's address on file with the New York Department of Motor Vehicles as of February 29 and March 14, 2024, was 240 W State St., Salamanca, NY. SOF ¶¶ 6-7. Under *Burke*, the process server and United States were entitled to rely on this information to properly serve her under New York law. 213 A.D.2d at 578-79. Karen states in her motion that "the update on address was made in March 2024, around the alleged dates that process service was attempted." ECF No. 12, PageID.52. The Court should infer from this admission that Karen was attempting to evade or interfere with service of process by seeking to change her address on file with the New York Department of Motor Vehicles while Mr. Knouse was actively attempting to serve her. Further, Mr. Knouse observed mail and packages belonging to Karen at this address, and neighbors confirmed she lived there. SOF ¶ 7. Finally, Karen owns the 240 W State St. property, and this address was the only address attorneys at the IRS Office of Chief Counsel and Department of Justice, Tax Division, had for her that was also confirmed by searching two public records databases. SOF ¶ 4, 9. Thus, the Court should find that Mr. Knouse was diligent in attempting to serve Karen, and his manner of nail & mail service was proper under New York law.

Karen's motion asserts that the undersigned counsel was aware of her email address from a prior bankruptcy proceeding, so counsel for the government should have attempted to serve her that way. ECF No. 12, PageID.53. As an initial matter, service by email is only permitted by motion as a means of alternative service. The United States was not required to serve Karen by these alternative means because it could, and did, use New York law to properly serve her. N.Y. C.P.L.R. 308(4). Further, the last time the undersigned communicated with Karen using her ammasami@gmail.com email address was in April of 2022. Lieb Decl. ¶ 9. However, during the

bankruptcy case and in response to emails about this case, Karen has also used a second email address, karenveeraswamy@gmail.com. *Id*.

To the extent the Court views service of process as deficient, the United States requests that it be permitted to serve Karen with the summons and complaint via her email address on file with the Court in this case, ammasami@gmail.com, or order Karen to disclosure her dwelling or usual place of abode so that she can be handed another copy of the summons and complaint. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *RSM Prod. Corp. v. Fridman,* No. 06-cv-11512, 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007). Nevertheless, some courts, before authorizing service under Rule 4(f)(3), have required "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Id.* at 265–66. Although the United States maintains that its nail & mail service on Karen was proper, the Court could order alternative service here if needed because the United States reasonably attempted to effectuate personal service on the defendant in February and March 2024.

### III.    The Court should deny Karen's Motion to Dismiss because Karen is the only defendant required to be joined under Rule 19.

Karen asserts that the United States Trustees and their appointed attorneys in Velappan's bankruptcy case administered his estate so they are required parties to this action. ECF No. 12 at PageID.58. As an initial matter, the United States clarifies that Karen is referring to Chapter 7 Trustee Lori Lapin Jones and her counsel, Holly Holecek, not any trial attorneys associated with the United States Trustee's Office. The Chapter 7 Trustee and her counsel are not required parties to this proceeding. The Chapter 7 Trustee fully administered Velappan's bankruptcy

estate, and the bankruptcy court formally discharged her from her duties on April 30, 2024. *See In re Veeraswamy,* No. 18-42030 (JMM), ECF No. 254.

Here, this case can proceed without joining the Chapter 7 Trustee because the Court can fashion relief among the existing parties, *i.e.*, award a money judgment in favor of the United States against Karen Veeraswamy, as administrator of the deceased FBAR debtor's estate. *See In re Khan*, 2014 WL 4956676, *50 (Bankr. E.D.N.Y. Sept. 30, 2014) (declining to require joinder of additional party-defendant where trustee can obtain a money judgment as complete relief against the named defendant). Additionally, the former Chapter 7 Trustee has no interest in the subject of this case and no longer has any obligation to protect her non-existent interest. Likewise, if this Court were to award a money judgment to the United States and against Karen in her capacity as administrator of Velappan's estate, the money judgment would not be inconsistent with any prior rulings or distributions of the bankruptcy court. *See Khan*, 2014 WL 4956676, at *50. Thus, the Court should reject Karen's argument that the Court should dismiss this case because the Chapter 7 Trustee is a required party that should be joined.

Karen is a required party to this proceeding because she is the Administrator of the Estate of Velappan Veeraswamy, deceased. Courts have long held that a taxpayer's FBAR liability does not abate on death of the FBAR debtor, so it is a logical conclusion that the proper required party is the administrator, executor, or representative of the estate of the FBAR decedent. *See United States v. Gill*, 546 F. Supp. 3d 538 (S.D. Tex. 2021); *United States v. Wolin*, 489 F. Supp. 3d 21 (E.D.N.Y 2020); *United States v. Green*, 457 F. Supp. 3d 1262, 1268-72 (S.D. Fla. 2020); *United States v. Park*, 389 F. Supp. 561 (N.D. Ill. 2019); *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354 (M.D. Fla. 2018). Karen admits that she obtained Letters of Administration in April 2019 from the Queens County Surrogate's Court. ECF No. 12 at PageID.57. Karen further

suggests that after being named as a defendant in this suit, she is now "enquiring and considering to resign or request that letters be revoked." *Id*. at PageID.58. Karen cannot resign as Administrator of Velappan's estate to attempt to defeat the Court's jurisdiction over her, just like she cannot change her address on file with the New York Department of Motor Vehicles to defeat proper service. Even if she were not formally appointed the administrator of his estate in his probate case, she is Velappan's surviving spouse and primary beneficiary of his estate, and, therefore, would still be properly named and joined as a representative of the estate. *See United States v. Holland*, 19-cv-02456, 2023 WL 6542603 (E.D.N.Y. Mar. 20, 2023).  Thus, Karen is the only required party to be named in this suit because she is the only known estate representative of Velappan Veeraswamy, deceased.

### IV.    The Court should deny Karen's Motion to Dismiss because government alleged sufficiently plausible facts to obtain an FBAR money judgment against the Estate of Velappan Veeraswamy, deceased.

The United States' complaint pleads sufficient plausible facts to withstand Karen's Rule 12(b)(6) motion that the government has failed to state a claim against her in her capacity as administrator of the FBAR decedent's estate. The United States will first explain the statutory and regulatory framework for the FBAR filing requirement. Next, the government will show that if the Court construes the factual allegations in the complaint in its favor, the United States has sufficiently stated a claim against Karen. Finally, the United States will address Karen's remaining arguments related to her statute of limitations defense, res judicata, and collateral estoppel.

### a.    Statutory and Regulatory Framework

Under the Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act ("BSA"),[3] the Secretary of the Treasury requires U.S. persons to file an FBAR if they have a financial interest in or authority over a foreign account(s) exceeding an aggregate of $10,000 in value in the preceding calendar year.  31 U.S.C. § 5314(a). To implement this statutory mandate, the Secretary published regulations requiring any United States citizen "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country" to report such relationship to the Treasury Department for each year in which such relationship exists and to "provide such information as *shall be specified* in a reporting form prescribed under 31 U.S.C. 5314."  31 C.F.R. § 1010.350 (emphases added). "The form prescribed under Section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form." *Id.*  For calendar year 2011, the FBAR form was the TD-F 90.22-1, and it was due on June 30, 2012. Compl. ¶¶ 6-7.

Section 5321 of Title 31 authorizes the Secretary of the Treasury to impose a civil penalty on any person who does not comply with the reporting requirements required by § 5314. 31 U.S.C. § 5321(a)(5). In the case of a willful violation of the reporting requirement, the FBAR penalty statute allows a maximum penalty of up to $100,000 or 50 percent of the balance in the account at the time of the violation, whichever is greater. *Id.* at § 5321(a)(5)(A)-(D).

Section 5321 authorizes enhanced penalties for willful violations of the FBAR reporting requirement. Although not defined in Title 31 or the implementing regulations, courts have

---

[3] Section 5314 of Title 31 derives from the Bank Secrecy Act ("BSA").  In 1970 Congress passed the BSA, Pub. L. No. 91-508, 84 Stat. 1114 at 12, to combat the "serious and widespread use of foreign financial facilities . . . for the purpose of violating American law."  H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397. The legislative history behind the Act reveals that Congress was concerned about "wealthy" Americans' use of "secret foreign financial facilities, particularly in Switzerland" as "a convenient means of evading U.S. taxes."  1970 U.S.C.C.A.N. at 4397-98.

defined willfulness in the civil context to include "not only knowing violations of a standard, but reckless ones as well." *See United States v. Kelly*, No. 2:21-cv-12570, 2023 WL 3212718, *5 (E.D. Mich. May 2, 2023) (quoting *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007)); *Ott*, 441 F. Supp. 3d at 528. Willfulness may "'be proven through inference from conduct meant to conceal or mislead sources of income or other financial information.'" *McBride,* 908 F. Supp. 2d at 1205 (citing *United States v. Sturman*, 951 F.2d 1466, 1476-77 (6th Cir. 1991)). And "willful intent may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available." *Id.*

By comparison, "[a] person commits a reckless violation of the FBAR statute by engaging in conduct that violates 'an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018) ("*Bedrosian I*") (quoting *Safeco*, 551 U.S. at 57) (internal quotations omitted). Thus, "[a] person 'recklessly' fails to comply with an IRS filing requirement when he or she '(1) clearly ought to have known that (2) there was a grave risk that [the filing requirement was not being met] and if (3) he [or she] was in a position to find out for certain very easily.'" *Id.* (quoting *United States v. Vespe*, 868 F.2d 1328, 1335 (3d Cir. 1989)). Courts have also recognized "willful blindness" as a subcategory within the recklessness standard. *See, e.g., United States v. Flume*, 390 F. Supp. 3d 847, 855 (S.D. Tex. 2019) ("Willful blindness – as where a defendant consciously chooses to avoid learning about reporting requirements –is also a form of recklessness."); *Ott*, 441 F. Supp. 3d at 529 (finding that willful blindness may be proven by objective recklessness in the civil FBAR context).

To prove liability for the FBAR assessments against Velappan's estate, the United States must prove by a preponderance of the evidence that (1) Velappan was U.S. person in 2011; (2)

Velappan had a financial interest in, or signatory or other authority over, foreign financial account(s) during 2011; (3) the BoI Account had a balance of $10,000 or more during 2011; (4) Velappan failed to disclose the account to the IRS on Form TD-F 90.22-1 (the FBAR) by June 30, 2012, for the 2011 year; and (5) Velappan's failure to file an FBAR for 2011 was willful.

### b. Velappan willfully violated his statutory duty to file an FBAR for his Bank of India account for the 2011 year

The United States' complaint alleges sufficiently plausible facts to survive Karen's Rule 12(b)(6) argument. The first four elements of pleading a willful FBAR case are easily met. Velappan was a naturalized U.S. Citizen in 2011. Compl. ¶ 58. Velappan had a financial interest in, or signatory authority over, a foreign financial account at Bank of India in 2011. *Id*. ¶ 19-20. The balance of Velappan's BoI Account exceed $10,000 in 2011 because the highest amount in the account was $1,385,600, following his transfer of $1.2 million from his U.S.-based Capital One account. *Id*. ¶ 21-22, 50. Further, Velappan failed to disclose the account to the IRS on Form TD-F 90.22-1 because he failed to file an FBAR for the 2011 year. *Id*. ¶ 6, 33.

Velappan's failure to file an FBAR was knowingly and recklessly willful. Velappan admitted to the IRS that he failed to disclose his BoI Account to his return preparer, Masood Rana. *Id*. ¶ 29. Masood asked Velappan if he had any foreign accounts, and Velappan said no. *Id*. ¶ 27-29. *See United States v. Gentges*, 2021 WL 1222764, at *14 (S.D.N.Y. Mar. 31, 2021) (noting that failure to disclose foreign account to tax preparer supports finding of willfulness). Not only did Velappan lie to his return preparer about having a foreign bank account when asked, but he also committed perjury by checking the "No" box in response to Part III, Question 7a on his Schedule B regarding foreign accounts, which was included with his 2011 tax return. *Id*. ¶ 26, 31-32. This question arguably should have put Velappan on notice that he had an FBAR filing requirement for the 2011 tax year. *Id*. Even if after construing these facts in

a favorable light the Court cannot determine that Velappan's failure to file an FBAR was knowingly willful, the Court can determine that there are sufficient facts to conclude he was at least recklessly willful. Because the willfulness inquiry is fact-specific, the Court should deny Karen's motion to dismiss and allow the parties to engage in discovery to resolve this case on the merits.

> **c.     The United States' complaint is not time barred or barred by the doctrines of res judicata or collateral estoppel**

Karen argues that the United States' complaint is time-barred or otherwise barred by the doctrines of res judicata or collateral estoppel. The Court should reject these arguments.

Karen asserts that the United States' complaint is time barred under New York law. ECF No. 12, PageID.57. Specifically, she cites N.Y. Surr. Ct. Pro. § 1802, which provides that "If any claim is not presented within 7 months from the date of issue of letters, the fiduciary shall not be chargeable for any assets or moneys that he may have paid in good faith in satisfaction of any lawful claims or of any legacies or distributions to the legatees or distributees of the decedent before such claim was presented."

As an initial matter, the IRS did indeed file a proof of claim that included the 2011 FBAR liability in the Surrogate's Court action on or about November 1, 2019, which is within the 7-month timeframe Karen alleges is applicable. *See* **Exhibit F**, IRS claim filed in docket no. 2019-1180; Lieb Decl. ¶ 15. However, this timeframe is not the applicable statute of limitations within which the United States must file a complaint to reduce to judgment the 2011 FBAR liability. *See United States v. Bushlow*, 832 F. Supp. 574, 580 (E.D.N.Y. 1993) (United States not bound by state law statutes of limitations). Normally, the United States has two years from the date of assessment to file a civil action seeking a money judgment for the FBAR penalties, or by January 9, 2020. *Id*. ¶ 54. However, since Velappan filed a Chapter 13 bankruptcy petition on April 12,

2018 (which was later converted to a Chapter 7 case), the automatic stay provision in 11 U.S.C. § 362 stayed the commencement of the FBAR action and tolled the statute of limitations while the bankruptcy case was pending. *Id*. Additionally, the scope of this matter falls within the safe harbor provided by the Bankruptcy Code, 11 U.S.C. § 108(c), to automatically extend the statute of limitations as a matter of law. *Id*. On November 21, 2023, Velappan's Chapter 7 case was closed without the entry of a discharge under 11 U.S.C. § 727, so the United States' complaint is timely under 31 U.S.C. § 5321(b)(2) and 11 U.S.C. §§ 108(c) and 362(c). *Id*. ¶ 49, 56.

Karen also attempts to invoke the doctrines of res judicata and collateral estoppel against the United States, but these defenses fail too. Karen argues that because the United States filed a proof of claim that included the FBARs in Velappan's bankruptcy case and the IRS received a payment towards Velappan's federal income tax liabilities, the United States is barred from reducing to judgment Velappan's 2011 FBAR liability. ECF No. 12 at PageID.59. Karen further asserts that the United States should have sought a judgment from the bankruptcy court, the district court lacks jurisdiction to "re-adjudicate" the FBAR claim, and the United States could have filed an appeal from the bankruptcy court. *Id*. Karen cites no authorities for any of these propositions.

The doctrine of res judicata*, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Allen*, 449 U.S. at 94; *Burgos*, 14 F.3d

at 789. Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *Blonder-Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313, 328–329 (1971).

The bankruptcy case involved an adjudication on the merits of the IRS's FBAR claim and involved two of the same parties: the United States and Karen Veeraswamy. While it is true that the IRS's proof of claim in the bankruptcy case included the FBAR liabilities that the IRS assessed against Velappan as unsecured general claims, the bankruptcy court's order allowing the IRS's claim over Karen's objections did not provide the United States with a money judgment it could collect against Velappan's estate. *In re Veeraswamy,* 1-18-42030-jmm, ECF No. 238. Thus, although this order could be used to bar Karen from relitigating the merits of the FBAR liabilities, it does not bar the United States from reducing the allowed penalties to a money judgment against her.

Additionally, the IRS's proof of claim sought payment for $360,013.81 for priority claims related to federal income tax liabilities and $480,744.45 for general unsecured claims, including the FBAR penalties. Compl. ¶ 45. The IRS received payment of $210,032.34, which was applied towards Velappan's unsecured federal income tax liabilities. *In re Veeraswamy*, No. 1-18-42030-jmm, ECF No. 251 (Trustee's Final Account and Distribution Report). Because the 2011 FBAR liability remains outstanding and the bankruptcy case tolled the statute of limitations for the United States to file suit to obtain a money judgment for the penalty assessments, this suit is proper and cannot be barred by res judicata or collateral estoppel.

WHEREFORE, the plaintiff United States of America requests that the Court deny Karen's motion to vacate the default and deny her motion to dismiss the complaint.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Samantha S. Lieb*
SAMANTHA S. LIEB
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-616-2901 (v)
202-514-5238 (f)
Samantha.Lieb@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record who have filed an appearance via the Court's CM/ECF system.  I further certify that on this same, I served a copy of the foregoing document via First-Class mail to:

Karen Veeraswamy
P.O. Box 244
Salamanca, NY 14779
*Pro se* defendant

/s/ Samantha S. Lieb
SAMANTHA S. LIEB
Trial Attorney, Tax Division
U.S. Department of Justice