UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                               Plaintiff,

            v.

KAREN VEERASWAMY, *as the Administrator of the Estate of Mr. Velappan Veeraswamy, Deceased*,

                             Defendant.
------------------------------------------------------------------------x

**OPINION & ORDER**

23-CV-9379
(Kovner, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff United States of America brings this action against *pro se* Defendant Karen Veeraswamy, as the administrator of the estate of her late spouse, Mr. Velappan Veeraswamy, to collect civil Report of Foreign Bank and Financial Accounts ("FBAR") penalties plus statutory additions and accruals pursuant to 31 U.S.C. § 5321(a)(5). *See* Dkt. No. 1. Presently before the Court are the Government's (1) motion to compel Defendant to amend and supplement her responses to the Government's first set of interrogatories, first set of requests for production of documents, and first set of requests for admissions (*see* Dkt. No. 30); and (2) motion to stay discovery, or, alternatively, to extend the discovery deadlines (*see* Dkt. No. 34).

For the reasons explained below, the Court (1) grants, in part, the Government's motion to compel; and (2) denies the Government's motion to stay discovery but extends the pertinent deadlines.

## I.    <u>Relevant Factual Background</u>

This case arises from the Government's action against Defendant, in her capacity as the Administrator of Mr. Veeraswamy's estate, "to collect civil FBAR penalties, plus statutory

additions, which were assess pursuant to 31 U.S.C. § 5321(a)(5) against Mr. Veeraswamy, Deceased."  Complaint, Dkt. No. 1 at 1; *id.* at ¶ 5.

The Government seeks to reduce to judgment FBAR penalties from 2011 assessed against Mr. Veeraswamy due to his failure to disclose and file FBARS for a certain Bank of India account (the "BoI Account") account exceeding $10,000.00 as required under Title 31 of the U.S. Code. *See id.* at ¶¶ 4-10, 19-67.

According to the Government, as early as 2010, Mr. Veeraswamy maintained the BoI Account in which he held a continuous "financial and beneficial interest in, and control and signatory over."  *Id.* at ¶¶ 19-20.  Mr. Veeraswamy "routinely transferred funds" into the BoI Account, ranging from deposits of $10,000 to $1.2 million during the course of 2010 and 2011. *Id.* at ¶¶ 21(a)-(c).  "The disposition of the funds in the BoI Account is now known to the United States Government."  *Id.* at ¶ 24.

Mr. Veeraswamy also formed the "Veeraswamy Educational Trust" in November of 2005, which listed "himself as a chairperson, his wife, [Defendant], and his nephew, Vishwanathan, as officers of the trust."  *Id.* at ¶ 16.  The deed of the trust "states that Mr. Veeraswamy, [Defendant], and Vishwanathan shall hold officer of the trust for their lifetime or until they resign," and the trust "holds property for the Cambridge College of Arts and Sciences."  *Id.*

After examining Mr. Veeraswamy's federal income taxes between 2010 through 2013, the Internal Revenue Service ("IRS") "conducted a parallel Title 31 examination regarding Mr. Veeraswamy's failure to file FBARs for 2010 through 2013.  *Id.* at ¶ 25.  After determining that Mr. Veeraswamy failed to disclose income, losses, and interest in or signature over any BoI Account, and after failing to file an FBAR for the BoI Account for the 2011 fiscal year, "the IRS assessed a willful FBAR penalty in the amount of $275,926 for the BoI Account."  *Id.* at ¶¶ 30-35

2

In April of 2018, Mr. Veeraswamy filed a voluntary petition for relief under Chapter 13 of the U.S. Bankruptcy Code, which was converted to a Chapter 7 case in August of 2018. *Id.* at ¶¶ 37-38; *see also In re Mr. Velappan Veeraswamy*, No. 18-42030 (JMM) (Bankr. E.D.N.Y.). The IRS "timely filed a proof of claim (Claim No. 9-1), dated September 15, 2018, in Mr. Veeraswamy's bankruptcy case in accordance with 11 U.S.C. § 501 and Fed. R. Bankr. P. 3001, 3002, and 3003." *Id.* at ¶ 40. Included in Claim No. 9-1 were "(i) outstanding income taxes assessed against Mr. Veeraswamy for the 2012 and 2013 tax years"—classified as unsecured generally claims—and "(ii) deficiencies in income taxes determined by the IRS for Mr. Veeraswamy's 2012, 2013, 2014, and 2015 tax years"—classified as unsecured priority claims. *Id.*

On or about February 6, 2019, Mr. Veeraswamy passed away. Dkt. No. 1 at ¶ 39.

On March 30, 2019, the IRS filed an amended proof of claim—Claim No. 9-2—"adding as unsecured general claims the newly-assessed civil FBAR penalties." *Id.* at ¶ 41. On April 2, 2019, Defendant "filed an objection in Mr. Veeraswamy's bankruptcy case to the allowance under 11 U.S.C. § 502 of IRS's Claims No. 9-1 and 9-2" (*id.* at ¶ 42), which she withdrew on April 23, 2019. *Id.* at ¶ 44.

After filing a third amended proof of claim—Claim No. 9-3—on June 25, 2021, which reflected a reduction in the claim for Mr. Veeraswamy's 2014 income tax liability (*id.* at ¶ 45), Defendant filed a second objection in the bankruptcy case to the allowance of Claim No. 9-3 under 11 U.S.C § 502. *Id.* at ¶ 46. The Bankruptcy Court overruled the objection on May 3, 2022. *Id.* at ¶ 49; No. 18-42030, Dkt. No. 238.

The Bankruptcy Court closed Mr. Veeraswamy's Chapter 7 case without the entry of discharge under 11 U.S.C. § 727 on November 21, 2023. Dkt. No. 1 at ¶ 49.

## II.  <u>**Relevant Procedural Background**</u>

After initiating the instant cause of action against Defendant as the Administrator of Mr. Veeraswamy's Estate, the Court scheduled an in-person initial conference for March 14, 2024. *See* Dkt. No. 5.  After requesting and receiving additional time to serve Defendant (Dkt. No. 6; Text Order dated Mar. 8, 2024), the Government filed its Summons Returned Executed indicating that it had served Defendant on March 16, 2024.  Dkt. No. 7.

On May 10, 2024, the Government requested a certificate of default due to Defendant's failure to appear.  Dkt. No. 8 at 1.  The Clerk of the Court entered a certificate of default against Defendant on May 17, 2024.  Dkt. No. 10.  The Government, however, has not yet moved for default judgment, nor has any default judgment been entered.

On May 28, 2024, Defendant, appearing *pro se*, filed a "Motion to Vacate Default, Vacate Default Judgment and Motion to Dismiss Case."  *See generally* Dkt. No. 12.  That same day, the Court, *inter alia*, issued a scheduling order governing briefing of Defendant's motion.  *See* Dkt. No. 13.  Additionally, the Court scheduled the initial conference for June 24, 2024, which was then re-scheduled to July 11, 2024.  *Id.*; Text Order dated July 1, 2024.

On July 11, 2024, the Court held the initial conference, in which the Government and *pro se* Defendant appeared.  *See* Text Order dated July 11, 2024.

After iterating that discovery was not stayed, the Court entered a discovery plan and scheduling order.  *Id.*  The Court ordered that, *inter alia*, the automatic disclosures required by Federal Rule of Civil Procedure 26(a)(1) were to be completed by August 1, 2024, and that all discovery was to be completed by December 11, 2024.  *Id.*  The parties do not anticipate expert discovery.  *Id.*

On August 23, 2024, the Government informed the Court that Defendant "refused to identify and produce automatic disclosures pursuant to in contravention of the Court's order dated July 11, 2024." *See* Text Order dated Aug. 23, 2024. Specifically, the Government explained that Defendant failed to acknowledge or otherwise respond to its initial disclosures on August 1, 2024, and further failed to respond to follow-up emails and voicemails. Dkt. No. 22 at 1-2. Defendant also failed to respond to the Government's "First Set of Interrogatories, First Set of Requests for Admission, and First set of [Requests for Production (RFPs)]." *Id.* at 2. In an August 23, 2024, communication to the Government, Defendant represented that she "has no documents to disclose to the United States." *Id.*

The Court ordered that Defendant "serve the Government with her Rule 26 disclosures by August 30, 2024." Text Order dated Aug. 23, 2024. Defendant served responses to the Government's requests, as well as her First Set of Requests for Admission on the Government on August 30, 2024. Dkt. No. 24. On September 13, 2024, Defendant served a second set of requests for admission and her first set of requests for the production of documents. Dkt. No. 27 at 1.

As it was "in the process of reviewing [Defendant's] responses" to its requests, the Government anticipated that it would send her "a letter pursuant to Federal Rule of Civil Procedure 37 asking for amended/supplemental responses." *Id.*

On October 23, 2024, the Government filed its motion to compel. *See generally* Dkt. No. 30.

On October 28, 2024, the Government filed its motion to stay, or, alternatively, to extend discovery and all case related deadlines. *See generally* Dkt. No. 34.

## III.   Discussion

### A.    The Government's Motion to Compel

1.     **Legal Standards**

a.     **Federal Rule of Civil Procedure 26**

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).  Rule 26 sets forth the parameters for reviewing proportionality, namely "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendments ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").

"[P]ermissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *White v. Cnty. of Suffolk*, No. 20-CV-1501 (JS) (JMW), 2022 WL 1154839, at *2-3 (E.D.N.Y. Apr. 19, 2022) ((citing Fed. R. Civ. P. 26(b)(1)).  Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020).  "That is, the more relevant the information sought is, the less likely a Court would find the subject discovery disproportionate." *White*, 2022 WL 1154839, at *2.  "[W]hile the scope of discovery is 'broad,' it is not 'limitless.'" *Sanders v. SUNY Downstate Med. Ctr.*, No. 22-CV-4139 (KAM) (CLP), 2024 WL 4198355, at *2 (E.D.N.Y. Sept. 16, 2024) (citations omitted); *Holloway v. City of New York*, No. 21-CV-3858 (AMD) (CMP), 2023 WL 6614599, at *8 (E.D.N.Y. Sept. 28, 2023).

b.     **Federal Rules of Civil Procedure 33 and 34**

Pursuant to Rule 33, "a party may serve on any other party no more than 25 written interrogatories . . ." Fed. R. Civ. P. 33(a)(1).  Interrogatories "may relate to any matter that may be inquired into under Rule 26(b) . . . [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Thus, "to the extent it is not objected to, [interrogatories must] be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

A party responding to an interrogatory is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories." *See Carl v. Edwards*, No. 16-CV-3863 (ADS) (AKT), 2017 WL 4271443, at *3 (E.D.N.Y. Sept. 25, 2017) (citation omitted).

Under Rule 34, a party can serve "on any other party a request within the Scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . items in the responding party's possession, custody, or control" including "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form" or "any designated tangible things." Fed. R. Civ. P. 34 (a)(1).  Objections to a Rule 34 request "'must state whether any responsive materials are being withheld *on the basis of that objection*.'" *Finkelstein v. Bical*, No. 23-CV-00049 (LDH) (SJB), 2023 WL 9119575, at *1 (E.D.N.Y. Dec. 14, 2023) (quoting Fed. R. Civ. P. 34(b)(2)(C)) (emphasis in original); *Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 773694, at *1 (S.D.N.Y. Feb. 28, 2017).

### c.    Rule 36

"Requests for admissions are unlike discovery devices such as interrogatories or requests for production," *Richard v. Dignean*, 332 F.R.D. 450, 461 (W.D.N.Y. 2019), as they "essentially, and hopefully, limit the factual issues in the case." *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003); *see also T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) ("Rule 36 is not a discovery device. The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact").

Under Rule 36, a "party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "'Each request for admissions must be direct, simple and 'limited to singular relevant facts.'" *Richard*, 332 F.R.D. at 461 (quoting *United States v. Consol. Edison Co. of N.Y.*, No. CV-88-0049 (RJD), 1988 WL 138275, at *2 (E.D.N.Y. Dec. 15, 1988)).  Although the request to admit covers all discoverable information under Rule 26(b), "including matters of facts as well as the application of law to the facts," *see id.*, it does not extend to conclusions of law.  *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) ("Rule 36, by its express terms, embraces only requests for admissions of fact or of the application of law to fact . . . To force the defendant to 'admit' [legal conclusions] would only frustrate the purposes for which Rule 36 was drafted" (quotations omitted)).

"The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4); *see Oppenheimer & Co.*, 174 F.R.D. at 43 ("In responding to a properly stated request, a party must make 'reasonable inquiry' of 'information known or readily obtainable by him' that allows him to fairly admit or deny the request" (quoting Fed. R. Civ. P. 36(a)). A respondent "may not give lack of information or knowledge as a reason for failure to admit or deny unless he has made [a reasonable] inquiry." *Oppenheimer & Co.*, 174 F.R.D. at 43 (citing *SEC v. Thrasher*, No. 92 Civ. 6987 (JFK) (MHD), 1996 WL 460148, at *2 (S.D.N.Y. Aug.13, 1996)). "What constitutes "reasonable inquiry" and what material is "readily obtainable" is a relative matter that depends upon the facts of each case." *Id.*; *Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 374 (S.D.N.Y.1989) ("under Rule 36 is a relative standard depending on the particular facts of each case"). "Rule 36 makes clear that determination of what constitutes 'reasonable inquiry' in a given case is committed to the sound discretion of the motion court." *Dubin*, 125 F.R.D. at 374 (citing *Davis v. City of New York*, 1988 WL 42189, at 3 (S.D.N.Y. April 28, 1988)).

## 2.    General Objections

As an initial matter, the Court recognizes that Defendant is proceeding in this action *pro se*. But it is well-settled that "[t]he *pro se* status of a non-compliant litigant does not relieve her of any discovery obligations." *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002) (citing *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (noting that a party's *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citations omitted). "*Pro se* litigants [] are expected to conform to the Federal Rules of Civil Procedure."

*Sentin v. Szczepankiewicz*, No. 23-CV-108 (LJV), 2024 WL 4599971, at *2 (W.D.N.Y. Oct. 29, 2024) (citations omitted).

The Government contends that Defendant, in answering its requests, relies on "impermissible boilerplate objections including a list of 'general objections' placed at the beginning of each document." Dkt. No. 30 at 2.  The Government further contends that her assertion that certain requested information "is outside of her 'possession, custody, control, or personal knowledge'" is a deficient answer to the requests given her status as the administrator of Mr. Veeraswamy's Estate.  *Id.* at 2-3.

Defendant's "General Objections and Reservation of Rights"—serving as a preamble to each of the Government's three sets of requests (*see* Dkt. No. 30-2 at 1-3; Dkt. No. 30-3 at 1-2; Dkt. No. 30-4 at 1)—is indeed improper under the current Rules of Civil Procedure.  Written responses to discovery requests must align with "numerous long-established federal discovery rules." *Finkelstein v. Bical*, No. 23-CV-00049 (LDH) (SJB), 2023 WL 9119575, at *1 (E.D.N.Y. Dec. 14, 2023).  Discovery responses beginning "with a long recitation of General Objections" that amount to "global, generalized objections to each request" are no longer permitted under the 2015 Amendments to the Federal Rules.  *CapRate Events, LLC v. Knobloch*, No. 17-CV-5907 (NGG) (SJB), 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018) (citing Fed. R. Civ. P. 34(b)(2)(B)); *Finkelstein*, 2023 WL 9119575, at *1.  The grounds for an objection to a discovery request "must be stated with specificity," and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.'"  *See Carl*, 2017 WL 4271443, at *4 (quoting Fed. R. Civ. P. 33(b)(4)).

Thus, boilerplate objections are improper as they fail to rise to the level of specificity required by the Rules. *See Pegoraro*, 281 F.R.D. at 128 ("'[B]oilerplate objections that include

unsubstantiated claims of undue burden, overbreadth and lack of relevancy,' while producing 'no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse.'" (quoting *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y.2009)); *Carl*, 2017 WL 4271443, at *4 (same); *Jones v. Mega Home & Linen, Inc.*, No. 22 CV 6010 (RER) (CLP), 2024 WL 4334178, at *4 (E.D.N.Y. Sept. 27, 2024) (finding boilerplate objections improper); *Finkelstein*, 2023 WL 9119575, at *1 (rebuking use of vacuous boilerplate language in discovery objections).

Separate from the deficiencies set forth in Defendant's general objections, the Court addresses the deficiencies in Defendant's specific responses to the Government's discovery requests, in turn, below.

### 3.    The Government's First Set of Interrogatories

In its first set of interrogatories, the Government seeks information concerning: "individuals who may have knowledge or information about the facts involved in this case and the identity of Mr. Veeraswamy's tax return preparers, CPAs, and financial or investment advisors" (Interrogatories Nos. 1 and 2); Mr. Veeraswamy's travels to India between 2010 and 2019, including the duration and purpose of each visit (Interrogatory No. 3); all real property Mr. Veeraswamy owned between 2010 and present in the United States and in India (Interrogatory Nos. 4 and 5); all foreign and domestic financial accounts from 2010 to present (Interrogatory No. 6); and if any documents responsive to the United States' RFPs could not be located, the efforts made to locate the documents and the specific reason for their unavailability (Interrogatory No. 7). *See* Dkt. No. 30-2 at 1-6; Dkt. No. 30 at 3-4.

Here, the Government's requests in its First Set of Interrogatories are well within the scope of permissible discovery.  The Government's claim—seeking to reduce to judgment penalties

assessed against Mr. Veeraswamy for failing to disclose his financial interests abroad—pertains to each of the interrogatories, as it necessarily concerns information about Mr. Veeraswamy's BoI Account, his travels to and from India, and his domestic assets and those abroad.  *See* Dkt. No. 30 at 3; *see also United States v. Bernstein*, 486 F. Supp. 3d 639, 648 (E.D.N.Y. 2020) ("the willfulness inquiry [in an FBAR penalty case] is not limited to their conduct with regard to the 2010 tax year, even though the liability may be); *United States v. Ruimi*, No. 2:22-CV-01576 (RAJ), 2024 WL 97361, at *4 (W.D. Wash. Jan. 9, 2024) (finding similar documents relevant to the Government's FBAR penalty claim against the defendant).  Thus, the Government has shown that the requested information is both relevant and proportional to the needs of its case.

Defendant, again, impermissibly relies on boilerplate objections lacking any specific explanations as to the grounds she invokes and without supporting affidavits or evidence.  *See, e.g.*, Dkt. No. 30-2 at 3-6.  Such objections cannot serve as a basis for Defendant to resist discovery. *See Pegoraro*, 281 F.R.D. at 128 ("'[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy,' while producing 'no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse.'"); *Jones*, 2024 WL 4334178, at *4 (finding boilerplate objections improper); *Finkelstein*, 2023 WL 9119575, at *1 (rebuking use of vacuous boilerplate language in discovery objections).

To the extent that Defendant objects to interrogatories that "seeks information from or of third parties and information not within [her] possession, custody, control, or personal knowledge" (Dkt. No. 30-2 at 6), her status as the Administrator of Mr. Veeraswamy's Estate renders her "stand[ing] in the shoes of the decedent."  *See Graham v. Barriger*, 699 F. Supp. 2d 612, 620 (S.D.N.Y. 2009) (stating that administrator of deceased party "stands in [the] shoes" of the decedent); *Thea v. Kleinhandler*, No. 13-CV-4895 (PKC), 2014 WL 3812231, at *7 (S.D.N.Y.

Aug. 1, 2014) (same), *aff'd*, 807 F.3d 492 (2d Cir. 2015); *cf. Burch v. 1412 Lansdowne Operating, LLC*, No. 18-CV-3000 (RPK) (ST), 2021 WL 4443768, at *5 (E.D.N.Y. Sept. 29, 2021) (citing that an administrator of an estate "merely stands in the shoes" of the decedent in finding that the administrator was bound to arbitrate claims as agreed to by the decedent). Thus, Defendant's discovery obligations include descriptions or production of documents that would have been within Mr. Veeraswamy's possession, custody or control, including those that he had "the right, authority, or practical ability to obtain." *Johnson v. Riverhead Cent. Sch. Dist.*, No. 14-CV-7130 (DRH) (AKT), 2016 WL 4507002, at *6 (E.D.N.Y. Aug. 26, 2016) ("'control of documents does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue'" (quoting *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013)).

Therefore, Defendant must comply with the Government's First Set of Interrogatories and supplement or otherwise amend her relevant responses.

### 4.    The Government's First Set of RFPs

In its First Set of RFPs, the Government seeks documents related to responses to its First Set of Interrogatories (RFP No. 1); documents in her Rule 26 initial disclosures (RFP No. 2); documents referenced in her pleadings including her motion (RFP No. 3); copies of Mr. Veeraswamy's will, trusts, and other estate planning documents (RFP No. 4); copies of documents in her possession related to the BoI Account (RFP No. 5); documents related to an educational trust established by Mr. Veeraswamy (RFP No. 6); documents related to real property in the United States or India owned by Mr. Veeraswamy at any time from January 1, 1980 to the present (RFP No. 7); copies of all credit and debit card statements for Mr. Veeraswamy's foreign and domestic accounts used from January 1, 2010 through December 31, 2012 (RFP No. 8); copies of all

checking, savings, retirement, investment, and brokerage account statements for all foreign and domestic accounts controlled or used by Mr. Veeraswamy from January 1, 2010 through December 31, 2012 (RFP No. 9); Documents related to the IRS examination (RFP No. 10); and all documents, communications, and tangible things that may be used to support her claims and defenses (RFP No. 11). Dkt. No. 30-3 at 2-7.

In objecting to the Government's RFPs, Defendant again relies on impermissible boilerplate statements that have no supporting affidavits or evidence explaining the grounds for the objections. *See, e.g.*, Dkt. No. 30-3 ("Further [RFP No.1] seeks information that maybe (sic) in the possession of, known to, or otherwise equally available to the plaintiff through public record, seeks information not within the possession, custody, or control, or personal of the Defendant, and that Plaintiff's request for discovery is not reasonably calculated to lead to any admissible evidence. Instead, it was prepared for the purpose of harassing, oppressing, embarrassing, and annoying, seeking information that is not relevant to the claims or defenses of the parties in this litigation"); *id.* at 6 ("Defendant objects to [RFP No. 9] because it is vague, ambiguous, too broad, oppressive, unduly burdensome, and is seeking information that is not relevant to the claims or defenses of the parties in this litigation . . ."); *id.* at 6-7 ("Plaintiff must request [the documents sought in RFP No. 10] from Treasure/IRS and not from Defendant").

As explained, such blanket statements cannot serve as basis for Defendant to avoid her discovery obligations. *See Pegoraro*, 281 F.R.D. at 128 ("'[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy,' while producing 'no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse.'"); *Jones*, 2024 WL 4334178, at *4 (finding boilerplate objections improper); *Finkelstein*, 2023 WL 9119575, at *1 (rebuking use of vacuous boilerplate language in discovery objections). Her

conclusory assertions fail to explain how the information requested in the RFPs are vague, overbroad, not relevant, or unduly burdensome.  Her objections are insufficient to resist discovery of the documents sought by the Government.  *See Fischer*, 2017 WL 773694, at *3 ("the responses to requests 1-2 stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing.").  Moreover, and as addressed above, Defendant's discovery obligations include production of documents that Mr. Veeraswamy had "the right, authority, or practical ability to obtain." *Johnson*, 2016 WL 4507002, at *6.

The Court does, however, limit the scope of RFP Nos. 6 and 7.  *See* Dkt. No. 30-3 at 4-5. RFPs Nos. 6 and 7 seek "[a]ll documents related to the Veeraswamy Educational Trust from January 1, 1980 to present" and "[a]ll documents related to any real properties in the United States or India owned by Mr. Veeraswamy at any time from January 1, 1980 to present," respectively.

Concerning RFP No. 6, the trust at issue was established "[o]n or about November 25, 2005."  *See* Dkt. No. 1 at ¶ 16.  The Court fails to understand how documents pre-dating the creation of the trust by 25 years are relevant to the claim alleged by the Government that involves liability stemming from 2011.  But because the willfulness inquiry of an FBAR penalty claim is not limited to conduct within a specific tax year, even though the liability may be, *See Bernstein*, 486 F. Supp. 3d at 648, the Court limits RFP No. 6 to "[a]ll documents related to the Veeraswamy Educational Trust from November 25, 2005 to the present."

Similarly, RFP No. 7 seeks documents spanning a range of 44 years.  *See* Dkt. No. 30-3 at 5.  The Government fails to address why such an expansive period is relevant to its claim concerning Mr. Veeraswamy's failure to file an FBAR for 2011.  Therefore, the Court limits the RFP No. 7 to the timeframe contained in RFP Nos. 8 and 9 (*see* Dkt. No. 30-3 at 5-6 (requesting

copies of credit and debit card statements and checking, savings, retirement, investment, and brokerage account statements "from January 1, 2010 through December 31, 2012")), such that RFP No. 7 may request "[a]ll documents related to any real properties in the United States or India owned by Mr. Veeraswamy at any time from January 1, 2010 to December 31, 2012."

Accordingly, as discussed below, the Government shall serve a revised set of RFPs on Defendant, to which Defendant must respond accordingly.

## 5.    The Government's First Set of Requests for Admission

In its first set of requests for admission, the Government seeks admissions related to its complaint, including, *inter alia*, whether Mr. Veeraswamy was a U.S. Citizen in 2011 (Request No. 1); whether Mr. Veeraswamy willfully failed to file an FBAR for the tax year of 2011 (Request Nos. 2 and 3); whether Mr. Veeraswamy owned and did not timely disclose the BoI Account to the IRS (Request No. 4); whether Mr. Veeraswamy concealed the BoI Account until the IRS began its investigation (Request No. 5); whether Mr. Veeraswamy consulted with "a competent tax professional regarding his FBRAR filing requirement for 2011" (Request No. 6); whether Mr. Veeraswamy owned, had signatory authority over, held an interest in the BoI Account at issue (Request Nos. 7-9); whether Mr. Veeraswamy held authority to control the dispotition of the money, funds, or other assets held in the BoI Account (Request No. 10); and confirmation or admissions of certain monetary values associated with the BoI Account in 2011 and 2012 (Requests Nos. 11 and 12). *See generally* Dkt. No. 30-4.

Here, and as previously explained, the Court is satisfied that the Government's discovery requests in its First Set of Requests for Admission conform with the scope of discovery under Rule 26. *See ee Bernstein*, 486 F. Supp. 3d at 648; *Ruimi*, 2024 WL 97361, at *4. Moreover, each of the requests are limited to a singular relevant fact. *See Richard*, 332 F.R.D. at 461 ("Each request

for admissions must be direct, simple and limited to singular relevant facts" (quotations and citations omitted)).

Turning to Defendant's objections and responses, Defendant again relies upon boilerplate statements devoid of any supporting documents or evidence. *See, e.g.*, Dkt. No. 30-4 at 2 ("[Request No. 1] asks for information outside of Defendant's possession, custody, control or knowledge. Responsive information may be in the possession, custody, or control of Plaintiff United States of America"); *id.* at 3-6 (objecting to the terms "willful," "disclose," "concealed," "consult," "competent," "professional," "financial interest," and "authority" "to the extent that [they] impl[y] a legal conclusion or conjecture"); *id.* at 3 ("[Request No. 4] asks for information outside of Respondent's possession, custody, control or knowledge and further objects to this Request on the ground it calls for speculation. Defendant cannot admit or deny this request and therefore den[ies] it"). Notably, Defendant asserts that although "she cannot admit or deny" many of the requests, she nonetheless "den[ies] the Request for Admission." *Id.* at 2-6.

The Court is not persuaded that Defendant has made a "reasonable inquiry" into each of the Government's requests for admissions before denying each request. *See Oppenherimer & Co.*, 174 F.R.D. at 43 ("In responding to a properly stated request, a party must make 'reasonable inquiry' of 'information known or readily obtainable by him' that allows him to fairly admit or deny the request"); *Dubin*, 125 F.R.D. at 374 (same). For example, Defendant states she "cannot admit or deny" and "therefore den[ies]" Request No. 1, which requests her to "[a]dmit that Mr. Veeraswamy was a U.S. Citizen during the 2011 year." Dkt. No. 30-4 at 2. As the Administrator of Mr. Veeraswamy's Estate, the Court is doubtful that the requested information is beyond the reach of a reasonable inquiry into the matter, given the records contained on the instant docket as

well as in the bankruptcy proceeding.  The same is true for requests pertaining to Mr. Veeraswamy's ownership or control over the BoI Account at issue.

Furthermore, Defendant's objection that certain terms used in the requests imply "legal conclusion[s] or conjecture[s]" is unpersuasive.  Although the terms may possess special legal meaning in the context of particular statutes or doctrines, no such context is present in the Government's requests.  Rather, the terms are used in their common and ordinary meaning without any requirement that Defendant attach a legal significance to those terms.  Thus, the requests do not require that she admit any pure issues of law that may render her objections valid.  *See, e.g.*, *Shea v. Sieunarine*, No. 21-CV-00673 (JCH), 2022 WL 2305554, at *3-4 (D. Conn. June 27, 2022) (rejecting a Rule 36 request that required the defendant to admit whether it fell within the definition of "motor vehicle carrier" under 49 C.F.R. § 390.5).

Thus, and although Defendant has denied each request, the Court is skeptical that she has made the necessary inquiry as required by Rule 36 before she can make such a denial.   Rule 36 serves an important function in narrowing the factual parameters of the issues presented in case, over which the Court possesses sound discretion.  *See Richard*, 332 F.R.D. at 461 ("Such requests are intended to "facilitat[e] the proof at trial by weeding out facts and items of proof over which there is no dispute" (citations omitted)); *Oppenheimer & Co.*, 174 F.R.D. at 42 ("The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact").

Accordingly, Defendant must amend or supplement her responses to each request for admission, in which she must detail the steps she took to obtaining the information before she may again deny the requests for admission.

### B.    The Government's Motion to Stay Discovery

#### 1.    Legal Standard

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Salese v. JP Morgan Chase & Co.*, No. 23-CV-153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The pendency of a dispositive motion is not, in itself, an automatic ground for a stay." *Weitzner v. Sciton, Inc.*, No. 05-CV-2533 (SLT) (MDG), 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006).  Instead, Fed. R. Civ. P. 26(c)(1) allows a court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Gross v. Madison Square Garden Ent. Corp.*, No. 23-CV-3380 (LAK) (JLC), 2023 WL 6815052, at *1 (S.D.N.Y. Oct. 17, 2023) (citations omitted).  To that end, upon a showing of good cause, "a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Id.* (citations and quotation marks omitted).

"[A] court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case." *Alford v. City of New York*, No. 11-CV-622 (ERK) (MDG), 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012) (citation omitted). "In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the [movant] has made a strong showing that the [nonmovant's] claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Amron v. 3M Minnsota Miniting & Manufacturing Company*, No. 23-CV-8959 (PKC) (JMW), 2024 WL 263010, at *2 (E.D.N.Y. Jan. 24, 2024) (citation and quotation marks omitted); *see also Republic of Turkey v.*

*Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) ("Courts should consider multiple factors, including the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay.").

Although various district courts debate which of the three factors is the most important, "there can be little doubt that simplification of the issues and prejudice to the opposing party are more important than the case's state of completion." *OV Loop, Inc. v. Mastercard Inc.*, No. 23-CV-1773 (CS), 2023 WL 7905690, at *2 (S.D.N.Y. Nov. 16, 2023) (citation omitted). "These three factors are nonexclusive, and ultimately the overarching consideration of the circumstances in their totality governs." *Id.* (citations and quotation marks omitted). "The burden is on the movant to establish that a stay is warranted." *Nike, Inc. v. Lululemon USA Inc.*, No. 22-CV-00082 (RA) (OTW), 2023 WL 2214884, at *1 (S.D.N.Y. Feb. 24, 2023) (citation omitted).

### 2. The Court Denies the Government's Request to Stay Discovery, But Grants Its Alternative Request to Extend Discovery and All Related Deadlines

The Government moves for a stay of discovery, or, alternatively, to extend the discovery deadlines. Dkt. No. 34 at 1. The Government contends that Defendant's status as a purportedly defaulted party precludes her from "actively participat[ing] in litigation" (*id.* at 1) such that the "issues before the Court are purely questions of law that are potentially dispositive," thereby warranting a stay of discovery. *Id.* at 2. Further, the Government states that a stay is warranted based on "the breadth and burden of responding to discovery" as Defendant "may continue to pepper the United States with irrelevant, written requests that appear entirely unnecessary and inappropriate, especially if her default remains intact." *Id.* at 3.

20

Defendant states that she "does not have an opinion nor request regarding stay or extension of discovery." Dkt. No. 35 at 3.

At bottom, the Government has not shown that a stay is warranted under the relevant factors. *See Amron*, 2024 WL 263010, at *2 (explaining the factors include "(1) whether the [movant] has made a strong showing that the [nonmovant's] claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay").

Taking the factors in turn, that Defendant, as a *pro se* litigant, has appeared in the case, and has actively participated in the litigation cuts against the Government's claim that she is a "defaulted party that cannot participate as a party in litigation." *See* Dkt. No. 34 at 2. Without ruling on otherwise opining with respect to the merits of her pending motion (*see* Dkt. No. 12), the Court acknowledges that Defendant appeared at the July 11, 2024 initial conference (Text Order dated July 11, 2024), she has responded to both the Government's discovery requests and the recent motions it has filed, including the two before the Court (*see generally* Dkt. Nos. 33, 35, 36) as well has having filed those of her own. *See generally* Dkt. Nos. 12, 28.

The second and third factors also weigh in favor of denying the Government's request to stay discovery. The Government states that Defendant has thus far served "two sets of requests for production, two sets of requests for admission, and one set of interrogatories" (Dkt. No. 30 at 3), to which the Government has "timely responded." *Id.* The Court is not convinced that the Government's conjecture that Defendant will "continue to pepper" warrants a stay of discovery, particularly when the Government decided to initiate this suit and is litigating against a *pro se* defendant. *Amron*, 2024 WL 263010, at *3 (explaining that a stay was warranted where "the parties could avoid substantial burden and waste of precious resources").

Moreover, Defendant would likely suffer prejudice were discovery to be stayed. Defendant would be unable to make the necessary inquiries to obtain the relevant information she may need to effectively litigate the claims brought against her by the Government. *See, e.g., Califano v. Roman Cath. Diocese of Rockville Ctr., New York*, No. 24-CV-04346 (AMD) (JMW), 2024 WL 4276170, at *10 (E.D.N.Y. Sept. 24, 2024) (noting that, in addressing a stay application, prejudice existed because "discovery is necessary to proceed with this case."). Therefore, the Court is not persuaded that discovery should be stayed at this time.

Nevertheless, the Court extends the deadline for completing discovery until February 10, 2025. The final date to take the first step in dispositive motion practice, if any, shall be February 17, 2025.

## IV. <u>Conclusion</u>

Therefore, for the reasons set forth above, the Court **grants, in part,** the Government's Motion to Compel. In an abundance of caution, and in light of Plaintiff's *pro se* status, the Government shall re-serve Defendant with a copy of its first set of interrogatories and its first set of requests for admission by **November 15, 2024.** The Government shall also serve Defendant with an amended first set of requests for production (reflecting the limits set forth in this order— namely, that RFP No. 6 be limited to "All documents related to the Veeraswamy Educational Trust from January 1, 2010 to December 31, 2012," and that RFP No. 7 shall be limited to "All documents related to any real properties in the United States or India owned by Mr. Veeraswamy at any time from January 1, 2010 to December 31, 2012") by **November 15, 2024.** The Government shall file proof service by the same date.

Defendant shall provide supplemental responses in accordance with this Opinion and Order by **December 16, 2024.** As noted herein, Defendant's responses **must** comply with all applicable

Federal Rules of Civil Procedure and Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Specifically, Defendant's supplemental responses must provide a separate response to **each** document request. If Defendant's position is that such documents do not exist or, alternatively, if Defendant maintains that they do not have responsive documents in their possession, custody, or control, then Defendant's supplemental responses shall include a statement to that effect. Defendant's supplemental responses must address each document request separately. For each response where Defendant maintains that responsive documents do not exist or, alternatively, that they do not have responsive documents in their possession, custody, or control, Defendant shall produce an additional affidavit or additional affidavits accordingly.

All discovery shall be completed by **February 10, 2024**. The final date to take the first step in dispositive motion practice, if any, shall be **February 17, 2024**.

The parties shall file a joint status report by **December 20, 2024.**

The Clerk of the Court is directed to mail a copy of this Opinion and Order to *pro se* Defendant at the address on the docket sheet.

Dated:      Brooklyn, New York
            November 13, 2024                    **SO ORDERED.**

                                        ___*/s/ Joseph A. Marutollo*___
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge