UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                              Plaintiff,

           v.

KAREN VEERASWAMY, *as the Administrator of the
Estate of Mr. Velappan Veeraswamy, Deceased*,

                              Defendant.
------------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

23-CV-9379
(Kovner, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff United States of America brings this action against *pro se* Defendant Karen Veeraswamy, as the administrator of the estate of her late spouse, Mr. Velappan Veeraswamy, to collect civil Report of Foreign Bank and Financial Accounts ("FBAR") penalties plus statutory additions and accruals pursuant to 31 U.S.C. § 5321(a)(5).  *See* Dkt. No. 1.  Presently before the Court, on referral from the Honorable Rachel P. Kovner, United States District Judge, is *pro se* Defendant's "motion to vacate default, vacate default judgment, and motion to dismiss case" pursuant to Federal Rules of Civil Procedure 12, 55(c) and 60.  *See* Dkt. No. 12; July 10, 2024 Referral Order.  The Government opposes Defendant's requests.  *See* Dkt. No. 18.

      For the reasons explained below, the Court respectfully recommends that Defendant's request to set aside the entry of default be granted under Federal Rule of Civil Procedure 55(c). The Court, however, respectfully recommends that the Defendant's motion to dismiss—and all of its subparts—be denied.

**I.**      <u>Background</u>

      **A.**      **Factual Background**

The following facts are drawn from the allegations in the Complaint (Dkt. No. 1), documents deemed incorporated by reference, and matters of which the Court may take judicial notice. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

This case arises from the Government's action against Defendant, in her capacity as the Administrator of Mr. Veeraswamy's estate, "to collect civil FBAR penalties, plus statutory additions, which were assess pursuant to 31 U.S.C. § 5321(a)(5) against Mr. Veeraswamy, Deceased." Complaint, Dkt. No. 1 at 1.[1]  The Government seeks to reduce to judgment FBAR penalties from 2011 assessed against Mr. Veeraswamy due to his failure to disclose and file FBARs for a certain Bank of India account (the "BoI Account") account exceeding $10,000.00, as required under Title 31 of the U.S. Code. *See id.* at ¶¶ 4-10, 19-67.

According to the Government, as early as 2010, Mr. Veeraswamy, a licensed real estate broker, maintained the BoI Account. *Id.* at ¶¶ 17, 19.  At all times since the BoI Account was opened, Mr. Veeraswamy held a continuous "financial and beneficial interest in, and control and signatory over, the BoI Account." *Id.* at ¶¶ 19-20.  Mr. Veeraswamy "routinely transferred funds" into the BoI Account, including deposits after sales of real estate ranging in the amounts of $10,000 to $1.2 million during the course of 2010 and 2011. *Id.* at ¶¶ 17-18, 21(a)-(c).  "The disposition of the funds in the BoI Account is not known to the United States Government." *Id.* at ¶ 24.

After examining Mr. Veeraswamy's federal income taxes between 2010 through 2013, the Internal Revenue Service "conducted a parallel Title 31 examination regarding Mr. Veeraswamy's failure to file FBARs for 2010 through 2013. *Id.* at ¶ 25.  Between 2010 and 2013, Mr. Veeraswamy purportedly filed individual income tax returns that were prepared by Mr. Masood Rana, an unenrolled tax preparer. *Id.* at ¶¶ 26-28.  In preparing the returns, Mr. Rana claims that

---

[1] Page citations are to the ECF-stamped page numbers.

Mr. Veeraswamy represented that he did not have any foreign bank accounts when probed by Mr. Rana. *Id.* at ¶ 28. Mr. Veeraswamy confirmed Mr. Rana's representation in an April 25, 2016 interview with the IRS, in which he allegedly admitted that he failed to disclose his Indian bank accounts to Mr. Rana. *Id.* at ¶ 29.

Despite signing his 2011 tax return "under penalty of perjury" (*id.* at ¶ 30) and earning interest income of "at least $18,503.19" (*id.* at ¶ 31), the Government alleges that Mr. Veeraswamy failed to report any income or loss from the BoI Account for that year. *Id.* Additionally, Mr. Veeraswamy "included a Schedule B with his tax return for the 2011 tax year," and he checked "no" to indicate "that he did not have an interest in or signature or other authority over a financial account located in a foreign country at any time during those years." *Id.* at ¶ 32.

After determining that Mr. Veeraswamy failed to disclose income, losses, and interest in or signature over any BoI Account, and after failing to file an FBAR for the BoI Account for the 2011 fiscal year, "the IRS assessed a willful FBAR penalty in the amount of $275,926 for the BoI Account." *Id.* at ¶¶ 30-35.

In April of 2018, Mr. Veeraswamy filed a voluntary petition for relief under Chapter 13 of the U.S. Bankruptcy Code, which was converted to a Chapter 7 case in August of 2018. *Id.* at ¶¶ 37-38; *see also In re Mr. Velappan Veeraswamy*, No. 18-42030 (JMM) (Bankr. E.D.N.Y.). The Bankruptcy Court appointed an interim trustee (the "Trustee") pursuant to 11 U.S.C. § 701(a) to administer the duties of 11 U.S.C. § 704, including administering the assets of Mr. Velappan's estate. *See* No. 18-42030, Dkt. No. 48; 11 U.S.C. §§ 701(a), 704.

The IRS "timely filed a proof of claim (Claim No. 9-1), dated September 15, 2018, in Mr. Veeraswamy's bankruptcy case in accordance with 11 U.S.C. § 501 and Fed. R. Bankr. P. 3001, 3002, and 3003." Dkt. No. 1 at ¶ 40. Included in Claim No. 9-1 were "(i) outstanding income

taxes assessed against Mr. Veeraswamy for the 2012 and 2013 tax years"—classified as unsecured generally claims—and "(ii) deficiencies in income taxes determined by the IRS for Mr. Veeraswamy's 2012, 2013, 2014, and 2015 tax years"—classified as unsecured priority claims. *Id.*

On or about February 6, 2019, Mr. Veeraswamy passed away. *Id.* at ¶ 39. Thereafter, and after petitioning to do so, Defendant was appointed as the administrator of Mr. Veeraswamy's estate by letters of administration issued in the Surrogate's Court of the State of New York, Queens County on April 19, 2024. *Id.* ¶ 3; Dkt. No. 18-6 at 1-5.

On March 30, 2019, the IRS filed an amended proof of claim—Claim No. 9-2—"adding as unsecured general claims the newly-assessed civil FBAR penalties." Dkt. No. 1 at ¶ 41. On April 2, 2019, Defendant "filed an objection in Mr. Veeraswamy's bankruptcy case to the allowance under 11 U.S.C. § 502 of IRS's Claims No. 9-1 and 9-2" (*id.* at ¶ 42), which she withdrew on April 23, 2019. *Id.* at ¶ 44.

After filing a third amended proof of claim—Claim No. 9-3—on June 25, 2021, which reflected a reduction in the claim for Mr. Veeraswamy's 2014 income tax liability (*id.* at ¶ 45), Defendant filed a second objection in the bankruptcy case to the allowance of Claim No. 9-3 under 11 U.S.C § 502. *Id.* at ¶ 46. The Bankruptcy Court overruled the objection on May 3, 2022. *Id.* at ¶ 49; No. 18-42030, Dkt. No. 238.

Mr. Veeraswamy's Chapter 7 case was closed without the entry of discharge under 11 U.S.C. § 727 on November 21, 2023. Dkt. No. 1 at ¶ 49; No. 18-42030, Dkt. No. 254.

### B.    Relevant Procedural Background

On December 20, 2023, the Government filed its Complaint. *See Id.* On December 26, 2023, the Clerk of the Court issued summons as to Karen Veeraswamy, listing her address as "240

W State St, Salamanca, NY 14779-1041." Dkt. No. 4. The Government contracted ABC Legal "to have a process server serve [Defendant] as soon as possible at 240 W State St., Salamanca, NY 14779." Dkt. No. 18-1 at ¶ 3. The Court scheduled an initial conference for March 14, 2024. Text Order dated December 27, 2023.

On February 10, 2024, the Government's process server "returned the summons unexecuted because vacant [*sic*] after attempting service at 240 W State St., Salamanca, NY 14779." Dkt. No. 18-2. The server additionally noted that "[t]he property appeared vacant which was supported by empty lot, overgrown, and empty inside." *Id.*

On February 12, 2024, the Government contacted "an IRS Chief Counsel attorney by email to ask for [Defendant's] address on file in an unrelated Tax Court proceeding," who confirmed that day that Defendant's address was "240 W State St. per Tax Court filings and verified by doing an Accurint search." Dkt. No. 18-1 at ¶ 5. Additionally, the Government indicated that it confirmed Defendant's address was 240 W State St "by doing a Lexis public records search on or about February 12, 2024." *Id.*

On February 16, 2024, the Government's process server "performed an investigation to find other addresses to serve [Defendant]," yielding a potentially serviceable address at 7313 71st Pl, Glendale, NY 11385. *Id.* at ¶ 6. The process server again attempted service on February 23, 2024, but returned the summons unexecuted, indicating that the landlord, a resident, and a neighbor each did not know Defendant to be a resident of the address. *Id.*; Dkt. No. 18-3.

On March 8, 2024, the Court granted the Government's request to adjourn the initial conference and extended the deadline to serve Defendant to April 18, 2024. Text Order dated March 8, 2024.

After "confirm[ing] that [Defendant's] address on file with the New York City Department of Motor Vehicles was 204 W State St., Salamanca, NY 14779" (Dkt. No. 18-1 at ¶ 7; Dkt. No. 8-2), the process server made three more attempts to serve Defendant on March 6, 2024, March 12, 2024, and March 14, 2024.  Dkt. No. 18-1 at ¶ 8; Dkt. No. 7.  On March 6, 2024 and March 14, 2024, the process server "observed packages or mail addressed to [Defendant] at [240 W State St.]."  Dkt. No. 18-1 at ¶ 8; Dkt. No. 7.  On March 12, 2024 and March 14, 2024, the process server spoke with neighbors who confirmed that Defendant resided at 240 W State St.  Dkt. No. 18-1 at ¶ 8; Dkt. No. 7.  The process server again confirmed Defendant's address on file with the New York Department of Motor Vehicles ("NY DMV") was 240 W State St.  Dkt. No. 18-1 at ¶ 8; Dkt. No. 7.

On March 16, 2024, the process server "served [Defendant] pursuant to N.Y. C.P.L.R. § 308(4) by posting the summons and complaint to the front door of 240 W State St. property and mailing the documents to her by First-Class mail in an envelope marked personal and confidential."  Dkt. No. 18-1 at ¶ 9; *see* Dkt. No. 7.  The Government filed its Summons Returned Executed indicating that it had served Defendant on March 16, 2024.  Dkt. No. 7.

On May 10, 2024, the Government requested a certificate of default due to Defendant's failure to appear.  Dkt. No. 8 at 1.  The Clerk of the Court entered a certificate of default against Defendant on May 17, 2024.  Dkt. No. 10.   The Government, however, has not yet moved for default judgment, nor has any default judgment been entered.

## C.    Defendant's Motion

On May 28, 2024, Defendant, appearing *pro se*, filed a "Motion to Vacate Default, Vacate Default Judgment and Motion to Dismiss Case" under "Federal Rules of Civil Procedure 55(c) and Rule 60 and Rule 12."  *See generally* Dkt. No. 12.  Liberally construed, Defendant's motion

argues that (1) the Government's service of process was insufficient and thus that "this court lacks personal jurisdiction over Defendant" (*id.* at 1); (2) the Government's claim is time-barred (*id.* at 8); (3) the Government failed to include a required party under Rule 19 (*id.* at 8-9); (4) the Government's claim is barred under the principles of collateral estoppel and *res judicata* (*id.* at 8-10).

That same day, the Court, *inter alia*, issued a scheduling order governing briefing of Defendant's motion. *See* Dkt. No. 13. Additionally, the Court scheduled the initial conference for June 24, 2024, which was then re-scheduled to July 11, 2024. *Id.*; Text Order dated July 1, 2024.

The Government filed its response in opposition to Defendant's motion on June 28, 2024. *See* Dkt. No. 18. The Government contends that (1) Defendant has not demonstrated good cause to set aside the default (*id.* at 18); (2) service was proper and the Court has personal jurisdiction over Defendant (*id.* at 20); (3) Defendant is the only required party to be joined under Rule 19 (*id.* at 23); and (4) the claims alleged in the Complaint are sufficient to withstand a motion to dismiss (*id.* at 25).

On July 11, 2024, the Court held the initial conference, in which both the Government and Defendant appeared. *See* Text Order dated July 11, 2024. At the conference, Defendant confirmed her email address and that her mailing address was "P.O. Box 244, Salamanca, NY 14779." *Id.* The Court further ordered the Government to re-serve its response in opposition to her motion after Defendant indicated she "did not receive the Government's opposition to her motion." *Id.* Additionally, the Court granted Defendant's request to reply to the Government's opposition. *Id.* Defendant filed her reply on July 23, 2024. *See* Dkt. No. 21.

On October 11, 2024, Defendant filed a letter requesting a "pre-motion conference for summary judgment motion or to amend the motion to dismiss." Dkt. No. 28. Specifically,

Defendant sought file "a motion for summary judgment or to amend the already filed [motion before the Court] on the basis that the FBRAR civil penalties assessed for year 2011 was not within the statute of limitation." *Id.* The Government opposed Defendant's request on October 22, 2024. *See* Dkt. No. 29.

On October 23, 2024, the Court permitted Defendant and the Government to submit briefing "limited to the question of whether the FBAR assessment for the 2011 calendar year was untimely." Text order dated Oct. 23, 2024. On October 23, 2024, Defendant filed her supplemental letter (*see* Dkt. No. 33); the Government filed its supplemental response letter on November 13, 2024. *See* Dkt. No. 37.

## II. Defendant's Request to Vacate Default

Although Defendant brings her motion "pursuant to Federal Rule of Civil Procedure 55(c) and Rule 60" and moves to "vacate default [and] vacate default judgment" (Dkt. No. 12 at 1), there has been no default judgment entered against her. Only an entry of default under Rule 55(a) has been noted against her by the Clerk of the Court. *See* Dkt. No. 10. "[W]hen a certificate of default has been entered by the Clerk of the Court, but no default judgment has been entered, then Rule 55(c) applies, which is a more lenient standard than to set aside a default judgment under Rule 60(b)." *U.S. Commodity Futures Trading Comm'n v. LaMarco*, No. 17CV4087 (DG) (JMW), 2022 WL 18859042, at *3 (E.D.N.Y. Dec. 27, 2022) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981), *report and recommendation adopted*, 2023 WL 2495869 (E.D.N.Y. Mar. 14, 2023). It is therefore against this backdrop that the Court considers the present motion to vacate the default.

### A. Legal Standards

Federal Rule of Civil Procedure 55(c) permits the Court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). A showing of good cause is evaluated by three factors, comprised of "(1) the willfulness of the default; (2) the existence of any meritorious defense; and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015); *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (articulating same standard); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (same); *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 76 (E.D.N.Y. 2010) ("When deciding a motion for a default judgment, the Second Circuit has observed that the Court is guided by the same factors which apply to a motion to set aside entry of a default") (internal quotations, citations, and alterations omitted).

The Court may consider other equitable factors, including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022) (quoting *Keebler v. Rath*, 405 F. App'x 517, 519 (2d Cir. 2010)); *see also Harring v. Pinckey*, 342 F.R.D. 47, 51 (W.D.N.Y. 2022) ("Courts may also consider other relevant equitable factors, including whether the failure to comply with the court's procedural rules was a mistake made in good faith and also whether the denial of the motion to set aside the default would result in a harsh or unfair outcome" (citing *Enron Oil*, 10 F.3d at 96)). "A motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (citing *Meehan*, 652 F.2d at 276).

"'It is well established that default judgments are disfavored,' and that '[a] clear preference exists for cases to be adjudicated on the merits.'" *Addison*, 272 F.R.D. at 77 (quoting *Pecarsky v.*

9

*Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001)).  "Because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.'" *Henry v. Oluwole*, 108 F.4th 45, 51 (2d Cir. 2024) (citing *Enron Oil*, 10 F.3d at 96).  "Courts addressing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulting party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps." *United States v. Starling*, 76 F.4th 92, 100 (2d. Cir 2023) (quotations and citations omitted).  Thus, the Court should "grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*."  *Enron Oil*, 10 F.3d at 96 ("concerns regarding the protection of a litigant's rights are heighted when the party held in default appears *pro se"*).

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil*, 10 F.3d at 95; *see also Johnson v. New York Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018) ("The determination of whether to set aside a default is left to the sound discretion of the judge, the person most familiar with the circumstances of the given case and . . . in the best position to evaluate the good faith and credibility of the parties" (quotations omitted)), *aff'd*, 800 F. App'x 18 (2d Cir. 2020).

**B.    Discussion**

**1.    Willfulness of Defendant's Default**

The willfulness of Defendant's default "looks to 'egregious or deliberate conduct,' and even 'grossly negligent' actions do not necessarily qualify."  *Starling*, 76 F.4th at 102 (citing *Am. All. Ins. Co.*, 92 F.3d at 61).  Additionally, the Court considers whether such egregious or deliberate

10

conduct "was not satisfactorily explained." *Henry*, 108 F.4th at 52 (citing *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)); *see also Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (factoring whether the defaulting party explained non-compliance due to "circumstances beyond his control"). "Willfulness 'is the most significant factor' but is not dispositive." *Henry*, 108 F.4th at 52 (quoting *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)). In this vein, a determination of willfulness does not mean that the district court "*must* let the entry of default stand." *W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69-70 (2d Cir. 2013).

Here, the Court is not persuaded that Defendant's default was willful. Defendant explains that her mailing address was updated and changed in March of 2024—the month in which most of the Government's service attempts were made. Defendant's fulsome participation in litigating the matter since appearing further supports an inference that she had previously been unaware of the suit. Defendant has appeared at the initial conference, communicated with opposing counsel concerning status reports and filings, and litigated her motion and the Government's motion to compel and stay discovery. *See, e.g.*, Dkt Nos. 12, 21, 22, 24, 27, 28, 33, 35, 36; Text Order dated July 11, 2024. Nothing in the events between the filing of the Complaint and Defendant's motion suggest that she exhibited egregious or deliberate conduct despite knowledge of the Government's Complaint that would rise to the level required to deny her request. *See, e.g.*, *Bricklayers*, 779 F.3d at 186-87 (finding willful default where defaulting party was aware of the suit pending against him and requesting additional time to respond but failing to do so); *Birnbaum*, 722 F.3d at 455 (affirming a finding of willful default where the defaulting party ignored court orders and did not contest that he received relevant legal documents).

The Government contends that Defendant's participation in Mr. Veeraswamy's bankruptcy litigation bestowed her with an understanding of "basic concepts such as responding to pleadings." Dkt. No. 18 at 18.  The Government, however, invokes no support to suggest that prior involvement in litigation overrides the protection and leeway afforded to the rights of *pro se* parties, especially those held in default.  *See Enron Oil*, 10 F.3d at 96 (acknowledging the heighted protections to the rights of a *pro se* defaulted party and cautioning stating that leave to set aside the entry of default should be freely granted).  This Circuit's preference for adjudicating disputes on the merits, and Defendant's apparent desire to do so through her participation thus far, weighs against a finding that Defendant's default was willful.

## 2.    Existence of Meritorious Defenses

Concerning the second factor, "[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co.*, 92 F.3d at 61 (citations and internal quotation omitted).  "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  *Enron Oil*, 10 F.3d at 98 (citations omitted).  "'The defense need not be ultimately persuasive at this stage,' it need only be enough 'to give the fact finder some determination to make.'" *CFTC v. Musorofiti*, No. 05-CV-3917 (ARR) (JO), 2007 WL 2089388, at *5 (E.D.N.Y. July 17, 2007) (quoting *Am. All. Ins. Co.*, 92 F.3d at 61).  The defaulting party's proffered defense must meet "the low threshold of adequacy for Rule 55 purposes," *Meehan*, 652 F. App'x at 277, which does not require the movant to "establish a meritorious defense for each claim." *LaMarco*, 2022 WL 18859042, at *9 (citing *Li v. Fleet New York Metro. Reg'l Ctr. LLC*, No. 21-CV-5185 (PKC) (RER), 2022 WL 1666963, at *7 (E.D.N.Y. May 25, 2022)).  Nonetheless,

"[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil*, 10 F.3d at 98.

Here, and without evaluating the merits of her defense, Defendant has met the threshold required to set aside her default. Defendant alleges that she updated and changed her address in March of 2024, submitting an affidavit affirming that "240 W State Street, Salamanca NY 14779 was neither [her] residence nor [her] dwelling [nor] her usually place of abode," along with a scans of an abstract from the NY DMV dated April 17, 2024 and an undated UPS shipping label suggesting the same. *See* Dkt. No. 12 at 18 (containing her affirmation); *id.* at 25 (showing her address on W State Street ended in a "-4" on her NY DMV Abstract); *id.* at 31 (displaying Defendant's shipping address as 244 W State St, Salamanca, NY 14779). Although the Court evaluates the Government's service of process below concerning Defendant's motion to dismiss under Rule 12(b)(5), Defendant's submission is sufficient to warrant vacatur of the default under Rule 55(c)'s "low threshold." *See Meehan*, 652 F. App'x at 277; *see also Am. All. Ins. Co.*, 92 F.3d at 61 ("The defense need not be ultimately persuasive at this stage"). Additionally, and under the "liberal pleading standard" afforded to documents filed by a *pro se* litigant, Defendant's submissions are above conclusory denials which a factfinder could evaluate. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'" (citations omitted)).

Thus, the second factor weighs in favor of granting Defendant's request to vacate the default entered against her.

### 3.    Prejudice to Plaintiff

To establish prejudice under the third factor, it must be shown that "delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud

and collusion." *Henry*, 108 F.4th at 52-53.  "But delay standing alone does not establish prejudice." *Enron Oil*, 10 F.3d at 98.

The Government contends that it will suffer prejudice should Defendant's default be set aside because it would require it to "expend additional time and resources in discovery and by litigating this case."  Dkt. No. 18 at 19-20.  Additionally, the Government argues that the FBAR liability will continue to accrue interest and delinquency penalties until the debt is fully paid, resulting in larger liability, and that "the most expeditious way to obtain the money judgment would be for the Court to deny [Defendant's] motion and allow [the Government] to file a motion for default judgment." *Id.* at 19.

Here, the Government's claimed prejudice does not warrant denial of Defendant's request. The Government has not claimed that future litigation of the case will result in any loss of evidence or will increase the difficulties of discovery.  Similarly, the Government has not contended that Defendant will engage in future fraud or collusion.  At bottom, the Government's claimed prejudice amounts to complaints associated with prolonged litigation and additional costs— complaints that are insufficient to establish prejudice that would override a request to set aside a default. *See Henry*, 108 F.4th at 53 (finding extra time and expense associated with additional litigation insufficient to establish prejudice); *Enron Oil*, 10 F.3d at 98 (finding requirement that nonmovant would have to re-commence litigation years later insufficient to establish prejudice); *Sec. & Exch. Comm'n v. Patel*, No. 3:21-CV-994 (SVN), 2022 WL 2704099, at *6 (D. Conn. July 12, 2022) (finding nine month delay in litigation due to the defendant's failure to respond did not prejudice the plaintiff); *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-CV-0052 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (stating that the requisite level under the factor requires prejudice that cannot be cured).

Accordingly, the third factor weighs in favor of granting Defendant's request to vacate the entry of default.

### 4.    Other Equitable Considerations

Finally, in light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. *Enron Oil*, 10 F.3d at 95-96.  Upholding Defendant's default, especially for a *pro se* party, would "bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96.  Indeed, as noted above, Defendant has repeatedly participated in litigation since filing her instant motion, including appearing at the initial conference, communicating with opposing counsel concerning status reports and filings, and litigating her motion and the Government's motion to compel and stay discovery. *See, e.g.*, Dkt Nos. 12, 21, 22, 24, 27, 28, 33, 35, 36; Text Order dated July 11, 2024.  Defendant has already expended time and resources in defending the action. Precluding Defendant's further participation in the suit would have unnecessary punitive effects, particularly at this stage of the litigation.  In short, Defendant should be afforded the opportunity to defend the suit on the merits.  *See United States v. Alongi*, 346 F. Supp. 2d 394, 396 (E.D.N.Y. 2004) (finding that *pro se* defaulted defendant showed good cause and was "entitled to defend the suit on the merits").

Accordingly, the Court respectfully recommends that the default entered against Defendant be vacated because the good cause factors under Rule 55 favor such a result.

**III.    Defendant's Request to Dismiss For Insufficient Service of Process**

**A.    Legal Standards**

A request to dismiss due to insufficient service of process is governed by Federal Rule of Civil Procedure 12(b)(5).  "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of

15

establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).

Unless otherwise provided by federal law, Rule 4(e) governs the service of an individual within a judicial district of the United States. Fed. R. Civ. P. 4(e). "An individual . . . may be served in a judicial district of the United States by (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

Under New York law, individuals can be served by "delivering the summons to the person to be served, or by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, along with mailing the summons to the person's last known address of residence." *Weifang Xinli Plastic Prod. v. JBM Trading Inc.*, No. 1:11-CV-2710 WFK (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (citing N.Y. C.P.L.R. § 308(1)-(2)), *aff'd* 583 F. App'x 24 (2d Cir. 2014).

Where service cannot be effected "with due diligence" under the methods described above, New York law permits service through "nail-and-mail" service. *Sartor v. Toussaint*, 70 F. App'x 11,13 (2d Cir. 2002). Nail-and-mail service of process entails a process servicer "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business." N.Y. C.P.L.R. § 308(4).

16

Although New York has not formulated a hard and fast rule for what constitutes a showing of "due diligence," *see Barnes v. City of New York*, 51 N.Y.2d 906, 907 (1980), case law has shaped "a rough standard." *Weifang*, 2014 WL 4244258, at *3 (collecting cases). The standard evaluates "the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency." *Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 677 (S.D.N.Y. 2003) (citing *Barnes v. City of New York*, 70 A.D.2d 580 (1979)). Service should be attempted "during times when the defendant could be reasonably expected to be found at their actual place of business, dwelling place, *or* usual place of abode." *H Roller Grp., LLC v. C & S Glob., Inc.*, No. 20-CV-5268 (NGG) (RER), 2021 WL 7908034, at *9 (E.D.N.Y. July 1, 2021) (quotations and citations omitted).

Courts have found the due diligence standard to be met, thus allowing for nail-and-mail service to be made, when the plaintiff attempts service at least three times, "optimally on non-consecutive days." *Weifang*, 2014 WL 4244258, at *3 (collecting cases). Courts have also found that the process server should inquire with neighbors, check telephone listings, and conduct public records searches to identify the defendant's location, dwelling, or place of abode before resorting to nail-and mail service. *See Sartor*, 260 F. Supp. 2d at 675-77 (collecting cases); *Johnson v. Brickhouse*, 2003 WL 355236, at *2 (S.D.N.Y. Feb.18, 2003) (finding due diligence justifying nail-and-mail service where process server verified the defendant's dwelling with a neighbor and made three separate attempts to effectuate service); *cf. Windward Bora LLC v. Edinboro*, 719 F. Supp. 3d 238, 241 (E.D.N.Y. 2024) (factoring the plaintiff's use of public record searches to uncover proper address in evaluating service of process under Section 308(5)). "Whether or not a plaintiff exercised due diligence before resorting to the nail and mail method is determined on a

case by case basis after considering the totality of the circumstances." *H Roller Grp.*, 2021 WL 7908034, at *9.

    **B.**    **Discussion**

    As an initial note, Defendant contends that the Court lacks personal jurisdiction due to insufficient service of process.  Dkt. No. 12 at 1-7.  Defendant only briefs the alleged faults in the Government's service attempts, which implicates only Rule 12(b)(5), and not Rule 12(b)(2).  *See Arch Ins. Co. v. Goldens Bridge Fire Dep't*, No. 16-CV-9921 (NSR), 2018 WL 1725225, at *3 (S.D.N.Y. Apr. 6, 2018) ("Although Defendant also moves to dismiss the Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction, Defendant only raises the issue of insufficient service of process in its motion.  Insufficient service of process, however, is properly raised under Rule 12(b)(5) rather than 12(b)(2)").  The Court thus evaluates Defendant's claim under Rule 12(b)(5) and Rule 4(e).

    Here, the Government has shown that it exercised due diligence in attempting to serve Defendant.  The Government attempted to ascertain Defendant's location through multiple public records searches, which ultimately yielded and confirmed her address at the location of service. Dkt. No. 18-1 at ¶¶ 5, 7 (reflecting that Defendant's address was listed as 240 W State St in Tax Court filings, Accurint and Lexis public records searches, and confirmation with the NY DMV). The Government's filings show that its process server attempted to serve Defendant with the Complaint on four, non-consecutive occasions, spanning various points in the afternoon and early evening.  *See* Dkt. No. 18-2 (affirming attempted service at 4:40 p.m. on February 10, 2024, at 240 W State St, Salamanca, NY 14779); Dkt. No. 7 (reflecting attempted service at 240 W State St, Salamanca, NY 14779 on: March 6, 2024 at 11:37 a.m.; March 12, 2024 at 6:17-6:19 p.m.; and March 14, 2024 at 5:05 p.m.).  The process server also spoke with neighbors on two of the

occasions and verified that Defendant resided at the address of service and observed packages addressed to Defendant.  Dkt. No. 7 (indicating process server spoke with neighbors on March 12 and March 14, 2024 and observed packages addressed to Defendant on March 6 and March 14, 2024).

Under the totality of the circumstances, the Government's efforts reflect due diligence, thus permitting its process server to resort to nail-and-mail service under N.Y. C.P.L.R. § 308(4).  *See, e.g.*, *Sartor*, 260 F. Supp. 2d at 677 (finding due diligence when service was attempted three times at different temporal periods on non-consecutive days); *Weifang*, 2014 WL 4244258, at 4 (finding due diligence when service was attempted three times at different temporal periods on non-consecutive days where the process server spoke with a neighbor about the subject); *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 262 (E.D.N.Y. 2011) (finding due diligence when service was attempted four times under similar circumstances).  Accordingly, the undersigned respectfully recommends that the Court deny Defendant's request to dismiss under Rule 12(b)(5).

Defendant seeks an evidentiary hearing "to contest or confirm or resolve the issues of neighbors and their statements, service process dates, vacant home and DMV record."  Dkt. No. 12 at 7.  Although "[a] defendant's sworn denial of receipt of service" can "rebut[] the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing," the defendant must swear to "specific facts to rebut the statements in the process server's affidavits."  *Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57-58 (2d Cir. 2002) (quotations and citations omitted); *see Davis v. Musler*, 713 F.2d 907, 914 (2d Cir. 1983) (requiring evidentiary hearing where defendants claimed non-presence at service location in "unequivocal language"); *see also Hudson Priv. LP v. Creative Wealth Media Fin. Corp.*, 629 F. Supp. 3d 237, 242-43 (S.D.N.Y. 2022) (collecting cases that require the defendant to

unequivocally deny receiving service of process with specific facts to be entitled to evidentiary hearing).

Defendant has not met this standard.  Rather, Defendant attempts to rebut Plaintiff's submissions of proper service with conclusory statements devoid of legal support (*see* Dkt. No. 12 at 5-7); a self-serving affidavit stating that the address of service was not "[her] residency nor [her] dwelling nor [her] usual place of abode" from November 2023 to March 2024, but without documentary support to confirm like billing statements (*id.* at 18); and scanned documents that are illegible (*id.* at 27) or conveniently redacted to cover her precise address (*id.* at 16, 23, 25). Although such submissions may satisfy Rule 55(c)'s low standard to vacate the entry of default as stated above, they fail to unequivocally deny that Defendant did not reside at the serviced address with specific facts.

Moreover, the Second Circuit has advised that "Rule 4 of the Federal Rules is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'"  *Sidney v. Wilson*, 228 F.R.D. 517, 524 (S.D.N.Y. 2005) (quoting *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986)).  And, "given the Second Circuit's clearly expressed preference that litigation be resolved on the merits and its guidance that incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained," *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (PKC) (ARL), 2023 WL 6450398, at *8 (E.D.N.Y. Sept. 30, 2023) (internal citations omitted), as well as the fact that Defendant has actual notice of the instant action, there is no basis to dismiss this case for failure to serve process.

Accordingly, the Court respectfully recommends that Defendant's request to dismiss the Complaint under Rule 12(b)(5) be denied.

## IV.    **Defendant's Request to Join Trustee and Be Relieved as Administrator**

### A.    **Joinder of the Trustee Under Rule 19**

Defendant contends that although she "had Letters of Administration for the estate of Velappan Veeraswamy" from the bankruptcy proceeding, "only the United States [Chapter 7] Trustees in the bankruptcy cases and their appointed attorneys fully and completely administered the estate of Velappan Veeraswamy," thus requiring their joinder to the case.  Dkt. No. 12 at 9. Defendant, however, fails to show the Trustee as a necessary party, and the Court respectfully recommends Defendant's joinder request be denied.

A party may move to dismiss pursuant to Rule 12(b)(7) for failure to join a necessary party under Rule 19.  *2 Montauk Highway LLC v. Glob. Partners LP*, 296 F.R.D. 94, 98 (E.D.N.Y. 2013); *Clifford v. Janklow*, No. 1:22-CV-1259 (MKV), 2023 WL 2711353, at *7 (S.D.N.Y. Mar. 30, 2023).  Rule 19 governs the required joinder of party that is "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction."  Fed. R. Civ. P. 19; *see also Gould v. City of New York*, No. 24-CV-1263 (RPK) (JRC), 2024 WL 3904818, at *3 (E.D.N.Y. Aug. 22, 2024) ("Rule 19(a)(1) defines the parties who are 'necessary' to an action." (quoting *Jonesfilm v. Lions Gate Int'l*, 299 F.3d 134, 139 (2d Cir. 2002))).

Rule 19 provides a two-step test for determining whether an action can be dismissed, *Meisels v. Meisels*, No. 19-CV-4767(EK) (RML), 2024 WL 3889007, at *5 (E.D.N.Y. Aug. 20, 2024), the first of which evaluates whether a party is necessary.  *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446 (S.D.N.Y. 2010); *Gould v. City of New York*, No. 24-CV-1263 (RPK) (JRC), 2024 WL 3904818, at *3 (E.D.N.Y. Aug. 22, 2024).  "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its

absence warrants dismissal under Rule 19(b)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).

A party is necessary if one of two conditions is satisfied. *Gould*, 2024 WL 3904818, at *3; *Meisels*, 2024 WL 3889007, at *5 ("As noted, Rule 19(a)(1) provides two alternative definitions of 'Required Party'). The first condition requires joinder of a party if "in that person's absence, the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). "[C]omplete relief refers only 'to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Gould*, 2024 WL 3904818, at *3 (quoting *Arkwright-Boston Mfrs. Mut. Ins. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985)).

The second condition requires joinder of a party that "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). "[S]atisfying the second prong of Rule 19(a) is contingent upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (quotations, citations, and alterations omitted); *see also Gibbs Wire & Steel Co. v. Johnson*, 255 F.R.D. 326 (D. Conn. 2009) ("In other words, 'the absent party must be the one claiming the interest. A party named in the litigation cannot assert the interest on the absent party's behalf'" (quoting *Cont'l Cas. Co. v. Am. Home Assurance Co.*, No. 5-CV-7874, 2008 WL 1752231, at *4 (S.D.N.Y. Apr. 14, 2008))).

Considering the first condition, the Court agrees with the Government that the Court can fashion relief without the presence of the Trustee to the suit. The FBAR penalties at issue concern

the two parties presently before the Court: the Government-assessed penalties against Mr. Veeraswamy's estate, to which Defendant is the administrator.  The presence of the Trustee— tasked with discrete and limited duties in connection with a separate matter before a different court—has no bearing on whether those assessments can be reduced to money judgment.  *See In re Khan*, No. 10-46901 (ESS), 2014 WL 4956676, at *50 (Bankr. E.D.N.Y. Sept. 30, 2014) (finding a debtor was not necessary under Rule 19(a)(1)(A) because the plaintiff could obtain complete relief by recovering a money judgment against the defendant).  Indeed, judgment in the instant case would not require the Trustee to do anything or change any of her positions.  *See Peregrine*, 89 F.3d at 48 (evaluating whether the party sought to be joined would have to "do anything or change any of its positions" in finding it not necessary under Rule 19); *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 178 F.R.D. 367, 370 (D. Conn. 1998) (same); *In re Churchill Tech. Inc.*, 236 B.R. 580, 582 (Bankr. W.D.N.Y. 1999) (explaining why joinder was not mandated under Rule 19).

Considering the second factor, the Trustee does not have a legally protected interest in the subject matter of the instant suit.  The Trustee was discharged in her duties as a chapter 7 Trustee on April 30, 2024, when the Bankruptcy Court closed the case.  *See* No. 18-42030, Dkt. No. 254 (Final Decree); *see also In re Raggie*, 389 B.R. 309, 312 (Bankr. E.D.N.Y. 2008) ("A bankruptcy case is "closed" pursuant to § 350 of the Bankruptcy Code after the estate is fully administered").  At no point did any party to the bankruptcy proceeding move to reopen the case under 11 U.S.C. § 350(b).  *See In re Arana*, 456 B.R. 161, 171-72 (Bankr. E.D.N.Y. 2011) ("Bankruptcy Code Section 350(b) states that a bankruptcy case that has been fully administered and closed may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause. A motion to reopen a case may be made by the debtor, the trustee, or

another party in interest." (internal quotations and citations omitted)).  The duties of the Trustee were thus terminated upon closure of Mr. Veeraswamy's chapter 7 proceeding, extinguishing any legal interest she possessed in the estate.  *See In re Woldeyohannes*, No. 18-21369 (AMN), 2024 WL 4249217, at *25 (Bankr. D. Conn. Sept. 19, 2024) (finding former chapter 7 trustee to closed case to have "no authority to act as the trustee" after the case was reopened).

Therefore, Defendant has failed to show that the Trustee is a necessary party under Rule 19(a), precluding the need for further analysis.  *See Kearney*, 212 F.3d at 724.  Accordingly, the Court respectfully recommends that Defendant's request to join the Trustee be denied.

### B.    Removal of Defendant as Administrator of the Estate

Liberally construed, Defendant also argues that she be permitted to "resign or request that [the letters of administration of Mr. Veeraswamy's estate] be revoked," or alternatively to remove her name from the suit.  Dkt. No. 12 at 9-10.  The Court respectfully recommends that Defendant's request be denied.

Rule 25 provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party."  Fed. R. Civ. P. 25(a)(1).  Although the rule does not define what constitutes a proper party, courts have routinely found that "a representative lawfully designated by state authority to represent the decedent's estate" suffices.  *See Bruccoleri v. Gangemi*, No. 17-CV-7443 (ILG), 2019 WL 499769, at *7 (E.D.N.Y. Feb. 8, 2019) (citations, quotations, and alterations omitted); *Loguidice v. Gerber Life Ins. Co.*, No. 20-CV-3254 (KMK), 2023 WL 6162925, at *4 (S.D.N.Y. Sept. 21, 2023).

"Whether a person is a proper 'successor or representative' of the decedent is determined by state law."  *Natale v. Country Ford Ltd.*, 287 F.R.D. 135, 137 (E.D.N.Y. 2012); *Loguidice*, 2023 WL 6162925, at *4.  "New York law defines a 'personal representative' as 'a person who

has received letters to administer the estate of a decedent.'" *Natale*, 287 F.R.D. at 137-38 (citing N.Y. E.P.T.L. § 1-2.13 and collecting cases).

Here, Mr. Veeraswamy passed away after accrual of his FBAR liabilities.  Thereafter, Defendant voluntarily petitioned to be and was appointed the administrator of Mr. Veeraswamy's estate by the New York Surrogate Court.  *See* Dkt. No. 18-6 at 1-5 (petition to the New York Surrogate Court by Defendant to be the administrator of Mr. Velappan's estate).  Mr. Velappan's FBAR liabilities, as remedial in nature, survived his death.  *See United States v. Hendler*, No. 23-CV-3280 (DEH), 2024 WL 4215744, at *3 (S.D.N.Y. Sept. 17, 2024) (finding FBAR liability remedial and accruing on the date it is due rather than the date assessed, thus surviving the death of the delinquent); *United States v. Wolin*, 489 F. Supp. 3d 21, 28-29 (E.D.N.Y. 2020) (finding FBAR liability remedial and surviving death).  Defendant should therefore remain as a party to the action as the administrator of Mr. Velappan's estate and the properly substituted party following his death.

Accordingly, the undersigned respectfully recommends denying Defendant's request to be removed from the action.

## V.     **Defendant's Rule 12(b)(6) Motion**

### A.     **Legal Standards**

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This means, for example, that a

complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679.

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## B.    Defendant's Argument on the Merits

"To be found liable for a willful violation under 31 U.S.C. § 5321(a)(5), the United States must prove . . . that (1) [Defendant is a] United States citizen; (2) [Defendant] had an interest in, or authority over a foreign financial account; (3) the account had a balance exceeding $10,000.00 at some point during the reporting period; and (4) [Defendant] willfully failed to disclose the account and file [FBARs]." *United States v. Reyes*, No. 21-CV-5578 (MKB), 2024 WL 437096, at *5 (E.D.N.Y. Jan. 10, 2024) (citing *United States v. Schik*, No. 20-CV-2211 (MKV), 2022 WL 685415, at *4 (S.D.N.Y. Mar. 8, 2022)) (iterating elements under summary judgment standard), *appeal dismissed*, 2024 WL 3644988 (2d Cir. May 9, 2024); *cf. United States v. Green*, 457 F. Supp. 3d 1262, 1272 (S.D. Fla. 2020) (applying same elements to evaluate the Government's complaint on motion to dismiss).

26

"Although the Second Circuit has not yet addressed the meaning of 'willful' in the context of Section 5321(a)(5), the Supreme Court has stated that 'where willfulness is a statutory condition of civil liability,' it will generally be construed to include 'not only knowing violations of a standard, but reckless ones as well.'" *Reyes*, 2024 WL 437096, at *5 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)); *see also United States v. Garrity*, 304 F. Supp. 3d 267, 273 (D. Conn. 2018) (same); *Schik*, 2022 WL 685415, at *5 ("Thus, while the Second Circuit has not yet opined on the meaning of 'willful' in the FBAR context, it has signaled that 'willful' in the civil context is an action that requires no malicious intent, i.e., a reading in line with a reckless standard. Every circuit court that has addressed this issue reads "willful" to include reckless conduct" (citations omitted)). "The Second Circuit has also held that, for the purposes of 26 U.S.C. § 6672, which provides penalties for willful failure to collect and pay withholding tax, an "individual's bad purpose or evil motive in failing to collect and pay the taxes 'properly play[s] no part in the civil definition of willfulness.'" *Reyes*, 2024 WL 437096, at *5 (quoting *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997)).

Here, the Government has sufficiently alleged facts establishing a claim for FBAR penalties against Mr. Veeraswamy's estate to survive review under Rule 12(b)(6). First, the Complaint alleges that Mr. Veeraswamy was a United States citizen during the 2011 calendar year. Dkt. No. 1 at ¶¶ 12, 58. Second, Mr. Veeraswamy is alleged to have maintained control and a financial interest in the BoI Account at issue, exemplified by transfers into the account in sums ranging from $10,000 to $1 million in 2010 and 2011. *Id.* at ¶¶ 19-22. Third, the Complaint contends that the BoI Account exceeded $10,000 during the 2011 reporting period, containing $620,461 on December 31, 2011. *Id.* at ¶¶ 21-22. Finally, Mr. Veeraswamy allegedly admitted to the IRS he knowingly failed to disclose the BoI Account to Mr. Rana after he was asked whether

he had any foreign bank accounts.  *Id.* at ¶¶ 28-29.  Mr. Veeraswamy ultimately indicated that he did not have an interest in or signatory over the BoI Account when filing his Schedule B with his 2011 tax return.  *Id.* at ¶ 32.  Mr. Veeraswamy's knowing failure resulted in submission of his 2011 tax return without disclosing his interest in the BoI Account or filing an FBAR.  *Id* at ¶ 33. The Government has thus pleaded with facial plausibility that Mr. Veeraswamy is liable for FBAR penalties under Section 5321(a)(5), to which the Government is entitled to relief.

### C.    Defendant's Timeliness Argument

Defendant asserts that the Government's claim is time barred under Section 1802 of the New York Surrogate Procedure Act, requiring a claim against a fiduciary to be brought within 7 months from the date of issue of letters.  Dkt. No. 12 at 8.  Defendant further contends that "FBAR penalties for the year 2011 that was assessed on 2018 was not within the statute of limitation and that 'transaction' was not on June 30, 2012 but was on or before December 31, 2011," and that "filing of a financial report by June 30 on the following year is not a 'Transaction' but a 'Report.'" Dkt. No. 33 at 1.

In response, the Government argues that it generally "has two years from the date of assessment to file a civil action seeking a money judgment for the FBAR penalties, or by January 9, 2020."  Dkt. No. 18 at 15 (citing 31 U.S.C. § 5321(b)(2)).  But since Mr. Veeraswamy "filed a Chapter 13 bankruptcy petition on April 12, 2018 (which was later converted to a Chapter 7 case), the automatic stay provision in 11 U.S.C. § 362 stayed the commencement of the FBAR action and tolled the statute of limitations while the case was pending."  *Id.*  Additionally, the Government argues that the scope of this matter falls within the safe harbor provided by the Bankruptcy Code, 11 U.S.C. § 108(c), to automatically extend the statute of limitations as a matter of law."  *Id.* at 18, *see also id.* at 30.   The Government submits that Mr. Veeraswamy's Chapter 7 case was closed

on November 21, 2023, without the entry of a discharge under 11 U.S.C. § 727, the United States'

complaint was timely filed under 31 U.S.C. § 5321(b)(2) and 11 U.S.C. §§ 108(c) and 362(c). *Id.*

at 18-20.

The Court agrees with the Government's argument. As an initial matter,"[w]hen the United

States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that

right, it cannot be deemed to have abdicated its governmental authority so as to become subject to

a state statute putting a time limit upon enforcement." *United States v. Summerlin*, 310 U.S. 414,

417 (1940); *United States v. Bushlow*, 832 F. Supp. 574, 580 (E.D.N.Y. 1993) (Nickerson, J.)

("The United States is not bound by state law statutes of limitations"); *United States v. Podell*, 572

F.2d 31, 35 n.7 (2d Cir. 1978) ("The United States is not subject to any statute of limitations in

enforcing its rights, unless Congress specifically provides otherwise"); *United States v. Ceparano*,

No. 98-CR-922 (ADS), 2009 WL 8690129, at *4 (E.D.N.Y. May 13, 2009) ("[A]s the United

States would be acting in a governmental capacity in prosecuting any claim of fraudulent

conveyance under New York State law, the statute of limitations presents no hurdle to that

action."). Thus, Defendant's appeal to state law is futile and should be rejected.[2]

Furthermore, Defendant's attempts to draw a distinction between a "transaction" and a

"report" is inapposite, as Defendant misconstrues the terms. FBARs must be filed by June 30 of

the year following a calendar year in which a taxpayer held interest in foreign accounts of

$10,000." *Hendler*, 2024 WL 4215744, at *2; 31 C.F.R. § 1010.306(c) ("[FBAR Reports are]

required to be filed . . . on or before June 30 of each calendar year with respect to foreign financial

accounts exceeding $10,000 maintained during the previous calendar year"). Title 31 provides an

---

[2]  The Court notes that even if Section 1802 of the New York Surrogate Procedure Act applied to the
Government's claim, the claim is timely. Defendant obtained the letters of administration in April of 2019
(Dkt. No. 12 at 8; Dkt. No 18-6), and the IRS filed a proof of claim in the Surrogate's Court on November
1, 2019. Dkt. No. 18-7.

FBAR penalty may be assessed "at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. § 5321(b)(1). "Liability for failing to file an FBAR accrues on June 30 of the year following the delinquent report. *Hendler*, 2024 WL 4215744, at *4. Thus, an FBAR action under 31 U.S.C. § 5321(a) accrues on the date such a report is due, which is June 30 of the year following the year a transaction occurred that violated Section 5321(a). *United States v. Solomon ex rel. Solomon*, 570 F. Supp. 3d 1195, 1204 (S.D. Fla. 2021) ("It is that failure to timely 'report' the underlying interest in the foreign bank account or transaction that constitutes the relevant 'violation' for purposes of assessing penalties under § 5321").

Here, the IRS assessed FBAR penalties connected with Mr. Veeraswamy's 2011 delinquency on January 9, 2018, which is within the six-year limitation period afforded under Section 5321(b)(1). *See* Dkt. No. 1 at ¶ 35; 31 U.S.C. § 5321(b)(1). The deadline for the Government to file its complaint alleging FBAR penalties was stayed when Mr. Veeraswamy filed his bankruptcy petition, which lasted until the case was closed. *See United States ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 282 (E.D.N.Y. 2006) ("Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor); 11 U.S.C. 362(c)(2)(A) (explaining that the stay under Section 362(a) operates until the time the case is closed). The remaining period for the Government to bring suit, which was a little over five and a half months, thus did not begin to run until November 21, 2023. The Government's suit, commenced 29 days after November 21, 2023, was therefore timely.

Moreover, the statute of limitations to bring the claim was separately extended 30 days from the close of the bankruptcy proceeding under 31 U.S.C. § 108(c), to a deadline of December

21, 2023. *See* Dkt. No. 1 at ¶ 49; No. 18-42030, Dkt. No. 254; *see* 11 U.S.C. § 108(c)(1) ("if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of the end of such period, including any suspension of such period occurring on or after the commencement of the case"); *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993) ("The reference in § 108(c)(1) to "suspension" of time limits . . . incorporates suspensions of deadlines that are expressly provided in other federal or state statutes.").

Accordingly, the Court respectfully recommends that Defendant's timeliness argument be rejected.

### D.  *Res Judicata* **and Collateral Estoppel**

Defendant asserts that the Government's FBAR claim "was already part of [Claim No. 9-3 before the Bankruptcy Court] that [the Government] filed in [Mr. Veeraswamy's] bankruptcy case," thus barring the Government "from making [its FBAR claim] again in this Court" under *res judicata*. Dkt. No. 1 at 10. Defendant additionally contends that because the Government "submitted its claim to [the Trustee] for the payment and not to [Defendant]" in the bankruptcy case, "the principle of collateral estoppel [bars the Government] from making claims to [Defendant]." *Id.* at 9.

The doctrines of collateral estoppel and *res judicata* are affirmative defenses, and "are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999). "Under the doctrine

of *res judicata*, otherwise known as claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 224 (E.D.N.Y. 2010) (quoting *Flaherty*, 199 F.3d at 612). The doctrine requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Jones v. Select Portfolio Servicing, Inc*., No. 23-CV-7772 (RPK) (JAM), 2024 WL 2494769, at *7 (E.D.N.Y. May 24, 2024) ("*res judicata* applies where: [](1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised, in the prior action.") (citations omitted).

Collateral estoppel is triggered "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen*, 449 U.S. at 94). The doctrine "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Flaherty*, 199 F.3d at 613. "Unlike *res judicata*, collateral estoppel does not bar a litigant from subsequently pursuing issues that were not raised in the first proceeding, but 'could have been.'" *Id.* (quoting *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)).

Here, neither doctrine precludes the Government's suit.  Although the Government and Mr. Veeraswamy's estate were involved in the proceeding before the Bankruptcy Court, No. 18-42030, the ultimate disposition of the case did not result in a judgment that could be collected against the estate.  Rather, the Bankruptcy Court merely allowed the Government's FBAR liability claim to proceed as general unsecured claims.  *See* No. 18-42030, Dkt. No. 238 (overruling Defendant's objection to general unsecured claims proceedings against the estate).

Moreover, the Bankruptcy Court did not grant Defendant a discharge when it closed the case, *see* No. 18-42030, Dkt. No. 254, and thus Defendant has not been relieved of her obligation satisfy the FBAR liability payments.  *See In re Bogdanovich*, 292 F.3d 104, 107 (2d Cir. 2002) (noting in that allowing for debts to be discharged, "Congress made it a central purpose of the bankruptcy code to give debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts.").  Because the disposition of an estate under a bankruptcy plan can cannot "discriminate unfairly against any [class of unsecured claims]," 11 U.S.C. § 1322(b)(1)), the Bankruptcy Court did not order that the general unsecured claims in Claim No. 9-3 be reduced to judgment.  *See In re Osorio*, 522 B.R. 70, 80 (Bankr. D.N.J. 2014) (finding chapter 7 debtor's plan satisfy a general unsecured claim unfairly discriminated against the remaining general unsecured creditors in violation of Section 1322(b)(1)).

Thus, there was no litigation of or adjudication on the merits *as to the payment* of the Government's FBAR claims, nor could one have been brought before the Bankruptcy Court. Because the issue could not and was not litigated or decided before the Bankruptcy Court, Defendant's *res judicata* and collateral estoppel defenses fail.

Accordingly, the Court respectfully recommends that Defendant's motion to dismiss be denied in full.

VI.    **Conclusion**

The Court therefore respectfully recommends that Defendant's request to vacate her default be granted, and that her motion to dismiss the Complaint be denied.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Defendants' counsel to serve a copy of this Report and Recommendation by overnight mail, first-class mail, and email on Plaintiff and to file proof of service on ECF by December 10, 2024. Copies shall be served at the following addresses:

> Karen Veeraswamy
> P.O. Box 244
> Salamanca, NY 14779
> 680-800-7114
> Email: ammasami@gmail.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Kovner. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    Brooklyn, New York
          December 9, 2024                    **SO ORDERED.**

                                              */s/ Joseph A. Marutollo*
                                              JOSEPH A. MARUTOLLO
                                              United States Magistrate Judge