UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                      Plaintiff,

                v.

KAREN VEERASWAMY, *as the Administrator of the*
*Estate of Mr. Velappan Veeraswamy, Deceased*,

                                  Defendant.
------------------------------------------------------------------------x

**MEMORANDUM &
ORDER**

23-CV-9379
(Kovner, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff United States of America brings this action against *pro se* Defendant Karen Veeraswamy, as the administrator of the estate of her late spouse, Mr. Velappan Veeraswamy, to collect civil Report of Foreign Bank and Financial Accounts ("FBAR") penalties plus statutory additions and accruals pursuant to 31 U.S.C. § 5321(a)(5).  *See* Dkt. No. 1.

Presently before the Court is the Government's renewed and supplemental motion for sanctions, pursuant to Federal Rule of Civil Procedure 37, against Defendant for her failures to comply with the Court's Orders and her discovery obligations, as well as Defendant's motion to stay proceedings pending her appeal to the U.S. Court of Appeals for the Second Circuit.  *See* Dkt. Nos. 77, 97, 108.

For the reasons explained below, the Court grants in part and denies in part the Government's renewed and supplemental motion for sanctions.[1]  Additionally, the Court denies Defendant's motion to stay pending appeal.[2]

## I.    Background

### A.    Factual and Procedural History

The Court presumes familiarity with the underlying facts of this action and recounts only those facts relevant to the instant motion.

This case arises from the Government's action against Defendant, in her capacity as the Administrator of Mr. Veeraswamy's estate, "to collect civil FBAR penalties, plus statutory

---

[1] As recently explained in the case styled *Equigroomer LLC v. Sleekez*, No. 23-CV-446 (SFR) (SDV), 2025 WL 2653160, at *5 (D. Conn. Sept. 16, 2025),

> A magistrate judge has authority under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) to impose non-dispositive sanctions. *See Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 47, 51 (S.D.N.Y. 2014) (magistrate judge may exercise the court's inherent authority to impose sanctions); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 492 (S.D.N.Y. 2022) ("[O]rders imposing discovery sanctions are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction disposes of a claim.") (cleaned up). "A magistrate judge's authority to order (rather than recommend) a discovery sanction does not depend on the relief requested, but rather depends on the sanction the magistrate judge actually imposes." *In re Keurig at 59; see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Because this order is not dispositive of a party's claim or defense, it is an order of the Court unless reversed or modified by the District Judge upon objection timely made. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.

*See also* L. Civ. R. 72.1 ("As judicial officers, in performing any duty, a magistrate judge may determine preliminary matters, require parties, attorneys and witnesses to appear; require briefs, proofs, and argument; and conduct any hearing, conference or other proceeding the magistrate judge may deem appropriate."). "Orders barring the introduction of certain evidence may also be properly characterized as non-dispositive." *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15-CV-1095 (PKC) (BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) ("As long as the order does not wholly dispose of a party's claim or defense, [] it falls within the grant of Rule 72(a)").

[2] *See Adams v. Suozzi*, 393 F. Supp. 2d 175 (E.D.N.Y. 2005) (finding that a Magistrate Judge's order denying a stay of discovery pending an appeal to the Second Circuit was not clearly erroneous or contrary to law).

additions, which were assess pursuant to 31 U.S.C. § 5321(a)(5) against Mr. Veeraswamy, Deceased." Dkt. No. 1 at 1.[3] The Honorable Rachel P. Kovner, United States District Judge, helpfully provided the below summary in *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 179-80 (E.D.N.Y. 2025), which the Court repeats here:

> The government alleges that, in the 2011 calendar year, Velappan Veeraswamy maintained a bank account at Bank of India with a balance in excess of $10,000 (over $600,000 as of December 31, 2011). *See* [Dkt. No. 1] ¶¶ 19-22[]. Mr. Veeraswamy regularly transferred funds from his U.S.-based bank accounts to this Bank of India account, including a transfer of $1.2 million in March 2011. Id. ¶ 21. Mr. Veeraswamy failed to file an FBAR for this account for the 2011 year. Id. ¶ 33.

> Mr. Veeraswamy filed Form 1040 individual income tax returns for the years 2010 through 2013. *Id.* ¶ 26. Masood Rana, an unenrolled tax preparer, prepared Mr. Veeraswamy's tax returns during this period. *Id.* ¶ 27. In an IRS interview in 2016, Rana stated that he asked all of his clients if they had foreign bank accounts and that Mr. Veeraswamy had answered "no" when asked; Mr. Veeraswamy also admitted in a 2016 IRS interview that he had failed to disclose his Indian bank accounts to Rana. *Id.* ¶¶ 28–29. Mr. Veeraswamy did not report any income or loss on his 2011 tax return from the Bank of India account, despite earning interest income of at least $18,503.19. *Id.* ¶ 31. He also checked a box on his 2011 tax return indicating that he did not have an interest in a financial account located in a foreign country at any time during that year. *Id.* ¶ 32.

> On January 9, 2018, the IRS assessed a willful FBAR penalty for the Bank of India account. *Id.* ¶ 35. On April 12, 2018, Mr. Veeraswamy filed a Chapter 13 voluntary bankruptcy petition, later converted to a Chapter 7 case. *Id.* ¶¶ 37-38. Mr. Veeraswamy passed away on February 6, 2019; his wife, [Defendant], is the administrator of his estate. *Id.* ¶¶ 3, 39. The Chapter 7 case was closed without the entry of a discharge under 11 U.S.C. § 727 on November 21, 2023. *Id.* ¶ 49.

> On December 20, 2023, the United States brought this action against [Defendant], in her capacity as administrator of Mr. Veeraswamy's estate, to recover the willful FBAR penalty plus statutory additions and accruals. *Id.* ¶ 57.

The Government seeks to reduce to judgment FBAR penalties from 2011 assessed against Mr. Veeraswamy due to his failure to disclose and file FBARs for a certain Bank of India account (the

---

[3] Page citations are to the ECF-stamped page numbers.

"BoI Account") account exceeding $10,000.00, as required under Title 31 of the U.S. Code. *See id.* at ¶¶ 4-10, 19-67.

The Government filed the Complaint in this action on December 20, 2023. Dkt. No. 1. After various issues in ascertaining Defendant's proper service address and the subsequent service of process (*see, e.g.*, Dkt. Nos. 6-9), the Clerk of the Court entered a certificate of default against Defendant at the Government's request on May 17, 2024. Dkt. No. 10. On May 28, 2024, Defendant appeared in the action and moved to vacate the entry of default and to dismiss the case.[4] Dkt. No. 12.

On July 11, 2024, the Court held an initial conference with the parties, where a discovery schedule was set. *See* Minute Entry dated July 11, 2024. Among other rulings, the Court ordered that all discovery was to be completed by December 11, 2024. *Id.*

### B.    Defendant's Pattern of Deficient Discovery Responses

After advising the Court of certain issues that arose relating to the parties' discovery requests on various occasions (*see* Dkt. Nos. 22, 24, 27), the Government moved to compel Defendant's responses to its First Set of Interrogatories, First Set of Requests for Production of Documents ("RFPs"), and First Set of Requests for Admission. Dkt. No. 30.

On November 13, 2024, the undersigned granted in part and denied in part the Government's motion, limiting the scope of RFPs Nos. 6 and 7,[5] but otherwise overruling

---

[4]    On December 9, 2024, the undersigned issued a Report and Recommendation to Judge Kovner recommending that Defendant's motion to vacate the entry of default be granted, but that her motion to dismiss be denied. Dkt. No. 40; *see, generally*, *United States v. Veeraswamy*, 765 F. Supp. 3d at 184-201. Judge Kovner adopted the Report and Recommendation in full on February 10, 2025. *See* Dkt. No. 53; *Veeraswamy*, 765 F. Supp. 3d at 168-184. Defendant renewed her motion to dismiss on April 1, 2025, which remains *sub judice*. *See* Dkt. No. 75.

[5] The limitations were as follows:

Defendant's boilerplate and blanket objections to all other discovery requests. *See United States v. Veeraswamy*, 347 F.R.D. 591, 600-04 (E.D.N.Y. 2024). The undersigned ordered Defendant to supplement all of her responses to the Government's requests by December 16, 2024, which Defendant was reminded should "comply with all applicable Federal Rule of Civil Procedure and Local Rules of the United States District Courts for the Southern and Eastern Districts of New York." *Id.* at 606. The Order further included the following instructions to Defendant:

> Specifically, Defendant's supplemental responses must provide a separate response to **each** document request. If Defendant's position is that such documents do not exist or, alternatively, if Defendant maintains that they do not have responsive documents in their possession, custody, or control, then Defendant's supplemental responses shall include a statement to that effect. Defendant's supplemental responses must address each document request separately. For each response where Defendant maintains that responsive documents do not exist or, alternatively, that they do not have responsive documents in their possession, custody, or control, Defendant shall produce an additional affidavit or additional affidavits accordingly.

> Concerning RFP No. 6, the trust at issue was established "[o]n or about November 25, 2005." See Dkt. No. 1 at ¶ 16. The Court fails to understand how documents pre-dating the creation of the trust by 25 years are relevant to the claim alleged by the Government that involves liability stemming from 2011. But because the willfulness inquiry of an FBAR penalty claim is not limited to conduct within a specific tax year, even though the liability may be, [], the Court limits RFP No. 6 to "[a]ll documents related to the Veeraswamy Educational Trust from November 25, 2005 to the present."

> Similarly, RFP No. 7 seeks documents spanning a range of 44 years. *See* Dkt. No. 30-3 at 5. The Government fails to address why such an expansive period is relevant to its claim concerning Mr. Veeraswamy's failure to file an FBAR for 2011. Therefore, the Court limits the RFP No. 7 to the timeframe contained in RFP Nos. 8 and 9 (*see* Dkt. No. 30-3 at 5-6 (requesting copies of credit and debit card statements and checking, savings, retirement, investment, and brokerage account statements "from January 1, 2010 through December 31, 2012")), such that RFP No. 7 may request "[a]ll documents related to any real properties in the United States or India owned by Mr. Veeraswamy at any time from January 1, 2010 to December 31, 2012."

> Accordingly, as discussed below, the Government shall serve a revised set of RFPs on Defendant, to which Defendant must respond accordingly.

*Veeraswamy*, 347 F.R.D. at 603.

*Id.* (emphasis in original).  The Court extended the deadline to complete all discovery to February 10, 2025.  *Id.*

On November 15, 2024, the Government filed a certificate of service affirming it served Defendant with the amended discovery requests that were consistent with the November 13, 2024 Order.  Dkt. No. 39.

On December 20, 2024, the parties advised the Court as to the status of discovery following the November 13, 2024 Order.  Dkt. No. 43.  The Government represented that Defendant "timely responded to [its] amended requests" on December 12, 2024.  *Id.* at 1.  The Government noted, however, that Defendant "did not produce any documents and based on an initial review of the responses by counsel for [the Government], [Defendant] failed to substantively respond to many requests."  *Id.*  Thus, the Government anticipated that it would "likely file a motion for order to show cause" based on the responses Defendant provided.  *Id.*

On December 23, 2024, as part of a Court-ordered joint letter, the Government filed its motion for an order to show cause.  Dkt. No. 46.  The Government requested that the Court issue "an order to show cause why Defendant [] should not be held in contempt for her failure to comply with the Court's [November 13, 2024 Order]."  *Id.*  The Government first highlighted that, in response to its eleven amended first set of RFPs, Defendant "did not produce a single document," but rather provided "illogical and circular discovery responses" that were replete with similar boilerplate and blanket objections that the undersigned had previously overruled."  *Id.* at 3.  The Government contended that Defendant also insisted that it was the Government's obligation to produce certain documents, as it was "the United States Trustee who was 'stand[ing] in the shoes of decedent.'"  *Id.* at 4.  Further, in response to the Government's amended first set of interrogatories, Defendant again insisted that the Government possessed the information at issue

and demanded the Government produce to her the requested information instead. *Id.* The Government proposed sanctions in the form of "rendering a default judgment against [Defendant] or at least staying discovery until total compliance is met." *Id.* at 5.

In response to the Government's motion, Defendant asserted that "[t]he fact is, [the Government] has not been compliant to Defendant['s] Discovery Requests and there are pending discovery requests the [Government] needs by answer [*sic*] by January 18, 2025." *Id.* at 6.

On January 6, 2025, the undersigned held a telephonic status conference with the parties. Minute Entry dated Jan. 6, 2025. The undersigned granted in part and denied in part the Government's motion for an order to show cause, directing Defendant to supplement and serve her responses to the Government's amended first set of interrogatories and amended first set of RFPs by January 15, 2025. *Id.* The undersigned additionally denied the Government's request to stay discovery but extended its date of completion to March 10, 2025. *Id.* Finally, the Court denied the Government's request for sanctions but noted that "should Defendant continue to fail to comply with the Court's orders, then [the Government] may move for further sanctions as necessary." *Id.*

On January 17, 2025, the Government filed a supplemental motion for sanctions. Dkt. No. 52. The motion again sought an entry of default against Defendant or a stay of all discovery due to Defendant's continued refusal to supplement her responses to the amended first set of interrogatories and amended first set of RFPs. *Id.* at 1. The Government explained that Defendant "reassert[ed] the boilerplate objections" that the requests were "either burdensome or impossible." *Id.* at 2. Defendant similarly "re-provide[d]" the same responses that the Court had already rejected, "but 'this time with a sworn statement'" in the form of a self-serving affidavit that she

included with her responses. *Id.* The Government asserted that Defendant "continues to refuse *or even identify* a single document responsive to [the Government's] requests." *Id.*

The Court granted in part and denied in part the Government's motion. Text Order dated Jan. 27, 2025. The Court ordered Defendant to supplement her responses to the amended first set of interrogatories and RFPs by January 31, 2025. *Id.* The Court, however, declined to impose sanctions. *Id.* The Court further "strongly encouraged [Defendant] to contact the Federal *Pro Se* Legal Assistance Project . . . of the City Bar Justice Center for limited-scope legal assistance." *Id.* (emphasis in original).

On February 12, 2025, the Government filed a third motion for sanctions against Defendant. Dkt. No. 54. The Government explained that in response to the Court's January 27, 2025 Order, Defendant emailed a document to the Government that stated she had "complied with the Court's [November 13, 2024] Order to compel discovery" and "timely responded to all of [the Government's discovery request[s], including Rule 26 initial disclosures." *See id.* at 2; Dkt. No. 54-1 at 1 (containing Defendant's responses). The Government additionally requested an in-person hearing to discuss the merits of the motion, and again requested a stay of discovery or entry of default judgment against Defendant. Dkt. No. 54 at 1.

On February 20, 2025, Defendant notified that Court that she was in communication with a non-profit legal organization that was potentially interested to represent her in the instant matter. Dkt. No. 58. On February 28, 2025, Defendant indicated that the organization declined representation. Dkt. No. 61.

On March 13, 2025, a hearing concerning the Government's third motion for sanctions was held before the undersigned. Minute Entry dated Mar. 13, 2025. The Court denied the Government's motion for sanctions without prejudice. *Id.* The Court afforded Defendant with

"one final opportunity to adequately supplement her discovery responses to the Government's First Set of Interrogatories and its First Requests for Production of Documents, which the Government shall serve on Defendant by March 14, 2025." *Id.* Defendant was ordered to "supplement her responses to fully respond to each of the Government's requests by March 24, 2025." *Id.* The Court warned Defendant that should she again fail to comply with the Court's order, that the Government was permitted to renew its motion for sanctions. *Id.*

### C.    The Government's Renewed Motion for Sanctions

On April 1, 2025, the Government filed its renewed motion for sanctions. Dkt. No. 77. The Government seeks sanctions under Federal Rule of Civil of Procedure 37 in connection with Defendant's deficient responses that she served on the Government on March 24, 2025. *Id.* at 7. The Government asserts that Defendant has continued to offer deficient answers to all eleven of its amended first set of RFPs, as well as "Interrogatories 5 and 7" of its amended first set of interrogatories. *Id.* at 1. The Government requests that the Court issue entry of a default judgment against Defendant "or at least find an adverse inference and otherwise prohibit [Defendant] from supporting or opposing any claims or assertions that would rely on the information sought in" the deficient discovery responses. Dkt. No. 77 at 19. That same day, the Court ordered Defendant to respond to the Government's motion by April 7, 2025. Text Order dated Apr. 1, 2025.

On April 7, 2025, during a court conference regarding her deposition, Defendant—in the middle of the conference—stated that "she had an appointment and abruptly hung up her telephone on the Court." Minute Entry and Text Order dated April 7, 2025. In a text order following the conference, the Court advised Defendant "that should she engage in any similar actions in the future, the Court may issue sanctions against her."

On April 18, 2025—four days after her deadline to respond to the Government's motion—Defendant filed a one-line response.  Dkt. No. 90.  Defendant asserted that she "has timely and fully answered all of Plaintiff's discovery requests, in an affidavit format as required by Court Order."  *Id.*  In light of her deficient filing, the Court ordered Defendant to supplement her response to address the merits of the Government's motion by April 25, 2025.  Text Order dated Apr. 18, 2025.

On April 23, 2025, Defendant filed her supplemental response.  Dkt. No. 92.  Defendant reasserted that she has "timely and fully answered all of [the Government's] discovery requests," and that her answers and responses are "self[-]explanatory."  Dkt. No. 90 at 1.  Defendant further asserts that "[i]f this court imposes any sanctions, the [C]ourt will have to justify why [D]efendant's each and every response [] is deficient and not in compliance with [the] [F]ederal [R]ules of [C]ivil [P]rocedure, and how [the Government's] each and every request has any relevance to the instant matter in this case."  *Id.* at 2.  Thus, Defendant claims that the motion is "frivolous and should be dismissed with prejudice."  *Id.*

### D.    Defendant's Actions During Her Deposition

Concurrently with the briefing and filing of the renewed motion for sanctions, discovery proceeded in the litigation.  After disputes arose concerning the taking of Defendant's deposition, the Court ordered that the deposition occur at the U.S. Attorney's Office for the Western District of New York due to Defendant's purportedly close residence to that office.  Text Order dated Apr. 11, 2025.  On April 25, 2025, the parties advised the Court that they had selected May 16, 2025, at 9:30 a.m. as the time for the deposition to occur.  Dkt. No. 93 at 1.

On May 16, 2025, counsel for the Government contacted the chambers of the undersigned and notified the Court about the status of Defendant's deposition.  Minute Entry dated May 16,

2025.  At the time of the phone call, Defendant's in-person deposition at the United States Attorney's Office in the Western District of New York was underway, and a court reporter was present to transcribe the call.  *Id.*; *see generally* Dkt. No. 97-1 (containing transcribed deposition testimony).

During the deposition, as represented by the Government and reflected by the deposition transcript (Dkt. No. 97 at 6-8; Dkt. No. 97-1), Defendant initially answered questions, although in a circuitous or otherwise evasive manner.  For example, when counsel for the Government asked Defendant if there was "any reason [Defendant would be] unable to tell the truth today?", Defendant responded by objecting to the question, asking that the question be repeated, asserting that she needed clarification, attempting to ask questions in response, and conveying that she did not want to answer the question.  Dkt. No. 97 at 6-7; *see, e.g.,* Dkt. No. 97-1 at 4 ("Q. Is there any reason you would be unable to tell the truth today? A. I really need to know what are the reasons.").

Defendant also repeatedly attempted to invoke various privileges rather than answering questions, consisting of: "HIPAA" privilege in response to whether there was a medical reason that might prevent her from answering questions truthfully (Dkt. No. 97-1 at 3-4); "personal" privilege and Fifth Amendment privilege in response to where her residential address is located (*id.* at 4-5); and privilege based on "private information" in response to whether she had any bank accounts and what information she knew about Mr. Veeraswamy's bank accounts (*id.* at 17-18). Additionally, Defendant would often remain silent for minutes at a time rather than answering questions, prompting counsel for the Government to note the passage of time on the record and repeat the question.  *See, e.g.*, *id.* at 5 (noting that "around five minutes" had passed after the Government asked a question without any verbal response by Defendant).

11

After the parties took a short break at Defendant's request and went back on the record, Defendant stated that she found the Government's questions to consist of "very personal attacks," that she was "going to take [her] Fifth Amendment [privilege] and not answer anymore of [the Government's] questions," and that the Government should "just write the Fifth [Amendment] and silence to all the answers." *Id.* at 19. Counsel for the Government noted that Defendant then "turned her chair so that her back is facing [counsel] and crossed her arms." *Id.* After additional exchanges between the parties, Defendant then reiterated her invocation of the Fifth Amendment Privilege by stating "[t]he Fifth Amendment to everything, please." *Id.* Defendant did not provide any verbal answers to questions following that statement. *See generally id.*

Due to Defendant's refusals, counsel for the Government proceeded to contact the chambers of the undersigned. *Id.* at 21-21; Minute Entry dated May 16, 2025. The Court teleconferenced into the call where Defendant, Counsel for the Government, and the court reporter were physically present in the room where Defendant's deposition was taking place. Dkt. No. 97-1 at 21; Minute Entry dated May 16, 2025.

After briefly describing Defendant's conduct prior to contacting the Court, including the absence of any verbal responses from Defendant in response to questions, the undersigned asked Defendant whether she would like to respond to the Government's position. Dkt. No. 97-1 at 22. The undersigned was met with silence from Defendant, and the counsel who was present in the room with Defendant indicated that she "is turned away [] with her arms crossed." *Id.* Counsel further noted that they were seated "at a small table, maybe three feet between [them]," and that counsel believed Defendant could hear the Court's question. *Id.*

The undersigned provided additional opportunities for Defendant to be heard, but Defendant continued ignoring the Court's questions. *Id.* at 22-23. The undersigned then

articulated that "if [Defendant] continues to verbally refuse to answer any questions," it "may result in sanctions, including potential default judgment in this case for failure to comply with not only the [Federal] Rules of Civil Procedure but also with this Order." *Id.* at 23. The undersigned additionally noted that although Defendant had the right to assert a Fifth Amendment privilege, that privilege had to be verbally invoked, and that she could not refuse to verbally respond to any requests made in a deposition. *Id.* The undersigned thus ordered Defendant to verbally respond to the Government's questions, and that if Defendant failed to comply with the Order that the Government could renew or supplement its motion for sanctions accordingly. *Id.* The Court then adjourned the conference with the parties. *Id.*

Despite the undersigned's instruction that she verbally respond to the questions asked for the remainder of her deposition, Defendant continued to refuse to answer questions and remained turned away from counsel. *Id.* at 23-27. At or around 2:53 p.m., Defendant "turned around" and raised her hand, stating that she "object[s] to all of [the Government's] questions," and that she "invoke[s] [her] Fifth Amendment [right] to remain silent throughout." *Id.* at 27. Defendant again conveyed that she did "not appreciate the line of questioning [the Government] had with [her]," and that she was "not feeling well and [she] really need[s] to go." *Id.* Counsel for the Government then stated that Defendant "has left the room and the door is closed behind her, she's walked out." *Id.*

Before ending the deposition, the Government briefly stayed on the record "in case [Defendant] changes her mind and comes back." *Id.* Defendant never returned, and the Government noted on the record its intent "to leave this deposition open, because [the parties] didn't reach [their] full[ ]time." *Id.*

### E.    The Government's Supplemental Motion and Defendant's Appeal

On June 10, 2025, pursuant to the Court's Order in the May 16, 2025 Order during Defendant's deposition, the Government supplemented its motion for sanctions to incorporate Defendant's non-cooperation during the deposition. *See generally* Dkt. No. 97. The Government again iterated its position that entry of default judgment is warranted against Defendant for her repeated defiance and noncompliance with the Court's orders, as well as her "obstructionist behaviors" during this litigation. *Id.* at 11-15.

On June 16, 2025, Defendant filed a motion styled as a "motion [to] terminate" "motion to strike," and "motion for sanctions and [to] dismiss the case." Dkt. No. 99 (internal numbering omitted). In that motion, which was essentially a discovery motion, Defendant's operative request was for sanctions, contending that the case should be dismissed because one of the Government's attorneys appeared via phone for her deposition. *Id.* at 5-6.

On June 17, 2025, the undersigned denied Defendant's request. Text Order dated June 17, 2025. In sum, the undersigned dismissed Defendant's contentions as unfounded given that one of the Government's attorneys of record was there in-person for the deposition. *Id.* The undersigned additionally allowed Defendant to respond to the supplemental motion for sanctions by July 17, 2025. *Id.*

On June 26, 2025, Defendant appealed the undersigned's June 17, 2025 denial of her discovery motion. Dkt. No. 100. On June 30, 2025, Judge Kovner denied Defendant's request. Text Order dated June 30, 2025 ("Defendant seeks sanctions, including striking the record and dismissing this case, based on one government attorney's telephone appearance at defendant's deposition. As Judge Marutollo correctly explained, the government did not violate any order because one of the two government attorneys of record appeared in person for the deposition, and

14

nothing in the record suggests that any sanction against the government is warranted in relation to defendant's deposition.").

On July 8, 2025, Defendant appealed Judge Kovner's June 30, 2025 denial of her discovery motion to the U.S. Court of Appeals for the Second Circuit. Dkt. Nos. 101-102. Defendant's notice of appeal asserts that she further appeals the Court's previous orders denying her motion to dismiss this case, notwithstanding that one such motion remains pending. *See* Dkt. Nos. 40, 53, 75, 102.

On September 10, 2025, the undersigned directed the parties to file letters indicating their position as to the next steps in the litigation following Defendant's appeal. Text Order dated Sept. 10, 2025. The Government responded on September 12, 2025, indicating that this Court maintained jurisdiction over the matter because Defendant's appeal was not of a final judgment in the case, and further because she had failed to file a stay pending appeal. Dkt. No. 105 at 1-3.

On September 16, 2025, Defendant filed her response to the Government's letter. Dkt. No. 106. Defendant argued that the Court lacked jurisdiction over the matter in light of her appeal. *Id.* at 2-3.

On September 17, 2025, the Court clarified that the case is not stayed pending Defendant's appeal absent a request to do so. Text Order dated Sept. 17, 2025. The undersigned ordered Defendant to respond to the Government's supplemental motion for sanctions by September 24, 2025, and additionally file any motions to stay the case by that same date. *Id.*

On September 18, 2025, Defendant filed a motion to stay proceedings pending her appeal. Dkt. No. 108.

On September 23, 2025, Defendant filed her response to the Government's supplemental motion for sanctions. Dkt. No. 112. In the response, Defendant reiterates many of the same

arguments already rejected by the Court. *See generally id.* Defendant further addressed some of her conduct at the May 16, 2025 deposition. *Id.* at 3-5. Defendant, incredibly, claims that the transcript "does not show that [the undersigned] actually made any order," despite citing the portion of the transcript where she was ordered to verbally respond in the sentence prior. *Id.* at 3 (quoting excerpt of the deposition transcript of the undersigned stating "I'm going to order [Defendant] to respond verbally"); *see also* Dkt. No. 97-1 at 23 (containing the following language from the Court: "But verbally not responding to any requests made in a deposition is not permissible. So I'm going to order [Defendant] to respond verbally"). Additionally, Defendant states that "[h]ad the Judge made any written order on [the day of her deposition], it was not served to Defendant until the close of the [d]eposition." *Id.* Defendant thus contends that the claims for sanctions are "frivolous." *Id.*

## II.    The Government's Discovery Requests

### A.    Legal Standard

#### i.    Federal Rule of Civil Procedure Rule 26

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Rule 26 sets forth the parameters for reviewing proportionality, namely "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendments ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").

"[P]ermissible discovery under Rule 26 must be relevant 'to any party's claim or defense,' and that means 'proportional to the needs of the case.'" *White v. Cnty. of Suffolk*, No. 20-CV-1501 (JS) (JMW), 2022 WL 1154839, at *2 (E.D.N.Y. Apr. 19, 2022) (citing Fed. R. Civ. P. 26(b)(1)). Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, 16-CV- 6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). "That is, the more relevant the information sought is, the less likely a Court would find the subject discovery disproportionate." *White*, 2022 WL 1154839, at *2. "[W]hile the scope of discovery is 'broad,' it is not 'limitless.'" *Sanders v. SUNY Downstate Med. Ctr.*, No. 22-CV-4139 (KAM) (CLP), 2024 WL 4198355, at *2 (E.D.N.Y. Sept. 16, 2024) (citations omitted); *Holloway v. City of New York*, No. 21-CV-3858 (AMD) (CMP), 2023 WL 6614599, at *8 (E.D.N.Y. Sept. 28, 2023).

### ii.     Federal Rules of Civil Procedure 33 and 34

Pursuant to Rule 33, "a party may serve on any other party no more than 25 written interrogatories[.]" Fed. R. Civ. P. 33(a)(1). Interrogatories "may relate to any matter that may be inquired into under Rule 26(b) . . . [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Thus, "to the extent it is not objected to, [interrogatories must] be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

A party responding to an interrogatory is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories." *See Carl v. Edwards*, No. 16-CV-3863 (ADS) (AKT), 2017 WL 4271443, at *3 (E.D.N.Y. Sept. 25, 2017) (citation omitted).

Under Rule 34, a party can serve "on any other party a request within the Scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or

sample . . . items in the responding party's possession, custody, or control" including "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form" or "any designated tangible things." Fed. R. Civ. P. 34 (a)(1).   Objections to a Rule 34 request "'must state whether any responsive materials are being withheld *on the basis of that objection*.'" *Finkelstein v. Bical*, No. 23-CV-00049 (LDH) (SJB), 2023 WL 9119575, at *1 (E.D.N.Y. Dec. 14, 2023) (quoting Fed. R. Civ. P. 34(b)(2)(C)) (emphasis in original); *Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 773694, at *1 (S.D.N.Y. Feb. 28, 2017).

### B.    Defendant's Belated Objection is Untimely

In response to the Government's motion, Defendant claims that the Court "will have to justify why Defendant's each and every response [] is deficient and not in compliance with [the Federal Rule of Civil Procedure], and how [the Government's] each and every request has any relevant to the instant matter in this case, which is penalty for alleged willful violation to FBAR [*sic*] for 2011 bank of India account [*sic*]."  Dkt. No. 92 at 2.

To the extent that Defendant's submission is construed to challenge the Court's Orders directing her to supplement her discovery responses, Defendant's attempts are untimely.  Pursuant to Rule 72(a) of the Federal Rules of a Civil Procedure, a party may object to a Magistrate Judge's non-dispositive ruling "within [fourteen] days after being served with a copy [of the order]." Fed. R. Civ. P. 72(a).  Defendant entirely failed to object to the November 13, 2024 Order or any of the subsequent Orders directing her to supplement her discovery responses.  Therefore, any challenge by Defendant to the scope of discovery she was ordered to produce is improper.

C.    The Outstanding Discovery Requests are Relevant and Proportional to the Needs of the Case

The Government maintains that Defendant's responses are deficient in violation of the Court's previous orders.  Dkt. No. 77 at 1.  Defendant disagrees, contending that her responses are sufficient.  Dkt. No. 90 at 1.  Although the Court has previously overruled Defendant's objections in the November 13, 2024 Order, *see Veeraswamy*, 347 F.R.D. at 600-04, in light of Defendant's *pro se* status, the undersigned will explain why the Government's requests are proper and why her responses remain deficient.

With respect to the interrogatory requests, Interrogatory No. 5 requests that Defendant "[i]dentify and describe with particularity all real property that Velappan [Veeraswamy] owned or owns (directly, indirectly, or as a nominee) within India from January 1, 2010 to present."  Dkt. No. 77 at 7; Dkt. No. 77-1 at 3 (containing interrogatories and Defendant's responses).  Defendant responded that she "does not have personal knowledge or sufficient information to identify and describe with particularity all real property that Velappan owned (directly, indirectly, or as a nominee) or may have owned within India from January 1, 2010 to present."  Dkt. No. 77 at 7; Dkt. No. 77-1 at 3.

Interrogatory No. 7 requests the following:

If any documents responsive to the [the Government's] First Set of Requests for Production of documents to Defendant [], served simultaneously herewith, cannot be located, describe with particularity the documents that could not be located, the effort made to locate the documents, and specific reason for their disappearance[] or unavailability.

Dkt. No. 77 at 7; Dkt. No. 77-1 at 4.  Defendant responded by stating that:

An explanation has been given for each of [the Government's] Amended First Set of Requests for Production of documents.  After reading Defendant's Answers to Plaintiff's First Set of Request for documents, [i]f Plaintiff can pinpoint with particularity the documents that Plaintiff is referring to that, "cannot be located",

19

Defendant will respond with the "effort made to locate the documents, and specific reason for their disappearance or unavailability."

Dkt. No. 77 at 7; Dkt. No. 77-1 at 4-5. The Government thus contends that Defendant has again failed to offer any substantive responses to the inquires, and further that she failed to detail any efforts she has taken to attempt to obtain the requested information or requested documents as required by the Court's previous orders. Dkt. No. 77 at 8.

Concerning the outstanding requests for RFPs, the Government asserts that Defendant's answers "are substantially the same responses that the Court has determined to be insufficient numerous times." *Id.* The Government's Requests for Production Nos. 1-3 seek documents "identified in, referred to, or relied upon, or in any way related to" Defendant's responses to the Government's amended first set of interrogatories, her Federal Rule of Civil Procedure 26 initial disclosures, and her pleadings and motions filed in this case. Dkt. No. 77-2 at 2-3. In response, Defendant asserts identical answers that "[a]ny documents that have been referenced" in her pleadings and motions "will be contained within the records associated" with five unrelated cases to which she is a party in courts of various jurisdiction.[6] Dkt. No. 77-2 at 3-4 (containing Defendant's responses). Defendant maintains that the records associated with those cases includes "many thousands of pages and are stored electronically at the respective courts or court websites and is accessible to [the Government]." *Id.* (emphasis omitted). In response to Request No. 3, Defendant additionally states that if the Government "can pinpoint what specific references, [the Government] is referring to, Defendant will adequately supplement the responses." *Id.* at 4.[7]

---

[6] Those citations include: *In re Veeraswamy*, No. 18-42030 (Bankr. E.D.N.Y.); *In re Veeraswamy*, 19-01018 (Bankr. E.D.N.Y.); *In re Veeraswamy*, No. 2019-1180 (New York Queen's County Surrogate Court); *In re Ashand Enterprises, Inc.*, No. 13-44999 (Bankr. E.D.N.Y.); *Veeraswamy v. Commissioner*, No. 23581-22 (T.C.). *See* Dkt. No. 77-2 at 3-4.

[7] The Court notes that Defendant incorrectly attempts to place the burden in *opposing* the Government's discovery requests *on* the Government. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D.

Requests for Production Nos. 4-10 seek certain documents relating to Mr. Veeraswamy, including those concerning: Mr. Veeraswamy's wills, trusts, and other estate planning documents; Mr. Veeraswamy's foreign bank accounts; an educational trust established in Mr. Veeraswamy's name; properties in the United States or India that are in Mr. Veeraswamy's name; credit and debit card statements for foreign and domestic accounts used by Mr. Veeraswamy; copies of Mr. Veeraswamy's checking, savings, retirement, investment, and brokerage account statements for his foreign and domestic accounts; the IRS's examination or investigation of Mr. Veeraswamy's 2010-2014 federal income taxes and 2010-2014 FBAR liabilities, including those sent to the IRS. Dkt. No. 77-2 at 4-8.  In response, Defendant denies possession of the requested documents and asserts that "[i]f any of the requested information exists, the requested information may be in the records identified in [the Government's] or Defendant's Rule 26 initial disclosure documents." *Id.* at 5.  In response to Request for Production No. 11—requesting all other documents, communications, and tangible things Defendant may use to support her claims and defenses in the case—Defendant stated that she was "not aware" of any additional information, but that she would provide such information if it became available.  Dkt. No. 77-2 at 8-9.

### i.     The Requests are Relevant and Proportional

"To be found liable for a willful violation under 31 U.S.C. § 5321(a)(5), the United States must prove . . . that (1) [Defendant is a] United States citizen[]; (2) [Defendant] had an interest in, or authority over a foreign financial account; (3) the account had a balance exceeding $10,000.00

---

85, 87 (S.D.N.Y. 2016) ("If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. Specifically, the resisting party must show how, 'despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.'" (quoting *Sokol v. Wyeth, Inc.*, No. 07-CV-8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008)).

at some point during the reporting period; and (4) [Defendant] willfully failed to disclose the account and file [FBARs]." *United States v. Reyes*, No. 21-CV-5578 (MKB), 2024 WL 437096, at *5 (E.D.N.Y. Jan. 10, 2024) (citing *United States v. Schik*, No. 20-CV-2211 (MKV), 2022 WL 685415, at *4 (S.D.N.Y. Mar. 8, 2022)), *appeal dismissed*, 2024 WL 3644988 (2d Cir. May 9, 2024); *accord United States v. Green*, 457 F. Supp. 3d 1262, 1272 (S.D. Fla. 2020).

Here, the Government's outstanding interrogatory requests and RFPs are relevant to the claims in the Complaint and proportional to the needs of the case. The requests are relevant, as they concern Mr. Veeraswamy's property, bank accounts, and financial information that directly bear on any interest in or authority over a foreign account in his name, that could have exceeded a value of $10,000.00, for which he failed to disclose or file FBARs. Other courts have found such information directly relevant to whether an individual violated 31 U.S.C. § 5321(a)(5). *See, e.g.*, *United States v. Ruimi*, No. 2:22-CV-01576 (RAJ), 2024 WL 97361, at *2-*5 (W.D. Wash. Jan. 9, 2024) (compelling discovery of similar documents); *see also Landa v. United States*, 153 Fed. Cl. 585, 595-96 (Fed. Cl. 2021) (evaluating FBAR claims based off similar documents); *Norman v. United States*, 942 F.3d 1111, 1116 (Fed. Cir. 2019) (same); *United States v. Horowitz*, 978 F.3d 80, 89-90 (4th Cir. 2020) (same); *United States v. Rum*, 995 F.3d 882, 890 (11th Cir. 2021) (same); *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1074 (S.D. Cal. 2021) (same); *Green*, 457 F. Supp. 3d at 1273 (same). Thus, the discovery requests are relevant.

Furthermore, the requests are proportional to the needs of the case. Courts have also found that documents that are outside the "years at issue" are "relevant and material to the determination of willfulness" under 31 U.S.C. § 5321(a)(5). *Ruimi*, 2024 WL 97361, at *4; *see also United States v. Bernstein*, 486 F. Supp. 3d 639, 648 (E.D.N.Y. 2020) (explaining probative value of the individual's financial history to willfulness inquiry). Additionally, the Court already narrowed the

scope of the requests, as explained in the November 13, 2024 Order. *See Veeraswamy*, 347 F.R.D. at 600-04.

Accordingly, and as this Court has repeatedly explained, the Government's outstanding discovery requests are both relevant and proportional under Rule 26 and are therefore proper.

## III.    Sanctions

### A.    Legal Standards

Federal Rule of Civil Procedure 37(b)(2) authorizes courts to impose sanctions on parties that fail to comply with discovery orders.  The rule provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  The Second Circuit has described the three purposes behind Rule 37 sanctions as follows:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Gilead Scis., Inc. v. Safe Chain Sols. LLC*, No. 21-CV-4106 (AMD) (RER), 2023 WL 4991574, at *2 (E.D.N.Y. July 19, 2023) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)), *report and recommendation adopted*, 2023 WL 5024696 (E.D.N.Y. Aug. 7, 2023).

When considering a motion for sanctions, courts in this Circuit often evaluate four factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).  These factors, however, are not exclusive, nor must each weigh

against the non-compliant party for sanctions to be imposed. *See Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 285 (S.D.N.Y. 2024) (citing *S. New England Tel. Co. v. Glob NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

Although prejudice to the moving party may weigh heavily in favor of sanctions, it is not a prerequisite in every case. *See Brevard v. Schunk*, No. 18-CV-00042 (BKS) (ML), 2020 WL 374563, at *5 (N.D.N.Y. Jan. 23, 2020) (quoting *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 129 (S.D.N.Y. 2016)). The Second Circuit and the Supreme Court have rejected a "no harm, no foul" standard, recognizing that sanctions under Rule 37 also serve broader purposes beyond addressing prejudice. *See Martinez v. City of New York*, No. 16-CV-79 (AMD) (CLP), 2018 WL 604019, at *22 (E.D.N.Y. Jan. 24, 2018) (quoting *S. New England Tel. Co.*, 624 F.3d at 148–49). Moreover, any sanction imposed must relate to the specific claim or issue addressed by the discovery order. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)).

Courts have broad discretion to determine appropriate sanctions for discovery abuses and other litigation misconduct. *See Gilead Scis.*, 2023 WL 4991574, at *2. Sanctions may include, among other remedies, deeming certain facts established, prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, striking pleadings, staying proceedings, dismissing the action, entering a default judgment, or imposing monetary penalties. *See* Fed. R. Civ. P. 37(b)(2); *see also Gilead Scis.*, 2023 WL 4991574, at *2-*3. Where "the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that

24

breached its obligation) . . . or to proceed with a trial and give an adverse inference instruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

Finally, even in the absence of a discovery order, a court may impose sanctions for discovery misconduct under its inherent authority to manage its own affairs. *See Residential Funding Corp.*, 306 F.3d at 106-07; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" (alteration in original and citation omitted)).

## B.    Sanctions Are Warranted

Here, throughout this litigation, Defendant's conduct has demonstrated a consistent disregard, disrespect, and disdain for the opposing party, the Court, and the judicial process in whole.  Defendant has unabashedly flouted direct, unequivocal orders for months, despite the Court's continued patience and generosity in affording her myriad opportunities to remedy her behavior and submissions in light of her *pro se* status.  Accordingly, and as explained below, the undersigned finds that sanctions are warranted against Defendant under Federal Rule of Civil Procedure 37(b).

### i.    Bases for Sanctions

As a preliminary matter, the Court must determine whether Defendant failed "to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  An order requiring a party to comply with its discovery obligations or with another party's discovery requests is a necessary predicate for imposing sanctions under Rule 37(b). *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017).  As the Second Circuit has explained, "[p]rovided that there is a clearly articulated order of

the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." *Daval Steel Prods.*, 951 F.2d at 1363.

Here, there is no dispute that the Court issued multiple orders directing Defendant to comply with her discovery obligations. On November 13, 2024, the Court issued its decision compelling Defendant to produce discovery responses at issue. *Veeraswamy*, 347 F.R.D. at 606.

After failing to comply with the Court's November 13, 2024 Order, the Court for a *second* time ordered Defendant to supplement her discovery responses during the January 6, 2025 conference, and additionally explicitly warned her that continued failure to comply with the Court's orders could result in sanctions. Minute Entry dated Jan. 6, 2025.

On January 27, 2025, the Court issued a *third* order directing Defendant to supplement her discovery responses. Text Order dated Jan. 27, 2025.

After Defendant again failed to adequately supplement her discovery conferences, the Court directed her for a *fourth* time to comply with its previous orders and again advised her that sanctions could be imposed for continued noncompliance. Text Order dated March 13, 2025.

On April 10, 2025, the Court issued a *fifth* Order directing Defendant to produce the discovery at issue, which she still had failed to do despite the Court initially ordering her to do so on November 13, 2024. Text Order dated April 10, 2025.

Moreover, Defendant ignored the undersigned's May 16, 2025 Order that she verbally respond to the Government's questions during her deposition when she failed to respond to the Court's Order and inquiries, as well as the Government's questions. *See* Dkt. No. 97-1 at 23.

At bottom, Defendant has blatantly violated no less than six Orders by the undersigned— five of which directly involve the discovery at issue. Accordingly, this Court concludes that Defendant failed to comply with discovery orders in violation of Fed. R. Civ. P. 37(b)(2).

26

### ii.    Willfulness

The first factor the Court must consider in assessing the Government's motion for sanctions is Defendant's "willfulness" or "reason for noncompliance." *See Agiwal*, 555 F.3d at 302.  "Non-compliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control." *Martinez*, 2018 WL 604019, at *23.

Here, Defendant's conduct reflects a pattern of willful noncompliance with the Court's Orders and an overall lack of effort in complying with her discovery obligations or participating in this litigation in good faith.  The November 13, 2024 Order contained the following language:

> Defendant shall provide supplemental responses in accordance with this Opinion and Order by **December 16, 2024.** As noted herein, Defendant's responses **must** comply with all applicable Federal Rules of Civil Procedure and Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.
>
> Specifically, Defendant's supplemental responses must provide a separate response to **each** document request. If Defendant's position is that such documents do not exist or, alternatively, if Defendant maintains that they do not have responsive documents in their possession, custody, or control, then Defendant's supplemental responses shall include a statement to that effect. Defendant's supplemental responses must address each document request separately. For each response where Defendant maintains that responsive documents do not exist or, alternatively, that they do not have responsive documents in their possession, custody, or control, Defendant shall produce an additional affidavit or additional affidavits accordingly.

*Veeraswamy*, 347 F.R.D. at 606 (emphasis in original).

During two conferences before the undersigned, Defendant was again advised as to her discovery obligations under the Federal Rules and the requirements that she follow orders from the Court.  *See* Minute Entries dated Jan. 6, 2025 & Mar. 13, 2025.  Furthermore, the Court has repeatedly warned Defendant that failure to comply with the Court's orders may result in sanctions, including the possibility of entry of default judgment.  *See, e.g.*, Minute Entry dated Jan. 6, 2025;

27

Minute Entry dated Mar. 13, 2025; Minute Entry dated Apr. 7, 2025; Text Order dated Apr. 10, 2025; Minute dated May 16, 2025. Despite the previous orders and warnings, Defendant failed to comply with the November 13, 2024 Order directing her to supplement her discovery responses.

Defendant's repeated failure to comply with the Court's discovery orders alone warrants a finding that her behavior here has been willful. *See, e.g.*, *Marquez v. Hoffman*, No. 18-CV-7315 (ALC) (GWG), 2022 WL 4076016, at *18 (S.D.N.Y. Sept. 6, 2022) ("[P]ersistent refusal to comply with discovery orders is by itself sufficient evidence of willfulness [a]nd bad faith." (citation modified)), *report and recommendation adopted*, 2023 WL 2088522 (S.D.N.Y. Feb. 17, 2023); *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-CV-3533 (CM) (BCM), 2017 WL 2840279, at *12 (S.D.N.Y. June 27, 2017) ("Willful non-compliance is routinely found, for instance, where a party has repeatedly failed to . . . produce documents . . . in violation of the district court's orders."); *In re Tartaglione*, No. 06-CV-22783 (WCC), 2008 WL 336844, at *7 (S.D.N.Y. Feb. 5, 2008) (finding willfulness where disobedient party "repeatedly failed to produce critical documents or respond to proper document requests and interrogatories, and there was reason to doubt [the party's] credibility and forthrightness"); *see also Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) ("[A] party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." (cleaned up)). That Defendant is *pro se* does not excuse her obligation to follow orders from the Court. *Agiwal*, 555 F.3d at 302 ("'[A]ll litigants, including *pro ses,* have an obligation to comply with court orders,' and failure to comply may result in sanctions, including dismissal with prejudice" (quoting *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir.1990))).

Furthermore, Defendant's conduct reflects bad faith behavior that bolsters the present need for sanctions. "Although bad faith is not required to impose sanctions pursuant to Rule 37(b)(2),

28

'intentional behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary sanctions.'" *Henry v. Miller*, No. 11-CV-1273 (PAE) (HBP), 2016 WL 11482343, at *4 (S.D.N.Y. Aug. 26, 2016) (quoting *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003)), *report and recommendation adopted*, 2016 WL 4940201 (S.D.N.Y. Sept. 15, 2016). Defendant has repeatedly exhibited intentional, bad faith behavior. For example, and apart from her noncompliance with discovery orders, Defendant has: ignored and evaded direct questions from the Court during hearings (*see, e.g.*, Minute Entry dated Apr. 7, 2025; Minute Entry dated May 16, 2025); exhibited disrespectful behavior, including abruptly hanging up on the Court during a telephone hearing (*see* Minute Entry dated Apr. 7, 2025); intentionally misrepresented the undersigned's Order during her May 16, 2025 deposition despite transcript evidence to the contrary (*compare* Minute Entry dated May 16, 2025; Dkt. No. 97-1 at 23, *with* Dkt. No. 112 at 3); and otherwise conducted herself in a manner that has substantially delayed litigation, including unnecessary involvement by the Court in scheduling and conducting her deposition (*see, e.g.*, Dkt. Nos. 65, 67, 70-71; Minute Entry dated Apr. 7, 2025).

Thus, Defendant's repeatedly inappropriate and disruptive actions support the imposition of sanctions in the present case. *See, e.g.*, *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 38 (S.D.N.Y. 2019) (imposing sanctions for similar bad faith conduct); *LeGrande v. Adecco*, 233 F.R.D. 253, 257 (N.D.N.Y. 2005) (noting bad faith conduct can lead to sanctions under Rule 37); *SEC v. Setteducate*, 419 F. App'x 23, 24-25 (2d Cir. 2011) (evaluating the defendant's bad faith behavior as a whole in affirming entry of default judgment as a Rule 37 sanction).

In short, the record supports the conclusion that Defendant willfully violated Court orders. Defendant's failure to act—despite being aware of her discovery obligations and the threat of sanctions—demonstrates an abdication of her responsibility to locate and provide discovery that

the Court has previously ordered she produce.  Accordingly, the undersigned finds that Defendant's failure to comply with discovery orders was willful.

### iii.    Duration of Noncompliance

The Court must also consider the duration of Defendant's noncompliance with the Court's discovery orders.  *See Agiwal*, 555 F.3d at 302.  "Periods of non-compliance as brief as a few months have been held to weigh in favor of dispositive sanctions."  *Martinez*, 2018 WL 604019, at *28; *see also Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (affirming dismissal under Rule 37 where party violated discovery orders for three months and deliberately and persistently violated orders to produce documents and appear for deposition); *Icon Int'l, Inc.*, 347 F.R.D. at 289 (weighing in favor of dismissal where plaintiff violated discovery orders for approximately four months).

Here, discovery issues have occurred continuously since August 23, 2024, when the Court was first advised to Defendant's behavior.  *See* Dkt. No. 22; Text Order dated Aug. 23, 2024.  The Court first ordered the production of much of this discovery in its November 13, 2024 Order.  *See Veeraswamy*, 347 F.R.D. at 606.  Since then, Defendant has either outright ignored the Court's orders or has filed inadequate and incomplete responses.  To date, Defendant has violated no less than violated five Court orders directing her to supplement her discovery responses, and to date, Defendant has *still* not produced substantially any additional documents.  This factor therefore weighs in favor of sanctions.  *See Martinez*, 2018 WL 604019 at *28; *Icon Int'l, Inc.*, 347 F.R.D. at 289.

### iv.    Efficacy of Lesser Sanctions

As noted in *Icon Int'l, Inc.*, 347 F.R.D. at 290, 296, "[a] court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the

future" (quoting *Farmer v. Hyde Your Eyes Optical, Inc.*, 13-CV-6653 (GBD) (JLC), 2015 WL 2250592, at *8 (S.D.N.Y. May 13, 2015)).  Courts, however, are not required to exhaust all possible lesser sanctions before imposing dismissal or default if such measures are appropriate under the overall record.  *See Chowdhury v. Hamza Exp. Food. Corp.*, 308 F.R.D. 74, 83 (E.D.N.Y. 2015) (quoting *S. New England Tel.*, 624 F.3d at 148).

Here, Defendant's actions throughout the litigation reflect a consistent disregard for her discovery obligations.  On no less than five occasions, the undersigned has warned Defendant that continued disregard and noncompliance with the Court's directives to supplement her responses may result in sanctions.  *See* Minute Entry dated Jan. 6, 2025; Minute Entry dated Mar. 13, 2025; Minute Entry dated Apr. 7, 2025; Text Order dated Apr. 10, 2025; Minute Entry dated May 16, 2025.

Lesser sanctions, such as monetary penalties or additional time to comply, would not remedy the harm caused or deter further misconduct.  Monetary sanctions would not address the prejudice suffered by the Government, as critical documents remain undisclosed, leaving it unable to fully pursue its claims.  Additionally, given Defendant's established pattern of non-compliance, financial penalties are unlikely to influence her behavior, particularly as they have consistently demonstrated a casual approach to her obligations and a reliance on informal practices.

Providing additional time or leniency would also prove ineffective.  Over the course of ten months, Defendant was afforded multiple opportunities to comply with discovery obligations but failed to do so.  Despite repeated orders, she neglected to perform meaningful searches, contact third parties for records, or provide satisfactory explanations for their non-compliance. Allowing further time would only serve to reward Defendant's misconduct and undermine the integrity of the discovery process.

Following ten months of non-compliance, numerous Court conferences, and repeated warnings, the Government was permitted to move for sanctions under Rule 37.  Instead of addressing the deficiencies, Defendant doubled down on her claims of full compliance.  *See, e.g.*, Dkt. No. 112 ("Defendant complied to all discovery and deposition orders of the court.").  As the *Martinez* court observed, "[t]hat the [defendant] continued to insist that [she] [was] fully compliant in this context demonstrates that lesser sanctions would not affect the defendant['s] behavior and would achieve none of the purposes of sanctions." *Martinez*, 2018 WL 604019, at *31.  "Especially in light of repeated warnings to defendants[,] . . . at a certain point, if a court does not eventually follow through on its warnings, it risks undermining its ability to control current and future would-be wayward litigants.  '[U]nless Rule 37 is perceived as a credible deterrent rather than a "paper tiger," the pretrial quagmire threatens to engulf the entire litigative process.'" *Local Union No. 40 of the Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Constr., Inc.*, 88 F. Supp. 3d 250, 265 (S.D.N.Y. 2015).

Having reviewed the current record of this case, and considering Defendant's consistent non-compliance, the Court concludes that lesser sanctions would neither compel compliance nor deter future misconduct.  Accordingly, a severe sanction is necessary to uphold the integrity of the judicial process and deter similar conduct.  This factor, therefore, weighs heavily in favor of imposing a severe sanction.

###### v.    The Court's Notices of Consequences

The Court next considers whether Defendant had notice that they could face sanctions if they failed to comply with their discovery obligations.  *See Agiwal*, 555 F.3d at 302.

As explained above, Defendant received no less than five warnings that sanctions might be imposed against her for her continued defiance of her duty to supplement her discovery responses.

These warnings were explicit, detailed, and reinforced through repeated judicial admonitions and procedural rulings, providing ample notice of the consequences of continued non-compliance. *See, e.g.,* Minute Entry dated Jan. 6, 2025; Minute Entry dated Mar. 13, 2025; Minute Entry dated Apr. 7, 2025; Text Order dated Apr. 10, 2025; Minute Entry dated May 16, 2025. Other courts have issued sanctions after similar or even fewer warnings than the five given to Defendant in the instant case, even when the noncompliant party was proceeding *pro se*. *See, e.g.*, *Shomo v. Eckert*, 345 F.R.D. 570, 583 (W.D.N.Y. 2024) (imposing case dispositive sanctions after four warnings issued to *pro se* plaintiff to comply with discovery orders); *Masi v. Steely*, 242 F.R.D. 278, 285 (S.D.N.Y. 2007) (imposing Rule 37 sanctions after the *pro se* plaintiff "flouted five court orders to comply with his discovery obligations"); *Seggos v. Datre*, No. 17-CV-2684 (MKB)(LB), 2023 WL 2969955, at *3 (E.D.N.Y. Mar. 22, 2023) (imposing sanctions against *pro se* parties after "no fewer than three warnings"), *report and recommendation adopted*, 2023 WL 4230461 (E.D.N.Y. June 28, 2023); *see also Robertson v. Dowbenko*, 443 F. App'x 659, 661 (2d Cir. 2011) (affirming Rule 37 sanctions after *pro se* party was given multiple, explicit warnings).

In conclusion, Defendant had ample notice of the risk of sanctions through explicit judicial warnings and detailed court orders. Her failure to comply, even after repeated admonitions, indicates willful non-compliance and supports the imposition of sanctions under Rule 37. The procedural history of this case underscores that Defendant was not only aware of the potential for sanctions but actively disregarded the Court's authority.

### C.    The Appropriate Sanction

Having clearly established that Defendant violated Court orders willfully and continuously, the only remaining question is the appropriate remedy. The Government seeks case-dispositive sanctions in the form of entry of default judgment against Defendant. *See* Dkt. Nos. 77, 97. In

their initial motion (Dkt. No. 77), the Government also sought, in the alternative, "a prohibition on [Defendant's] ability to introduce evidence and an adverse inference pursuant to Rule 37(b)(2)(A)(i) and (ii)."  Dkt. No. 77 at 11.  Specifically, the Government sought "an adverse inference and [an] otherwise prohibit[ion on Defendant] from supporting or opposing any claims or assertions that would rely on the information sought in Interrogatories 5 and 7 and all 11 of the United States' Requests for Production of Documents."  *See id.* at 19.  In its renewed motion (Dkt. No. 97), the Government argues that only entry of default judgment will suffice, and appear to remove their alternative request for relief.  *See* Dkt. No. 97 at 9.

Federal Rule of Civil Procedure 37 lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii).  "In addition, [Rule 37] provides that the court may issue an order that certain 'designated facts be taken as established for purposes of the action, as the prevailing party claims,' or the court may issue an order 'prohibiting the disobedient party from . . . introducing designated matters in evidence.'"  *Holloway v. City of New York*, No. 21-CV-3858 (AMD) (CLP), 2024 WL 4333761, at *11 (E.D.N.Y. Sept. 27, 2024) (citing *Figueroa v. W.M. Barr & Co.*, No. 18-CV-11187 (KHP), 2020 WL 996473, at *3 (S.D.N.Y. Mar. 2, 2020) (internal citations omitted) (precluding plaintiff from introducing or relying on an expert report in response to a summary judgment motion or at trial).

As noted above, under Fed. R. Civ. P. 37(b)(2)(A), sanctions for discovery violations may include adverse inferences or more severe measures, such as striking pleadings and the entry of default judgment.  Courts typically reserve case-dispositive sanctions for extreme cases of bad faith or egregious misconduct, particularly where lesser sanctions would be ineffective.  *See S.*

*New England Tel. Co.*, 624 F.3d at 144 (noting that severe sanctions are appropriate only in cases of willfulness, bad faith, or gross negligence, coupled with significant prejudice to the opposing party); *see also World Wide Polymers Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (explaining that striking a party's pleading "'is a drastic remedy that should be imposed only in extreme circumstances,' . . . usually after consideration of alternative, less drastic sanctions." (citation omitted)).

Although Defendant's conduct throughout this litigation has been egregious (as detailed above), striking her answer and entering default judgment is a drastic measure that effectively ends her ability to defend herself.  Such a sanction should be imposed only when lesser measures would fail to remedy the harm caused or deter future misconduct.  *See S. New England Tel. Co.*, 624 F.3d at 144; *World Wide Polymers Inc.*, 694 F.3d at 159.  Notwithstanding her improper actions, Defendant did participate, somewhat, in discovery and she should be permitted to respond to the Government's anticipated motion for summary judgment and/or defend herself at trial.

Additionally, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), seems inapposite here, especially where the Government has not proffered what facts should be taken as established for purposes of the action.  For instance, the Court is unable to designate a fact established as true in response to the Government's Interrogatory No. 5, which sought the identity and description of all real property that Mr. Veeraswamy owned within India from January 1, 2010 to the present.  It is not clear, from the face of that question, what response was anticipated, nor can the Court designate certain facts as established as a result of that query alone.

35

Instead, the appropriate sanction here is, per Fed. R. Civ. P. 37(b)(2)(A)(ii), a prohibition on Defendant from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" that would rely on the specific information sought in Interrogatory Nos. 5 and 7 and all 11 of the Government's RFPs.  Such an order is just, reasonable, and well-supported by the record while also adequately remedying the prejudice incurred by the Government as a result of Defendant's noncompliance.  *See Daval Steel Prods.*, 951 F.2d at 1367 ("Although an order . . . precluding a party from presenting evidence in opposition to [a claim] is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators."); *Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*, 295 F.R.D. 1, 15-16 (E.D.N.Y. 2013) (entering prohibition order under Rule 37(b)(2) under similar circumstances); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 204 (E.D.N.Y. 2010) (ordering preclusion sanction for repeated failures to produce ordered discovery).  Indeed, other courts have imposed harsher sanctions for similar or lesser conduct than that of Defendant in the instant matter.  *See, e.g., Setteducate*, 419 F. App'x at 25 (affirming entry of default against a defendant who repeatedly failed to produce discovery requests, refused to attend depositions, flouted court orders, and deliberately attempted to delay the litigation); *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 452 (2d Cir. 2013) (affirming entry of default against *pro se* defendant who was warned six times about sanctions for continued noncompliance with the court's orders); *Burrell v. Am. Tel. & Tel. Corp.*, 282 F. App'x 66, 67-68 (2d Cir. 2008) (affirming dismissal of the plaintiff's complaint under Rule 37 after he repeatedly concealed relevant and discoverable information, misrepresented facts at his deposition, and otherwise obstructed the litigation); *Proctor v. Poole*, 233 F.R.D. 323, 325 (W.D.N.Y. 2006) (dismissing *pro se* plaintiff's

complaint under Rule 37 after he failed to appear for depositions and otherwise respond to court orders).

Accordingly, the Court finds that the appropriate sanction in the instant case is prohibiting Defendant from supporting or opposing designated claims or defenses and from introducing matters in evidence concerning Interrogatory Nos. 5 and 7 and all 11 of the Government's Requests for Production of Documents pursuant to Rule 37(b)(2)(A)(ii), subject to the limitations set forth below. To be clear, the Court's sanction here does *not* wholly dispose of Defendant's claims or defenses. Rather, Defendant is prohibited from supporting or opposing designated claims or defenses, and from introducing designated matters in evidence that rely on the following:

(a) all real property that Mr. Veeraswamy owned or owns (directly, indirectly, or as a nominee) within India from January 1, 2010 to present (Interrogatory No. 5);

(b) "If any documents responsive to the Plaintiff United States's First Set of Requests for Production of documents to Defendant Karen [], cannot be located, describe with particularity the documents that could not be located, the effort made to locate the documents, and specific reason for their disappearance. or unavailability" (Interrogatory No. 7);

(c) documents related to Defendant's responses to the Government's First Set of Interrogatories (RFP No. 1) that were not otherwise produced to the Government during discovery;

(d) documents in Defendant's Rule 26 initial disclosures (RFP No. 2) that were not otherwise produced to the Government during discovery;

(e) documents referenced within Defendant's pleadings including her "Motion to Vacate Default, Vacate Default Judgment, and Motion to Dismiss Case" (RFP No. 3) that were not otherwise produced to the Government during discovery;

(f) copies of Mr. Veeraswamy's will, trusts, and other estate planning documents (RFP No. 4) that were not otherwise produced to the Government during discovery;

(g) copies of documents in Defendant's possession related to the BoI Account from January 1, 2010 to present (RFP No. 5) that were not otherwise produced to the Government during discovery;

(h) documents related to an educational trust established by Mr. Veeraswamy from November 25, 2005 to the present (RFP No. 6, as modified by *Veeraswamy*, 347 F.R.D. at 603) that were not otherwise produced to the Government during discovery;

(i) documents related to real property in the United States or India owned by Mr. Veeraswamy at any time from January 1, 2010 to December 31, 2012 (RFP No. 7, as modified by *Veeraswamy*, 347 F.R.D. at 603) that were not otherwise produced to the Government during discovery;

(j) copies of all credit and debit card statements for Mr. Veeraswamy's foreign and domestic accounts used from January 1, 2010 through December 31, 2012 (RFP No. 8) that were not otherwise produced to the Government during discovery;

(k) copies of all checking, savings, retirement, investment, and brokerage account statements for all foreign and domestic accounts controlled or used by Mr. Veeraswamy from January 1, 2010 through December 31, 2012 (RFP No. 9) that were not otherwise produced to the Government during discovery;

(l) Documents related to the IRS's examination or investigation of Mr. Veeraswamy's 2010-2014 federal income taxes and 2010-2014 FBRAR liabilities, including document Mr. Veeraswamy or his authorized representatives, sent to or received from the IRS (RFP No. 10) that were not otherwise produced to the Government during discovery; and

(m) to the extent not already requested, all documents, communications, and tangible things that may be used to support Defendant's claims and defenses (RFP No. 11) that were not otherwise produced to the Government during discovery.

*See* Dkt. No. 30-3 at 2-7; Dkt. No. 77-1 at 2-4; *see also Veeraswamy*, 347 F.R.D. at 601-02.  Also, to be clear, the Government is not prohibited from relying or using any of the aforementioned documents; the prohibition falls on *Defendant* as a sanction here.

This sanction is necessary because the "[r]epeated failure of a party ordered to produce documents will also support ordering as a sanction that a fact, the ascertainment of which may be dependent upon the requested discovery, be deemed established for purposes of trial." *Jones v. J.C. Penney's Dep't Stores, Inc.*, 228 F.R.D. 190, 196 (W.D.N.Y. 2005) (citing *Burns v. Imagine Films Ent., Inc.*, 164 F.R.D. 594, 597 (W.D.N.Y. 1996)).  "Such a remedy 'is supported by evidentiary, prophylactic, punitive and remedial rationales' and 'should serve the function, insofar

38

as possible, of restoring the prejudiced party to the same position he would have been in absent'

the wrongful conduct." *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 253 (S.D.N.Y. 2012)

(quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

      The Court denies the Government's request for an adverse inference, without prejudice, as

premature at this stage.  Should this matter proceed to summary judgment or trial and warrant an

adverse inference instruction, the Government may seek an adverse inference from the presiding

district judge.

## IV.    <u>Stay Pending Appeal</u>

      Finally, the Court denies Defendant's motion to stay proceedings pending her appeal of the

Court's interlocutory orders be denied.  *See* Dkt. No. 108.[8]  "The determination whether to enter a

stay pending an interlocutory appeal is within the discretion of the District Court."  *Sutherland v.*

*Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) (citing *Nken v. Holder*, 556 U.S.

418, 432 (2009)); *SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 722 (S.D.N.Y. 2025) ("A district

court's authority to stay a pending action is an aspect of its broad and inherent power over its own

process, to prevent abuses, oppressions and injustice, so as not to produce hardship, and to do

substantial justice." (citations omitted)).  "When considering whether to stay case during the

---

[8]  "While 'it is a basic tenant of federal law to delay appellate review until a final judgment has been entered,' 28 U.S.C. § 1292(b) provides 'a means of appealing from interlocutory orders that are otherwise nonappealable, upon consent of both the district court and the court of appeals.'" *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 288 (S.D.N.Y. 2018) (first quoting *Coopers v. Livesay*, 437 U.S. 463, 475 (1978); and then quoting *Development Specialists, Inc. v. Akin Gump Strauss Hauser & Feld LLP*, No. 11-CV-5994 (CM), 2012 WL 2952929, at *2 (S.D.N.Y. July 18, 2012)).  One method is when a district court "certifies that an order 'involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *New York ex rel. James v. Citibank, N.A.*, No. 24-CV-659 (JPO), 2025 WL 1194377, at *1 (S.D.N.Y. Apr. 22, 2025) (quoting 28 U.S.C. § 1292(b)).  Certification of an order requires a showing "(1) that such order involves a controlling question of law (2) as to which there is [ ] substantial ground for difference of opinion and (3) that an immediate appeal from that order may materially advance the ultimate termination of the litigation." *Id.* (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014).  Here, Defendant has not sought to certify any order she has appealed, nor do any of the factors weigh in favor of such certification.

pendency of an interlocutory appeal, courts consider '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Gabay v. Roadway Movers, Inc.*, No. 22-CV-06901 (JLR), 2023 WL 3569351, at *1 (S.D.N.Y. May 19, 2023) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)). The party requesting the stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

Here, Defendant states that granting a stay pending her appeal "will (1) neither prejudice the [Government] (2) nor cause irreparable harm to the [Government] and (3) will additionally avoid the dispute of jurisdiction of this [C]ourt while appeal is pending." Dkt. No. 108 at 1. Defendant otherwise fails explain any of her statements or apply the remaining pertinent factors necessary to warrant granting a stay of the case. The conclusory nature of her request alone justifies denying her request. *See Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701 (RPK) (JAM), 2024 WL 4930116, at *6-*7 (E.D.N.Y. Dec. 2, 2024) (collecting cases).

But even if Defendant had articulated a non-conclusory basis for her request, the request still fails because a stay pending her appeal simply is not warranted under the circumstances. The first factor weighs against Defendant: the Court has already determined that her arguments related to discovery and possible sanctions are without merit. *See generally United States v. Veeraswamy*, 765 F. Supp. 3d 168 (E.D.N.Y. 2025) (rejecting Defendant's assertion of lack of jurisdiction and request to dismiss); Text Order dated June 30, 2025 (rejecting Defendant's request for sanctions). Defendant does not identify, nor will the undersigned speculate, on any injury she would incur if this case were not stayed—particularly given that Defendant's actions have already caused

40

extensive delay in this litigation, as described above.  Thus, the second factor weighs in favor of denying her request.  *See LaCour v. Colgate-Palmolive Co.*, No. 16-CV-8364 (KMW), 2021 WL 3542295, at *2 (S.D.N.Y. Aug. 10, 2021) ("The first two factors [in the stay analysis] are the most important." (citing *Nken*, 556 U.S. at 434)).

Finally, the third and fourth factors weigh in favor of denying her request.  As set forth above, Defendant's conduct has thwarted the Government's efforts to enforce its laws and efficiently litigate this case, resulting in a prolonged ten-month dispute over discovery, in a suit that was originally filed in 2023.  *See* Dkt. No. 1; *see also United States v. RaPower-3, LLC*, 325 F. Supp. 3d 1237, 1250 (D. Utah 2018) ("The public has an interest in enforcement of the tax laws.").  Further, Defendant's conduct thus far—including the repeat and open defiance of court orders as explained above—has resulted in a waste the Government's litigation resources and taxpayer funds.  *Cf. Bausch & Lomb Inc. v. Vitamin Health, Inc.*, No. 13-CV-6498, 2014 WL 12730510, at *4 (W.D.N.Y. Sept. 18, 2014) (noting that the Government's unnecessary participation in suits can result in wasting taxpayer funds and limited litigation resources).  Defendant's dilatory tactics should not be rewarded, especially in light of Federal Rule of Civil Procedure 1's mandate for the courts to "secure the just, speedy, and inexpensive determination of every action and proceeding." *See Yan Ping Xu v. Suffolk County*, No. 19-CV-1362 (JMA) (ARL), 2021 WL 1163007, at *10 (E.D.N.Y. Mar. 26, 2021) ("There is a public interest in finality of litigation and to stay the effects of a dismissal of frivolous claims works to diminish the public trust in the courts.").

Accordingly, Defendant's motion to stay proceedings pending her appeal is denied.

**V.**    <u>**Conclusion**</u>

For the reasons set forth above, the Court grants in part and denies in part the Government's motions for sanctions and denies Defendant's motion for a stay pending her appeal.

Discovery is closed.  The final date to take the first step in dispositive motion practice shall be October 3, 2025.   The parties shall comply with Judge Kovner's Individual Practices and Rules regarding dispositive motion practice.

Dated:        Brooklyn, New York
              September 26, 2025              **SO ORDERED.**

                                             ____/s/ Joseph A. Marutollo____
                                             JOSEPH A. MARUTOLLO
                                             United States Magistrate Judge