UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                   Plaintiff,

        v.

KAREN VEERASWAMY, *as the Administrator of the Estate of Mr. Velappan Veeraswamy, Deceased*,

                                Defendant.
---------------------------------------------------------------------x

**MEMORANDUM & ORDER**

23-CV-9379
(Kovner, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Presently before the Court are (1) the Government's October 9, 2025 "reply in opposition" seeking a modification of the Court's September 26, 2025 Memorandum and Order, and its October 28, 2025 application for sanctions related to Defendant's actions at her deposition and at the Court's October 21, 2025 conference (Dkt. Nos. 118, 125); and (2) *pro se* Defendant Karen Veeraswamy's objections to the Court's September 26, 2025 Memorandum and Order (Dkt. No. 120), as well as Defendant's motion to strike the Court's orders dated September 30, 2025; October 9, 2025; October 21, 2025; and October 29, 2025 (Dkt. No. 128).

For the reasons set forth below, the Court denies Defendant's objections and motions to strike (Dkt. Nos. 120, 128), and to the extent the Government's applications (Dkt. Nos. 118, 125) are deemed as motions for reconsideration of the Court's September 26 Memorandum and Order, the Court clarifies its September 26, 2025 Memorandum and Order below.

## I.    Relevant Background

The Court presumes the parties' familiarity with this action, which has been written about extensively. *See, e.g.*, *United States v. Veeraswamy*, 347 F.R.D. 591 (E.D.N.Y. 2024); *United States v. Veeraswamy*, 765 F. Supp. 3d 168 (E.D.N.Y. 2025); *United States v. Veeraswamy*, -- F.R.D. -- ,

2025 WL 2740374 (E.D.N.Y. Sept. 26, 2025).  Only the facts relevant to this Memorandum and Order are recounted.

On September 26, 2025, the Court granted in part and denied in part the Government's motion for sanctions (Dkt. No. 77) and supplemental motion for sanctions (Dkt. No. 97).  *See* Dkt. No. 114; *Veeraswamy*, 2025 WL 2740374.  In its September 26, 2025 Memorandum and Order, the Court prohibited "Defendant from 'supporting or opposing designated claims or defenses, or from introducing designated matters in evidence' that would rely on the specific information sought in Interrogatory Nos. 5 and 7 and all 11 of the Government's [Requests for Production]." *Veeraswamy*, 2025 WL 2740374, at *19 ("[T]he Court finds that the appropriate sanction in the instant case is prohibiting Defendant from supporting or opposing designated claims or defenses and from introducing matters in evidence concerning Interrogatory Nos. 5 and 7 and all 11 of the Government's Requests for Production of Documents pursuant to Rule 37(b)(2)(A)(ii), subject to the limitations set forth [in the September 26, 2025 Memorandum and Order).  The Court also denied "the Government's request for an adverse inference, without prejudice, as premature at this stage," adding that "[s]hould this matter proceed to summary judgment or trial and warrant an adverse inference instruction, the Government may seek an adverse inference from the presiding district judge." *Id.* at *21.  The Court noted that discovery was closed. *Id.* at *23.

On September 30, 2025, the Government filed a letter addressed to both the Honorable Rachel P. Kovner, United States District Judge, and the undersigned, noting that, *inter alia*, the close of discovery precluded the Government from being able to finish the deposition of Defendant, whom the Government argues "walked out of [her] deposition before the United States could make a record of its questions."  *See* Dkt. No. 116.

On the same day, the Court ordered the parties to meet-and-confer concerning re-opening discovery to allow additional time for Defendant's deposition to continue and to file a status report regarding the same by October 10, 2025.  *See* Text Order dated Sept. 30, 2025.

On October 9, 2025, the Government filed a "reply in opposition" to the Court's September 26, 2025 Memorandum and Order.  *See* Dkt. No. 118.  In this October 9, 2025 application, the Government seeks "judicial review by the District Court" of the September 26, 2025 Memorandum and Order.  *See id.* at 1.  Specifically, the Government requests to modify the Court's September 26, 2025 Memorandum and Order because the Court had purportedly failed to consider appropriate sanctions regarding Defendant's deposition.  *See* Dkt. No. 118 at 2.   The Government seeks "a sanction prohibiting [Defendant] from supporting or opposing claims or defenses by introducing her own testimony (including through an affidavit)."  *Id.*  Alternatively, the Government "requests that the Court assert a blanket adverse inference to any and all testimony regarding [Defendant] or reopen discovery solely to permit the United States to complete its deposition of [Defendant] under the supervision of the Court in order to allow the government to make a sufficient record to seek adverse inferences, if the Court deems a blanket adverse inference inappropriate in this circumstance."  *Id.*

On October 9, 2025, the Court clarified its September 26, 2025 Memorandum and Order as follows: the Court reserved decision as to whether a sanction regarding Defendant's deposition pursuant to Rule 37(b)(2)(A)(ii) is warranted.  *See* Text Order dated October 9, 2025.  The Court ordered the parties to meet and confer regarding their respective positions about a re-opened deposition and to file a joint status report by October 17, 2025.  *See id.*

On October 12, 2025, Defendant filed an objection of the undersigned's September 26, 2025 Memorandum and Order.  Dkt. No. 120.

The parties filed a joint status report on October 15, 2025, stating that "[t]he parties were not able to come to an agreement regarding whether discovery should be reopened to permit the continuation of [Defendant's] deposition." Dkt. No. 121 at 2. Further, the parties noted that "[b]ased on the parties' attempt to meet and confer, it is apparent to the undersigned that there will not be an agreement on if/how the continued deposition of [Defendant] would occur without further judicial assistance." *Id.*

On October 21, 2025, the Court held a telephone status conference in an attempt to determine whether the parties could reach a compromise as to Defendant's deposition. Minute Entry dated Oct. 21, 2025. At this conference, the Government represented that Defendant's deposition is the sole issue remaining before discovery should be closed. Dkt. No. 126, October 21, 2025 Transcript ("Tr."), at 3:4-6. Defendant maintained that discovery should remain closed. *See, e.g.*, *id.* at 4:17; 5:4-5, 13-14; *see also* Dkt. No. 120 at ¶ 1. Also at this conference, "Defendant abruptly hung up her phone and exited the conference"; the Court attempted to contact [] Defendant, but she did not answer her phone." Minute Entry dated Oct. 21, 2025; *see* Tr. at 8:23-9:11 (Defendant interrupting the Court and then disconnecting the call); 9:10-9:16 (the Deputy Clerk attempting to contact Defendant with no answer from Defendant); 9:17-10:7 (the Court noting time and occurrence on the record).

On October 28, 2025, the Government filed a letter indicating that it would not withdraw its pending objection (Dkt. No. 118). Rather, the Government contends that the September 26, 2025 Memorandum and Order "is law of the case, and it is silent on a sanction related to [Defendant's] deposition." Dkt. No. 125 at 5. The Government adds, "[i]f the Court were to enter a sanction pursuant to Rule 37(b)(2)(A)(ii), it may render the objection moot." *Id.*

In its October 28, 2025 filing, the Government presents a panoply of potential sanctions that the Court should enter against Defendant. *See id.* at 3-4. First, the Government argues that "[d]efault judgment should be entered against Ms. Veeraswamy as a sanction for her antics at and surrounding her deposition coupled with the actions that formed the basis for the previously issued Rule 37 sanctions," including her conduct at the October 21, 2025 court conference. *Id.* at 3. If the Court is "unwilling to enter default judgment, the United States requests that the Court await the decision by the District Judge on the United States' motion currently pending with the District Court (Dkt. [No.] 118) regarding this Court's September 26, 2025, Memorandum and Order [] before entering any decision to modify that order." *Id.* at 3.

Alternatively, the Government "asks the Court to issue a sanction prohibiting [Defendant's] testimony (including by affidavit) on all matters. [Defendant's] refusal to cooperate in scheduling her initial deposition, failure to comply with the Federal Rules of Civil Procedure and Court orders at her deposition, and her disrespect of the Court at the October 21, 2025, hearing support this sanction pursuant to Rule 37(b)(2)(A)(ii) for the reasons and under the same legal analysis that the Court already articulated in its [September 26, 2025] Memorandum and Order." *Id.* at 4. Finally, the Government "would otherwise request a blanket adverse inference" against Defendant. *Id.* at 4-9.

On November 3, 2025, Defendant filed a document styled as an "objection to Magistrate Judge's Orders," and asked that the Court strike the undersigned's orders dated September 30, 2025; October 9, 2025; October 21, 2025; and October 29, 2025. *See* Dkt. No. 128.

## II.    Legal Standard

"To succeed on a motion for reconsideration, the moving party must 'point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court.'" *Cain v. United Mortgage Corp.*, No. 21-CV-3325 (BMC), 2025 WL 3165670, at *1 (E.D.N.Y. Nov. 13, 2025) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "[A]dvancing a new or expanded argument does not warrant reconsideration . . . inasmuch as a motion for reconsideration is not a vehicle to offer additional support for an argument rejected previously by the Court." *Walker v. City of New York*, No. 12-CV-840 (MKB) (RLM), 2012 WL 6563044, at *3 (E.D.N.Y. Dec. 17, 2012) (internal quotation marks and quotations omitted). Nor should motions for reconsideration "be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

A party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 702-03 (S.D.N.Y. 2011); *see also Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (stating that the movant "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion" in order to prevail on a motion for reconsideration).

## III.  Discussion

### A.  Defendant's Objections

To the extent Defendant is seeking reconsideration of the Court's September 26, 2025 Memorandum and Order (Dkt. No. 120), or the Court's orders dated September 30, 2025; October 9, 2025; October 21, 2025; and October 29, 2025, respectively, (Dkt. No. 128), such motions are denied.  Defendant's responses are conclusory on their face.  Defendant's October 12, 2025 application submits eight exhibits regarding written discovery, but does not address any of the reasoning regarding sanctions imposed in the September 26, 2025 Memorandum and Order, such

as Defendant's pattern of deficient discovery responses, her conduct during the deposition, the Government's numerous motions for sanctions, and the Court's repeated warnings. *See* Dkt. No. 120. Defendant's November 3, 2025 application states, in a conclusory fashion, that "there has been no new evidence or no exceptional circumstances to warrant any change in the orders, already issued by the court."). *See* Dkt. No. 128 at 4. Her November 3, 2025 application also does not adequately respond to the Court's October 21, 2025 and October 29, 2025 orders as to whether discovery should be reopened to permit the continuation of Defendant's deposition. *See id.* Defendant's objections.

**B.    The Government's Application**

The Government's October 28, 2025 application (Dkt. No. 125) is rooted in its October 9, 2025 objection, wherein the Government seeks "judicial review by the District Court" of the September 26, 2025 Memorandum and Order. Dkt. No. 118 at 1. As an initial matter, it is not abundantly clear whether the Government is seeking an appeal of the September 26, 2025 Memorandum and Order to Judge Kovner, or whether the Government is seeking reconsideration of the September 26, 2025 Memorandum and Order by the undersigned. Dkt. No. 118 at 2 ("In this narrow objection, the United States is seeking to modify the Order by adding an additional sanction regarding Ms. Veeraswamy's deposition pursuant to Rule 37(b)(2)(A)(ii) that was omitted from the Order erroneously"). Seeking "judicial review by the District Court" is axiomatic, as United States Magistrate Judges "are judges of the district court and a party—'even when before the magistrate judge—[is] subject to adjudication by an Article [III] . . . court.'" *Lynch v. Dep't of Educ. of City of New York*, 769 F. Supp. 3d 227, 233 (E.D.N.Y. 2025) (citing *McLeod v. Bryant*, No. 23-1721, 2024 WL 3811775, at *4 (6th Cir. Feb. 15, 2024)) *see also United States v. Higby*, 544 F. Supp. 3d 861, 862 n.1 (S.D. Iowa 2015) (stating that there is no such place as a magistrate

court and noting that magistrate judges work in the United States District Court)).  The Court nonetheless construes the Government's objection as a motion to reconsider its September 26, 2025 Memorandum and Order.  *See Lawrence v. NYC Medical Practice, P.C.*, No. 18-CV-8649 (GHW), 2024 WL 4335941, at *1 (S.D.N.Y. Sept. 27, 2024) ("reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might have been reasonably be expected to alter the conclusion reached by the court"); *Bartlett v. Tribecca Lending Corp.*, No. 18-CV-10279 (CM), 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) ("A movant must demonstrate that the Court overlooked 'controlling law or factual matters' that had been previously put before it.");  *PAB Aviation, Inc. v. United States*, No. 98-CV-5952 (JG), 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000) (citation omitted) ("The purpose of the motion to reconsider is to allow the district court to correct its own mistake, by calling its attention to a factual matter or a controlling precedent previously put forward by the party but 'overlooked' by the court.").

As the Court already stated to the Government at the October 21, 2025 conference, there is no issue ripe for Judge Kovner's review, given that the Court already clarified, its September 26, 2025 Memorandum and Order, that it was  reserving decision as to whether a sanction regarding Defendant's deposition pursuant to Rule 37(b)(2)(A)(ii) is warranted. *See* Text Order dated October 9, 2025.

The Government appears to take issue with this clarification, saying that the Court's September 26, 2025 Memorandum and Order is the "law of the case," and seemingly cannot be amended. Dkt. No. 125 at 5.  The Government does not cite any case law in support of its contention.

But in an effort to avoid further unnecessary litigation, the Court again clarifies its September 26, 2025 Memorandum and Order in the present order, which it reconsiders in part herein. Specifically, because the Government sought a default judgment, in part, due to Defendant's conduct at her May 16, 2025 deposition, and the Court granted sanctions only as to written discovery, the Court reconsiders its September 26, 2025 Memorandum and Order to the extent it overlooked whether sanctions regarding Defendant's conduct during her deposition are appropriate. At bottom, the Court finds that any sanctions as to Defendant's deposition or the October 21, 2025 Court conference remain premature at this juncture.

The standards for a magistrate judge's authority to issue non-dispositive sanctions under Federal Rule of Civil Procedure 37(b)(2) are discussed in this Court's September 26, 2025 Memorandum and Order, which is incorporated by reference herein. *Veeraswamy*, 2025 WL 2740374, at *1 n.1, *12-*13. When considering a motion for sanctions, courts evaluate the four *Agiwal* factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" *Veeraswamy*, 2025 WL 2740374, at *12 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). Although a *pro se* litigant is generally entitled to "special solicitude" before the district courts, they are not immune to the harshest discovery sanctions—such as dismissal in the case of a *pro se* plaintiff, or an entry of default judgment in the case of a *pro se* defendant—so long as a warning has been given that non-compliance can result from their actions. *Agiwal*, 555 F.3d at 302 (discussing standards for a *pro se* plaintiff); *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 452 (2d Cir. 2013) (discussing standards for a *pro se* defendant).

The Second Circuit places heavy emphasis on whether a *pro se* litigant has been given adequate warning regarding sanctions and the efficacy of lesser sanctions. *See Agiwal*, 555 F.3d 298 at (2d Cir. 2009) ("Dismissal of a *pro se* litigant's action may be appropriate 'so long as a warning has been given that non-compliance can result in dismissal'"); *Guggenheim Capital*, 722 F.3d at 452 ("Both dismissal and entry of default judgment, however, are serious, case-terminating, Rule 37 sanctions; hence, a court is similarly obliged to provide adequate notice of a default judgment as a sanction against a party proceeding *pro se*.").

Here, the Government's most recent request for sanctions are rather significant. Dkt. No. 118 at 3-9 (seeking default judgment, the prohibition of Defendant's "testimony (including by affidavit) on all matters," or a blanket adverse inference); *see also McInnis v. City of New York*, No. 24-CV-3449 (GHW) (RFT), 2025 WL 2262955, at *6 (S.D.N.Y. Aug. 7, 2025) (listing "the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal"); *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (finding "the harshest discovery sanctions," are, for example, "adverse inference instructions, dismissals, or default judgments").[1] In light of Defendant's *pro se* status, and out of an abundance of caution, the Court orders as follows.

---

[1] The undersigned notes that denial, without prejudice, of the Government's application for case-ending sanctions can be addressed by the undersigned. *See, e.g., Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 52 (S.D.N.Y. 2020) (issuing an Opinion and Order denying the requested entry of default judgment and imposing non-case-dispositive monetary sanctions instead); *Khatabi v. Bonura*, No. 10 CIV. 1168 (ER), 2017 WL 10621191, at *3 (S.D.N.Y. Apr. 21, 2017) ("Here, Magistrate Judge Davison ultimately denied the motion for sanctions, including denying Plaintiff's request for default judgment . . . Therefore, because Judge Davison did not impose any terminating sanctions, the Court treats his ruling as non-dispositive and considers whether his Order is clearly erroneous or contrary to law."); *Steele v. Costco Wholesale Corp.*, No. 03-CV-713 (NG) (MDG), 2005 WL 1068137, at *2 (E.D.N.Y. May 6, 2005) ("Since [Magistrate] Judge Go declined to impose a dispositive sanction on defendant," including the striking of defendant's answer and the entry of default judgment, "her decision is governed by Rule 72(a). Accordingly, this court may not modify or set aside any part of the decision unless it is clearly erroneous or contrary to law.").

### i.  Discovery is re-opened solely for purposes of the Government completing Defendant's deposition

The Court re-opens discovery solely for purposes of the Government completing Defendant's deposition.  In short, Defendant is given one final opportunity to complete her deposition.  Defendant's continued deposition shall occur by December 9, 2025.  The parties shall meet and confer as to the location of the deposition and file a joint status report by November 21, 2025 as to the location of the deposition.  Given the parties' history of disputes in this matter over the location of the deposition (*see, e.g.,* Text Order dated April 11, 2025), the Court reiterates that if the parties cannot agree to a location, the Court "retain[s] substantial discretion to designate the site of a deposition."  *Bold Broadcasting LLC v. Noogalights, LLC*, No. 24-CV-1482 (SIL), 2025 WL 996538 at *1 (E.D.N.Y. Apr. 3, 2025) (quoting *Viera v. United States*, No. 18-CV-9270 (KHP), 2019 WL 6683556, at *2 (S.D.N.Y. Dec. 6, 2019) ("When the parties cannot agree on a location, 'courts retain substantial discretion to designate the site of a deposition'")); *United States v. M/Y Amadea, a Motor Yacht Bearing Int'l Mar. Org. No. 1012531*, No. 23-CV-9304 (DEH), 2025 WL 50027, at *2 (S.D.N.Y. Jan. 8, 2025) ("Ultimately, 'courts retain substantial discretion to determine the site of a deposition'"), *denying reconsideration*, 2025 WL 754124 (S.D.N.Y. Mar. 10, 2025); *JB Aviation, LLC v. R Aviation Charter Servs., LLC*, No. 14-CV-5175 (DRH) (AKT), 2016 WL 4444794, at *4 (E.D.N.Y. Aug. 23, 2016) ("[T]he Court has the discretion to designate the location for depositions.").  Should the parties be unable to agree upon a location, the Court is inclined to either order that the deposition occur entirely via remote means (e.g., Zoom or similar video-sharing platform) pursuant to Fed. R. Civ. P. 30(e)(4) or at the Theodore Roosevelt United States Courthouse for the Eastern District of New York on a date to be determined by the Court.

Defendant is cautioned that the failure to appear at the continued deposition will result in a sanction prohibiting Defendant from supporting or opposing claims or defenses by introducing her own testimony, including through an affidavit. *See* Fed. R. Civ. P. 16(f), 37(b)(2); 37(d).

### ii.    Reliance on the Fifth Amendment privilege at Defendant's deposition

During the May 16, 2025 deposition, Defendant raised her Fifth Amendment privilege against self-incrimination. *Veeraswamy*, 2025 WL 2740374, at *6-*7. At the October 21, 2025 telephonic conference, the Court had intended to ask Defendant whether she plans to continue to invoke her Fifth Amendment privilege at any re-opened deposition. Defendant, however, hung up her phone on the Court, thereby precluding any meaningful discussion. Nonetheless, should Defendant intend to invoke the Fifth Amendment privilege at her continued deposition, the Court addresses the parameters of such an assertion here.

The Fifth Amendment of the U.S. Constitution states, "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination can be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444 (1972); *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) (citation omitted). The privilege applies to all stages of the civil discovery process. *4003-4005 5th Ave.*, 55 F.3d at 82 (citation omitted); *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994).

A civil case presents an inherent tension between a party asserting her Fifth Amendment privilege against self-incrimination, and the adverse party who is deprived of discovery from the assertion of the privilege. *See 4003-4005 5th Ave.*, 425 F.3d at 82 (citing *Graystone Nash*, 25 F.3d at 190) (holding that the invocation of the Fifth Amendment will "always disadvantage opposing

parties—at least to some extent—since it keeps them from obtaining information they could otherwise get").

As the Second Circuit has held, "[s]ince an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert of the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." *4003-4005 5th Ave.*, 55 F.3d at 84 (citing *Graystone Nash*, 25 F.3d at 190); *see also United States v. Inc. Vill. of Island Park*, 888 F. Supp. 419, 431 ("In view of [defendants'] repeated invocation of their Fifth Amendment privilege at a deposition, their 'eleventh hour' attempt to avoid the consequences of asserting that privilege by submitting affidavits in opposition to [plaintiff's] summary judgment motion constitutes an abuse of the discovery procedure which should not be permitted"); *Graystone Nash*, 25 F.3d at 191 (discussing how the adverse party would be at a disadvantage when "one party invok[ing] the Fifth Amendment during the discovery, but on the eve of trial changes his mind and decides to waive that privilege"); *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979) ("The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue.  To hold otherwise, would . . . enable plaintiff to use his Fifth Amendment shield as a sword"); *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969) ("The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim.").

To remedy this tension, the Second Circuit has set forth a test that balances of interests of both parties.  *4003-4005 5th Ave.*, 55 F.3d at 83–84 (emphasis original) (holding that the court

13

"should explore all possible measures in order to select that means which 'strikes a fair balance . . . and . . . accommodates both parties.") (internal citations and quotations omitted); *see also Graystone Nash*, 25 F.3d at 192 ("A trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment.); *Wehling*, 608 F.3d at 1089 ("the court should have measured the relative weights of the parties' competing interests with a view towards accommodating those interests, if possible"). "In doing this, it should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties." *4003-4005 5th Ave.*, 55 F.3d at 83-84.

"[W]hen a claimant *validly* invokes the Fifth Amendment and expeditiously seeks the court's help in protecting his interests, the court must explore the feasibility and fairness of accommodations of this sort." *4003-4005 5th Ave.*, 55 F.3d at 83 (emphasis added). There "no basis for inflicting sanctions when there is a valid invocation of the Fifth Amendment." *Graystone Nash, Inc.*, 25 F.3d at 191 (citing *Wehling*, 608 F.2d at 1087)) (emphasis added); *see also Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979) (finding "[i]mposing the harshest of the Rule 37 sanctions on a proper exercise of Fifth Amendment rights is not in accord with Supreme Court decisions" where "30 of 34 interrogatories were answered. The remaining 4 interrogatories were of a highly questionable nature and appear on their face to raise Fifth Amendment problems").

For *invalid* invocations of the Fifth Amendment, however, sanctions under Federal Rule of Civil Procedure 37 may be warranted. *See 4003-4005 5th Ave.*, 55 F.3d at 85 ("In such circumstances, particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden

from discovery through an invocation of the privilege."); *Guggenheim Capital*, 722 F.3d at 453 (upholding the district court's instruction for the defendant to "cite supporting case law to justify invoking the privilege" under the Fifth Amendment where the defendant's "history of ignoring district court directives, unilateral failure to cooperate at depositions, and failure to provide the requested discovery").

"Where a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, a district court can prevent prejudice to opposing parties and adopt remedial measures or impose sanctions." *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966 (CBA), 2010 WL 2653369, at *4 (E.D.N.Y. June 25, 2010) (citing *United States v. Certain Real Prop. & Premises*, 55 F.3d 78, 84–85 (2d Cir.1995)).   In extreme cases, the Court may impose case-dispositive sanctions such as dismissal or entry of default judgment.  *Wehling*, 608 F.2d at 1088 ("When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant").

A blanket refusal to answer questions at deposition on grounds that the answers are privileged is an invalid invocation of the Fifth Amendment privilege.  *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (holding that the Fifth Amendment's "protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer"); *Guggenheim Capital, LLC*, 722 F.3d at 453 (citing *Fisher v. United states*, 425 U.S. 391, 409-411 (1976)). "As the Fifth Amendment privilege is not absolute, [the defendant] would still be obliged to provide, *inter alia*, exculpatory responses or non-incriminating responsive documents." *Hoffman*, 406 U.S. at 444-45; *see also  cf. Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990) ("Although Fisher refused on Fifth Amendment grounds to respond to the majority of the discovery questions posed, he did not make an impermissible blanket claim of Constitutional

privilege"); *United States v. Schmidt*, 816 F.2d 1477, 1481-82 (10th Cir. 1987) ("Appellants' generalized fear of criminal prosecution for a violation of tax laws . . . is an insufficient basis for asserting a blanket claim of a Fifth Amendment privilege in refusing to produce any of the documents requested by the summonses"); *United States v. Jones*, 703 F.2d 473, 477 n.5 (10th Cir. 1983) (citation omitted) ("The Fifth Amendment must be claimed as to specific questions."). "Further, courts 'have inherent power to enforce compliance with their lawful orders through civil contempt." *Golden Feather Shop*, 2010 WL 2653369, at *5 (citations omitted).

Notably, Defendant may not simply inform the Government that she does not wish to sit for a deposition because she intends to invoke her Fifth Amendment privilege. "When a deposition is sought, the availability of the Fifth Amendment privilege does not mean that the witness need not attend the deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he can without risking self-incrimination." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2021 WL 9099984, at *1 (S.D.N.Y. May 4, 2021) (citing *Moll v. U.S. Life Ins. Co. of N.Y.*, 113 F.R.D. 625, 628-29 (S.D.N.Y. 1987) and *Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.*, 518 F.2d 671, 674 (2d Cir. 1975)); *see also Krape v. PDK Labs, Inc.*, No. 02-CV-3440 (DRH) (ETB), 2004 WL 831137, at *4 (E.D.N.Y. Apr. 19, 2004) (explaining that while "a blanket assertion of the privilege against self-incrimination is impermissible," "the proper procedure is for the witness to answer, under oath, those questions [she] can without risking self-incrimination.") (citations omitted). To the extent that Defendant "seeks to assert her Fifth Amendment privilege in response to questions for which the danger of self-incrimination on potential [criminal charges] is readily apparent, she must do so on a question by question basis." *Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 08-CV-3235 (ENV), 2010 WL 11623469, at *8 (E.D.N.Y. Aug. 27, 2010).

16

Additionally, a valid invocation of the Fifth Amendment privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486; *United States v. Greenfield*, 831 F.3d 106, 114 (2d Cir. 2016) (quoting, *inter alia*, *Hoffman*, 341 U.S. at 486; *Estate of Fisher*, 905 F.2d at 648 (quoting *Hoffman*, 341 U.S. at 486) (same); *Jones*, 703 F.2d at 475 (quoting *Hoffman*, 341 U.S. at 486) (same). This protection is confined to "instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman*, 341 U.S. at 486. "That a witness actually fears incrimination from answering questions is not enough. The fear must be reasonable in light of the witness' specific circumstances, the content of the questions, and the setting in which the questions are asked." *Jones*, 703 F.2d at 475 (citing *Hoffman*, 341 U.S. at 486).

In the context of how this standard is applied to civil actions regarding tax liability, two cases prove instructive—*Estate of Fisher v. Commissioner of the Internal Revenue Service*, 905 F.2d 645 (2d Cir. 1990) and *United States v. Jones*, 703 F.2d 473 (10th Cir. 1983).

*Estate of Fisher* involved a taxpayer who sought to set aside income tax deficiencies and penalties for fraud in the United States Tax Court, but responded to the Commissioner of the Internal Revenue Service's request for discovery by asserting the Fifth Amendment privilege. *Estate of Fisher*, 905 F.3d at 647. Relying on the Internal Revenue Service's assurances that Fisher was "not currently being investigated," the Tax Court concluded that "Fisher did not have reasonable cause to apprehend danger of a criminal prosecution," sanctioned the petitioner for discovery violations by dismissing the petition. *Id.* at 647, 649. The Second Circuit reversed, holding that the Tax Court failed to "mak[e] a particularized determination as to whether each of Fisher's claims of privilege could provide a 'a link in the chain of evidence' necessary to prosecute

him for a crime." *Id.* at 649.  The court cautioned that the "potential incrimination" is enough for a witness to be entitled to the privilege.  *Id.* (citing *United States v. Edgerton*, 734 F.2d 913 (2d Cir. 1984); *Jones*, 703 F.2d at 477-78; *United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958)).

In *Jones*, the United States obtained a judgment against a married couple, Robert C. and Dona Jones, for income tax deficiencies; at separate hearings in aid of execution of the judgment, the defendants each separately answered certain questions, but "refused to answer almost all questions concerning the sources and amounts of . . . income and the nature and location of . . . assets" on Fifth Amendment grounds.  703 F.2d at 474-75.  The district court held the couple in contempt, but the Tenth Circuit reversed, finding their invocation of the Fifth Amendment privilege was valid.  *Id.* at 479.  The Tenth Circuit reasoned that "civil and criminal aspects of [Internal Revenue Service] investigations are "inherently intertwined."  *Id.* at 477 n.4.  Even though Mr. and Mrs. Jones were neither "under criminal investigation or indictment," their fear of criminal prosecution was reasonable because they were being "prosecuted civilly for failure to properly pay income taxes."  *Id.*  As for Mr. Jones, "[a]nswers to questions concerning his financial affairs could easily provide links in a chain of evidence on criminal charges of attempt to evade payment of taxes."  *Id.*  As for Mrs. Jones, her "claim of privilege against self-incrimination derives entirely from her husband's claim," and "answering the questions will place her in the same jeopardy as her husband."  *Id.* at 479.  Accordingly, "[q]uestions that would tend to incriminate her husband also would tend to incriminate her.  Nearly all the questions Dona Jones refused to answer dealt with the Joneses' income and ownership of property and were properly subject to the claim of privilege."  *Id.*

Here, Defendant previously improperly invoked the Fifth Amendment privilege through a blanket refusal to answer questions at the May 16, 2025 deposition.  As summarized in the

September 26, 2025 Memorandum and Order, Defendant answered initial questions in an evasive matter; attempted to invoke improperly relied on the privilege under the Health Insurance Portability and Accountability Act of 1996; invoked the Fifth Amendment privilege in response to where her residential address is located; and then remained silent throughout the rest of the deposition. *See Veeraswamy*, 2025 WL 2740374, at *6-*7. The Court was conferenced into the deposition, directed Defendant to answer questions, and warned her that the failure to do so could lead to sanctions including a potential default judgment. *Id.* at *7. After adjourning the conference with the parties, Defendant made a blanket objection to all of Defendant's questions, "invoke[d] [her] Fifth Amendment [right] to remain silent throughout," and left the deposition. *Id.* at *7. Later, Defendant, incredibly, claimed that the Court did not make any order during the deposition, despite citing the portion of the deposition transcript where she was ordered to verbally respond. *Id.* at *9. Based upon Defendant's conduct during the deposition, the Court directs Defendant as follows:

Defendant shall make a good faith effort to answer the Government's questions during the continued deposition. Failure to answer questions in good faith during the continued deposition will result in a sanction prohibiting Defendant from supporting or opposing claims or defenses by introducing her own testimony, including through an affidavit. Dkt. No. 118 at 2 (the Government seeking the remedy of "a sanction prohibiting Ms. Veeraswamy from supporting or opposing claims or defenses by introducing her own testimony (including through affidavit)"). If Defendant invokes the Fifth Amendment privilege against self-incrimination, she must do so in response to specific questions that would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486; *see, e.g.*, *Jones*, 703 F.2d at 479 (finding

invocation of the Fifth Amendment on questions regarding "income and ownership of property and were properly subject to the claim of privilege").

A blanket invocation of the Fifth Amendment privilege as to every question, however, will result in a sanction prohibiting Defendant from supporting or opposing claims or defenses by introducing her own testimony, including through an affidavit. *See Estate of Fisher*, 905 F.2d 649 (finding "impermissible" a "blanket claim of Constitutional privilege"); *4003-4005 5th Ave.*, 55 F.3d at 85 ("In such circumstances, particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be a part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege").

Given the history of this action as detailed in the September 26, 2025 Memorandum and Order, as well as Defendant's conduct in hanging up the phone on the Court during two separate telephone conferences, Defendant's failure to comply with this order or any of the Court's orders going forward, whether verbal or in writing, will likely result in additional sanctions, up to and including a report and recommendation for entry of default judgment against Defendant.

### iii.    The Government's requests for an adverse inference are premature

The Government's continued requests for adverse inference (Dkt. No. 118 at 2; Dkt. No. 125 at 7-8) are premature.  In the September 26, 2025 Memorandum and Order, the Court denied the Government's request for an adverse inference, without prejudice for the Government to seek the adverse inference from the presiding judge should the matter proceed to summary judgment or trial. *Veeraswamy*, 2025 WL 2740374, at *21.  The Court adheres to its original decision.

The Court notes, however, that Defendant may still face consequences from invoking the Fifth Amendment privilege as to the Government's specific deposition questions. *See 4003-4005*

*5th Ave.*, 55 F.3d at 83 (holding that a "party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence"). Nothing regarding this decision prevents the Government from seeking an adverse inference at the summary judgment stage or as an evidentiary matter at trial. *See LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997) ("Since we have ruled on the issue of admissibility, the district court should now evaluate the relevance of Robert's refusals and their probative value under Fed. R. Evid. 403, and the weight they should be accorded in the context of all of the other evidence."); *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 18 (E.D.N.Y. 2013) (The "affidavit in opposition to plaintiff's motion for summary judgment will not be considered in light of his invocation of the Fifth Amendment privilege against self incrimination during his deposition."). Indeed, the Government concedes that, as a threshold matter, "whether and what adverse inferences should be drawn, courts must look to the questions at a deposition that the witnesses refused to answer." Dkt. No. 118 at 11 (citing *LiButti*, 107 F.3d at 124); *see also* Dkt. No. 125 at 6 ("Many courts have explicitly stated that the Fifth Amendment's protections against self-incrimination are invoked on a question-by-question basis, and the adverse inference cannot be extended to anything not specifically asked.").

## IV.    Conclusion

Accordingly, the Court denies Defendant's objections and motions to strike (Dkt. No. 120, 128), and to the extent the Government's applications (Dkt. Nos. 118, 125) are deemed as motions for reconsideration of the Court's September 26, 2025 Memorandum and Order, the Court clarifies its September 26, 2025 Memorandum and Order, to wit:

**Discovery is re-opened solely for purposes of the Government completing Defendant's deposition.** Defendant is given one final opportunity to complete her deposition. Defendant's continued deposition shall occur by **December 9, 2025**. The parties shall meet and confer as to

the location of the continued deposition and file a joint status report by **November 21, 2025** as to the location of the deposition. If the parties cannot agree to a location for the continued deposition, the Court will designate the site of the deposition. The Court is inclined to either order that the deposition occur entirely via remote means (e.g., Zoom or similar video-sharing platform) pursuant to Fed. R. Civ. P. 30(e)(4) or at the Theodore Roosevelt United States Courthouse for the Eastern District of New York on a date to be determined by the Court. Defendant is cautioned that her **failure to appear at the continued deposition will result in a sanction prohibiting Defendant from supporting or opposing claims or defenses by introducing her own testimony, including through an affidavit**.

Defendant shall make a good faith effort to answer the Government's questions during the continued deposition. Defendant is cautioned that her **failure to answer questions in good faith during the continued deposition will result in a sanction prohibiting Defendant from supporting or opposing claims or defenses by introducing her own testimony, including through an affidavit**.

Defendant is again cautioned that **a blanket invocation of the Fifth Amendment privilege as to every question will result in a sanction prohibiting Defendant from supporting or opposing claims or defenses by introducing her own testimony, including through an affidavit**.

The Government is directed to serve a copy of this Memorandum and Order upon *pro se* Defendant and file proof of service by November 17, 2025.

Dated:    Brooklyn, New York
          November 14, 2025              **SO ORDERED.**

                                          */s/ Joseph A. Marutollo*
                                         JOSEPH A. MARUTOLLO
                                         United States Magistrate Judge

22