UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v.

KAREN VEERASWAMY, as the Administrator of the Estate of Velappan Veeraswamy, Deceased,

Defendant.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
1:23-CV-9379 (RPK) (JAM)

RACHEL P. KOVNER, United States District Judge:

The United States brought this action against Karen Veeraswamy as the administrator of the estate of her late spouse, Velappan Veeraswamy, to collect civil penalties assessed against Mr. Veeraswamy for his willful failure to report foreign assets to the Internal Revenue Service ("IRS"). Both parties have moved for summary judgment. For the reasons explained below, the government is granted summary judgment as to liability, and the case is remanded to the IRS to recalculate the penalty amount.

**BACKGROUND**

The following facts are taken from the parties' Rule 56.1 statements or relevant portions of the record and are undisputed unless otherwise noted.

Velappan Veeraswamy was born in India in 1949 and immigrated to the United States in 1980. Pl.'s Rule 56.1 Statement ¶¶ 1–2 (Dkt. #142-2). He married in 1990 and became a naturalized citizen in or around 2000. *Id.* ¶¶ 3–4. He was a well-educated and successful businessman who owned multiple companies and a real-estate portfolio worth several million dollars in the United States. *Id.* ¶¶ 15–16. He kept personal and commercial ties to India, and held

significant assets in India: real property, business entities, and several Bank of India accounts, including the account ending in -0009 at issue in this case. *Id.* ¶¶ 21, 22, 29–33, 36–41. He actively maintained these financial accounts long after he naturalized. *Id.* ¶ 55. But Mr. Veeraswamy never informed Bank of India that he was a United States citizen. *Id.* ¶ 48. He did not provide his United States address, electing to receive mail at an address in India. *Id.* ¶¶ 50–53. And he used a different spelling of his name than appears on his United States government paperwork. *Id.* ¶ 54.

Mr. Veeraswamy was required to file a Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR," for the year 2011 regarding the -0009 account at the Bank of India. That is because the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, and its implementing regulations require "a United States person with an interest in foreign financial accounts" to file an FBAR for each year the accounts "hav[e] an aggregate value of more than $10,000." *United States v. Kahn*, 5 F.4th 167, 169 (2d Cir. 2021); *see* 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.350, 1010.306(c). The -0009 account had a balance exceeding that value in 2011: Mr. Veeraswamy transferred $1.5 million to the -0009 account that year, and as of June 30, 2011, the balance was about $1.3 million. The account earned approximately $39,961.52 in interest that year. Pl.'s Rule 56.1 Statement ¶ 82; *see generally* Ex. J (Dkt. #142-13) (Bank of India Statement).

Mr. Veeraswamy did not file an FBAR form for the account covering the year 2011, as required. In that year (as well as in earlier and later years), he hired a professional tax return preparer, Masood Rana, to assist with his tax returns. Pl.'s Rule 56.1 Statement ¶¶ 75–76. It was Rana's practice to ask his clients about whether they had foreign accounts, although he did not specifically remember whether he asked that question of Mr. Veeraswamy. *Id.* ¶¶ 66, 68; Ex. B ("M. Rana Dep.") at 12:6–20, 35:2–36:25, 42:5–21 (Dkt. #142-5). Mr. Veeraswamy did not tell Rana that he had any foreign bank accounts. Pl.'s Rule 56.1 Statement ¶ 68.

Rana also asked Mr. Veeraswamy if he had interest income from a foreign bank account, and Mr. Veeraswamy said that he did not. *Id.* ¶ 69; M. Rana Dep. at 36:17–25.

Mr. Veeraswamy's 2011 federal tax return, which he reviewed prior to filing, Pl.'s Rule 56.1 Statement ¶ 71, represented that he did not have a financial interest in any "financial account (such as a bank account, securities account, or brokerage account) located in a foreign country," *id.* ¶ 78. The tax return also warned that if Mr. Veeraswamy did have such an account, he would be required to "report that financial interest or signature authority." *Ibid.* Mr. Veeraswamy did not file an FBAR for that year. *Id.* ¶ 77.

In 2016, the IRS audited Mr. Veeraswamy's income tax returns for calendar years 2010 through 2014. *Id.* ¶ 83. Mr. Veeraswamy consulted Pradeep Agarwal, a Certified Public Accountant ("CPA"), to assist with the audit. Although Agarwal asked whether he had any interest in foreign financial accounts in 2011, Mr. Veeraswamy did not disclose any interest in entities abroad. *Id.* ¶¶ 85–87 (citing Ex. C ("P. Agarwal Dep.") at 75:13–77:12 (Dkt. #142-6)). Mr. Veeraswamy "refused to give [Agarwal] the necessary information related to his foreign financial accounts and the ongoing audit with the IRS." *Id.* ¶ 88.

Mr. Veeraswamy had a separate conversation with a CPA whom Mr. Veeraswamy told he was transferring money overseas. According to Mr. Veeraswamy, the CPA told him this was not an issue as long as he declared and paid taxes when that "[m]oney is making money." Ex. A ("V. Veeraswamy Dep.") at 110:15–25, 111:11–20 (Dkt. #142-4).

In January 2018, the IRS assessed FBAR penalties on Mr. Veeraswamy for his failure to report interests in foreign financial accounts to the IRS. Pl.'s Rule 56.1 Statement ¶ 89. As relevant here, it assessed a penalty of $275,826 for willful failure to file an FBAR reporting his 2011 interest in the Bank of India account ending in -0009. *Id.* ¶ 90. The FBAR form for that

year would have been due on June 30, 2012, at which time the -0009 account held a balance of 23,545,615 Indian Rupees, or approximately $420,457. Def.'s Cross Mot. for Summ. J. & Opp'n ("Def.'s Cross Mot. & Opp'n") 4 (Dkt. #147); Pl.'s Rule 56.1 Statement ¶ 60.

In April 2018, Mr. Veeraswamy filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code. Pl.'s Rule 56.1 Statement ¶ 97–98; *see In re Velappan Veeraswamy*, No. 18-42030 (JMM) (Bankr. E.D.N.Y.). The IRS timely filed a proof of claim in his bankruptcy case. Pl.'s Rule 56.1 Statement ¶ 100. The IRS sought over $480,744 in unsecured general claims, which included the FBAR penalties. *Id.* ¶105. The bankruptcy case was later closed without a discharge of debts. *Id.* ¶ 109.

Mr. Veeraswamy passed away intestate in 2019, and his wife, Karen Veeraswamy, became the administrator of his estate. *Id.* ¶¶ 9–11.

The IRS subsequently conducted an administrative recalculation of the FBAR penalty regarding the -0009 account and on September 20, 2022, remitted the penalty for calendar year 2011 from $275,826 to $210,229, representing approximately half of the balance in the account at the time of the violation. *Id.* ¶ 94; Presnell Decl. ¶7; *see* 31 U.S.C. § 5321(a)(5)(D)(ii) (stating that for willful violations of the FBAR reporting requirement, the maximum penalty is the greater of $100,000 or 50 percent of the balance in the account at the time of the violation).

That FBAR penalty has since accrued interest and late payment penalties under 31 U.S.C. § 3717(a)(1), (e)(2). Pl.'s Rule 56.1 Statement ¶ 95; *see* Presnell Decl. ¶¶ 9–11. Considering interest, late payment penalties, and certain amounts applied as credits against the late payment penalty, the government has calculated that the balance owed was $326,414.78 as of December 2025.

In 2023, the government filed this action seeking to recover the unpaid FBAR penalties for calendar year 2011 against Ms. Veeraswamy as administrator of Mr. Veeraswamy's estate. Compl. (Dkt. #1); 11 U.S.C. § 108(c); 31 U.S.C. § 5321(b)(2)(A). Ms. Veeraswamy has acted *pro se* in this litigation.

The case proceeded to discovery, where the government sought to depose Ms. Veeraswamy. Ms. Veeraswamy refused to answer questions in the initial session for her deposition, and then refused to appear at all for a continuation of the deposition. In addition, she failed to respond to interrogatories requesting that she (1) "identify and describe with particularity all real property that Velappan Veeraswamy owned or owns (directly, indirectly, or as a nominee) within India from January 1, 2010 to present," *United States v. Veeraswamy*, 350 F.R.D. 184, 198 (E.D.N.Y. 2025) (brackets omitted), and (2) "describe with particularity" documents responsive to the government's production request that "could not be located, the effort made to locate the documents, specific reason for their disappearance or unavailability," *id.* at 199 (brackets omitted). She also refused to respond to requests for production that sought documents referenced in her pleadings and motions as well as other documents relating to Mr. Veeraswamy's finances. *Id.* at 199–200.

Magistrate Judge Marutollo entered two sanctions orders against the defendant for willfully failing to comply with discovery orders. The first prohibited Ms. Veeraswamy from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence that would rely on the specific information sought in" the government's interrogatories and requests for production. *Veeraswamy*, 350 F.R.D. at 207-08 (quotation marks omitted). The second prohibited Ms. Veeraswamy from "introducing her own testimony through an affidavit." *United States v. Veeraswamy*, 350 F.R.D. 355, 367 (E.D.N.Y. 2025) (quotation marks omitted); Fed. R.

Civ. P. 37(b)(2)(A)(ii). I overruled Ms. Veeraswamy's objections to both orders. Text Order dated Dec. 8, 2025; Text Order dated Dec. 18, 2025.

The government moved for summary judgment, seeking $326,414.78 plus statutory accruals. Pl.'s Mot. for Summ. J. 25 (Dkt #142). The defendant filed a cross-motion for summary judgment. Def.'s Cross Mot.. & Opp'n. Judge Marutullo subsequently struck the portions of the defendant's cross-motion that violated the two sanctions orders, Text Order dated Apr. 2, 2026; *see* Pl.'s Mot. to Strike 2 (Dkt. #148); Pl.'s Chart in Supp. of Mot. to Strike (Dkt. #153), in an order I affirmed, Text Order dated Apr. 14, 2026.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

A court "is ordinarily obligated to afford a special solicitude to *pro se* litigants . . . particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citations and quotation marks omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation and quotation marks omitted).

**DISCUSSION**

The government may assess FBAR penalties on a United States citizen who willfully violates the rules requiring such individuals to report foreign bank accounts in which they hold a financial interest, when the account's balance exceeded $10,000 in the prior calendar year. *See* 31 U.S.C. §§ 5314, 5321(a)(5)(C); 31 C.F.R. §§ 1010.350, 1010.306(c); *see also* Def.'s Mot. for Relief & Reply to Dkt. No. 175 at 1–2 (Dkt. #176). It is undisputed that Mr. Veeraswamy was a United States citizen; that he had an interest in a foreign financial account whose balance exceeded $10,000 in 2011; and that Mr. Veeraswamy failed to file an FBAR disclosing that account by the date on which it was due. The parties disagree however, over whether the undisputed facts establish that Mr. Veeraswamy's failure was willful; whether the IRS timely assessed an FBAR penalty; and whether the penalty exceeds the statutory cap. As explained below, the undisputed facts establish Mr. Veeraswamy acted willfully, that the IRS's 2022 recalculation was not an untimely assessment, and that the FBAR penalty must be reduced to comply with the statutory maximum. Accordingly, the government is granted summary judgment as to liability, but the case is remanded to the IRS to recalculate the penalty amount.

**I. Willfulness**

Willfulness under the Bank Secrecy Act includes both intentional and reckless conduct. *United States v. Reyes*, 164 F.4th 78, 86 (2d Cir. 2026). Courts have commonly hold that

"recklessness in not filing an FBAR" is established if a reasonable person "(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3) he or she was in a position to find out very easily.'" *Id.* at 88 (citing *Bedrosian v. U.S. Dep't of Treas., IRS*, 912 F.3d 144, 153 (3d Cir. 2018)). This inquiry is an objective one. *Reyes*, 164 F.4th at 91. On this record, drawing all reasonable inferences in the defendant's favor, the government has established that Mr. Veeraswamy was—at minimum—reckless in failing to file an FBAR for calendar year 2011.

The record is replete with signs that would have made it obvious to a reasonable person that there was a grave risk that Veeraswamy was subject to a filing requirement that he was not satisfying. First, Mr. Veeraswamy's professional tax preparer directly asked whether he earned interest income on any foreign accounts. Pl.'s Rule 56.1 Statement ¶¶ 66, 68–69. Second, his 2011 federal tax return, which Mr. Veeraswamy reviewed, *id.* ¶ 71, asked him to check a box if he had any foreign financial accounts, and indicated that if he did, he might be required to file a form—directing him to see the FBAR form and its instructions for the filing requirements, *id.* ¶ 78. Third, the CPA that Mr. Veeraswamy hired during his IRS audit to discuss potential amendments to his return asked whether he held an interest in a foreign bank account. *Id.* ¶ 85–87; P. Agarwal Dep. at 75:13–77:12. Fourth, a separate CPA advised him that while he could transfer money overseas, he would have tax obligations in the United States on interest he subsequently earned in the overseas account. V. Veeraswamy Dep. at 110:15–25, 111:11–20. These sources would all have alerted a reasonable person that holding a foreign bank account carried federal reporting consequences. And given the interactions he had with his own tax preparer and CPAs he had hired, Mr. Veeraswamy was in a "position to find out very easily" what requirements he needed to follow. *Reyes*, 164 F.4th at 88–89. In sum, Mr. Veeraswamy clearly ought to have known of a

grave risk that he was subject to a filing requirement for the -0009 account in 2011, when it earned nearly $40,000 in interest, Pl.'s Rule 56.1 Statement ¶ 82.

Concealment also bears on willfulness. *See Kimble v. United States*, 991 F.3d 1238, 1243 (Fed. Cir. 2021); *Reyes*, 164 F.4th at 90. The undisputed facts show that Mr. Veeraswamy took affirmative steps to keep the -0009 account separate from his life in the United States. He opened the account under a different spelling of his name and never corrected it. Pl.'s Rule 56.1 Statement ¶ 54. He designated a mailing address in India, ensuring that any financial statements would not be sent to the United States. *Id.* ¶ 52. In eleven years, he never told the bank that he had become a United States citizen. *Id.* ¶ 48. He also repeatedly failed to disclose the existence of the account when directly asked about foreign interests by professionals he hired to advise on his tax filings. He never informed his professional tax preparer that he had a foreign bank account and denied earning interest income from any foreign bank accounts, *id.* ¶¶ 68–69; he never told his audit CPA that he held foreign accounts even after his audit CPA asked for information related to foreign banks, transactions, and assets, *id.* ¶ 86 (citing P. Agarwal Dep. at 77:2–25); and he stated on his federal tax return that did not have foreign accounts, *id.* ¶ 78.

On this record, the only permissible inference is that Mr. Veeraswamy's failure was willful.

## II. Timeliness

The IRS's recalculation of Mr. Veeraswamy's FBAR liability did not violate the statute of limitations. Here, the IRS timely assessed a civil penalty for Mr. Veeraswamy's 2012 failure to file an FBAR in 2018—within the statutory six-year period. *See* 31 U.S.C. § 5321(b)(1); Feb. 10, 2025 Order Adopting R. & R. 7 (Dkt. #53). Ms. Veeraswamy asserts that the IRS's collection efforts are nevertheless time-barred because in 2022 the agency administratively recalculated the FBAR penalty amount, reducing the penalty from $275,826 to $210,229. But courts have consistently held that when the IRS assesses a civil penalty within the statute of limitations, the

agency's reducing the amount in a recalculation does not render the agency's collection efforts time-barred. *See United States v. Schwarzbaum*, 127 F.4th 259, 286–87 (11th Cir. 2025) (ordering remand for IRS to recalculate penalties after rejecting the argument that a recalculation would be time-barred); *United States v. Kerr*, No. CV-19-05432-PHX-DJH, 2025 WL 732015, at *6 (D. Ariz. Mar. 7, 2025) ("[O]n a remand for a recalculation, the [IRS] is not reassessing anything. The IRS is simply performing a recalculation. . . . [R]ecalculations are not subject to the same rules as assessments."), *corrected*, No. CV-19-05432-PHX-DJH, 2025 WL 976819 (D. Ariz. Apr. 1, 2025) (correcting clerical error).

**III. Penalty**

Because the defendant is correct that the penalty assessed by the IRS slightly exceeds the statutory maximum, this case is remanded to the IRS for a recalculation of penalties. Federal law provides that for willful violations of the FBAR reporting requirement, the maximum penalty is the greater of $100,000 or 50 percent of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(D)(ii). Here, the parties describe the balance of the -0009 account on the day the FBAR for year 2011 was due as being $420,457.[*] As defendant observes, 50 percent of $420,457 is $210,228.50, not $210,229. Def.'s Cross Mot. & Opp'n 4. The government represents that it rounded that amount to the nearest dollar to reach $210,229. But because the statute plainly caps the statutory maximum at 50 percent of the account's balance, and the government does not

---

[*] At times, the government treats this dollar valuation as approximate. It states that on the date of the violation, the -0009 account's balance was 23,545,615 Indian rupees, and the exchange rate was "approximately" 56 rupees to one dollar. Pl.'s Rule 56.1 Statement ¶ 60. The exchange rate used does not, in fact, appear to be approximate. The Department of the Treasury's official rates of exchange database, which "provides the U.S. government's authoritative exchange rates . . . across all reporting done by agencies of the government," lists the exchange rate as exactly 56 Indian rupees to one U.S. dollar on June 30, 2012. See Treasury Reporting Rates of Exchange, https://fiscaldata.treasury.gov/datasets/treasury-reporting-rates-exchange/treasury-reporting-rates-of-exchange. We may take judicial notice of this fact. See Fed. R. Evid. 201(b)–(d); *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, No. 13-CV-1106 (CRC), 2017 WL 6628118, at *1 (D.D.C. Apr. 26, 2017) (taking judicial notice of foreign exchange rates); *U.S. Dep't of the Treasury–Internal Revenue Serv. v. EB Holdings II, Inc.*, 2021 WL 535467, at *4–*5 (D. Nev. Feb. 11, 2021) (same). Nevertheless, the IRS may consider the appropriate exchange rate to use in its calculations on remand.

cite any statutory authorization allowing it to round upward. *Cf.* 26 U.S.C. § 7504 (allowing the IRS to round up to the nearest dollar when collecting deficiencies under Title 26). Given the government's error, the case is remanded to the IRS to redetermine the penalty amount. *See Gentges*, 531 F. Supp. 3d at 754 (remanding determination of penalty amount to the IRS); *accord United States v. Schwarzbaum*, 24 F.4th 1355, 1365, 1367 (11th Cir. 2022).

**CONCLUSION**

The government's motion for summary judgment is granted as to liability and denied as to the amount of the penalty. Defendant's motion for summary judgment is denied as to liability but granted insofar as defendant objects that the penalty amount was improperly calculated. The case is remanded to the IRS to recalculate the FBAR penalty related to the -0009 account that complies with the statutory maximum.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 10, 2026
Brooklyn, New York